# Exhibit 1

US009889065B2

(12) **United States Patent**
Sedic

(10) Patent No.: **US 9,889,065 B2**
(45) Date of Patent: ***Feb. 13, 2018**

(54) **SKIN CLEANSER**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/397,976**

(22) Filed: **Jan. 4, 2017**

(65) **Prior Publication Data**

US 2017/0112713 A1     Apr. 27, 2017

**Related U.S. Application Data**

(63) Continuation of application No. 14/572,519, filed on Dec. 16, 2014, which is a continuation of application No. 14/149,793, filed on Jan. 7, 2014.
(Continued)

(51) **Int. Cl.**
**A61B 17/50** (2006.01)
**A61H 23/02** (2006.01)

(52) **U.S. Cl.**
CPC ..... **A61H 23/02** (2013.01); *A61H 2201/0207* (2013.01); *A61H 2201/105* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC . A47K 7/02; A47K 7/04; A47K 7/043; A61H 23/00; A61H 19/44; A61H 19/34; A61H 19/40

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,491,016 A * | 4/1924 | McGowan | ............. A61H 7/003 15/188 |
| 2,480,023 A | 8/1949 | Holden | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2172110 | 7/1994 |
| CN | 1655709 | 8/2005 |

(Continued)

OTHER PUBLICATIONS

United States Office Action, U.S. Appl. No. 14/572,519, dated Dec. 16, 2016, 13 pages.
(Continued)

*Primary Examiner* — Gregory Anderson
*Assistant Examiner* — Christina Lauer
(74) *Attorney, Agent, or Firm* — Evan Feldstein

(57) **ABSTRACT**

A skin cleanser includes a surface, such as a silicone surface, with at least one textured portion for transmitting vibrational tapping to the skin. The skin cleanser includes at least one oscillating motor for generating the tapping motion to the skin. The textured portion includes touch-points or a wave that transmit the tapping motion to skin in contact with the textured portions. The touch-points may include thicker and thinner formations of the touch-points to provide firmer or softer vibrations to the skin. The touch-points are within about 0.5 to 2.5 mm in diameter. One configuration includes multiple oscillating motors configured to provide different vibration frequencies at around 50-300 Hertz and operable simultaneously.

**20 Claims, 17 Drawing Sheets**



## US 9,889,065 B2
Page 2

### Related U.S. Application Data

(60)   Provisional application No. 61/749,751, filed on Jan. 7, 2013, provisional application No. 61/841,542, filed on Jul. 1, 2013.

(52)   **U.S. Cl.**
CPC ............... *A61H 2201/5035* (2013.01); *A61H 2201/5097* (2013.01); *A61H 2205/022* (2013.01)

### (56)   References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,764,773 | A | 10/1956 | Glanvill et al. |
| 3,251,085 | A | 5/1966 | Jacobs |
| 3,346,748 | A | 10/1967 | Mcnair |
| 3,358,309 | A | 12/1967 | Richardson |
| 3,906,940 | A | 9/1975 | Kuwada |
| 3,968,789 | A | 7/1976 | Simoncini |
| 4,027,348 | A | 6/1977 | Flowers et al. |
| 4,112,040 | A | 9/1978 | Orentreich |
| 4,249,521 | A | 2/1981 | Gueret |
| 4,463,485 | A | 8/1984 | Gueret |
| 4,564,032 | A | 1/1986 | Araki |
| 4,570,616 | A | 2/1986 | Kunz et al. |
| D331,466 | S | 12/1992 | Doria |
| 5,176,130 | A | 1/1993 | Kim |
| D351,474 | S | 10/1994 | Huang |
| D369,220 | S | 4/1996 | Huang |
| 5,511,270 | A | 4/1996 | Eliachar et al. |
| D382,645 | S | 8/1997 | Bergeron |
| 5,792,080 | A | 8/1998 | Ookawa et al. |
| D423,109 | S | 4/2000 | Allende |
| 6,202,242 | B1 | 3/2001 | Salmon et al. |
| 6,226,811 | B1 | 5/2001 | Fagan |
| 6,267,736 | B1 | 7/2001 | McCambridge et al. |
| 6,283,930 | B1 | 9/2001 | Purvis et al. |
| 6,393,718 | B1 | 5/2002 | Harris et al. |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| D466,217 | S | 11/2002 | Harris et al. |
| D466,695 | S | 12/2002 | Chen |
| D469,183 | S | 1/2003 | Gerth et al. |
| D476,087 | S | 6/2003 | Dirks et al. |
| 6,588,964 | B1 | 7/2003 | Au et al. |
| D478,174 | S | 8/2003 | Huang |
| D487,592 | S | 3/2004 | Chang |
| D512,225 | S | 12/2005 | Chien |
| D514,328 | S | 2/2006 | Huang |
| D517,218 | S | 3/2006 | Kalen |
| D523,561 | S | 6/2006 | Telford |
| D539,917 | S | 4/2007 | Park |
| D548,851 | S | 8/2007 | Huang |
| D549,351 | S | 8/2007 | Wu |
| 7,303,534 | B2 | 12/2007 | Kahn |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| D569,106 | S | 5/2008 | Maruyama |
| D571,926 | S | 6/2008 | Wu |
| 7,384,377 | B2 | 6/2008 | Berman |
| D574,108 | S | 7/2008 | Yando et al. |
| D576,736 | S | 9/2008 | Hagege |
| D595,898 | S | 7/2009 | Syran et al. |
| D616,103 | S | 5/2010 | Ford-Robertson |
| D622,405 | S | 8/2010 | Tuli |
| D626,656 | S | 11/2010 | Jarry |
| D629,528 | S | 12/2010 | Adkisson |
| D635,720 | S | 4/2011 | Cammarano |
| D645,569 | S | 9/2011 | Nitsch |
| D646,795 | S | 10/2011 | Seehoff et al. |
| D671,281 | S | 11/2012 | Singer |
| D674,108 | S | 1/2013 | York |
| 8,523,791 | B2 | 9/2013 | Castel |
| 8,622,890 | B1 | 1/2014 | Caggiano et al. |
| 8,679,039 | B2 | 3/2014 | Tieu et al. |
| 8,745,807 | B2 | 6/2014 | Vamer et al. |
| D715,935 | S | 10/2014 | Huntington et al. |

| | | | | |
|---|---|---|---|---|
| 2002/0107459 | A1 | 4/2004 | Chang | |
| 2004/0060571 | A1 | 11/2004 | Mayeri | |
| 2004/0225239 | A1 | 3/2005 | Yamamoto et al. | |
| 2005/0059914 | A1 | 5/2005 | Kleinhenz et al. | |
| 2005/0113725 | A1 | 6/2005 | Masuda | |
| 2005/0142093 | A1 | 1/2006 | Skover et al. | |
| 2006/0010630 | A1 | 3/2006 | Tse | |
| 2006/0058714 | A1 | 8/2006 | Rhoades | |
| 2006/0234614 | A1 | 10/2006 | Jaffe | |
| 2006/0168746 | A1 | 12/2006 | Guyuron et al. | |
| 2006/0276731 | A1 | 1/2007 | Thiebaut et al. | |
| 2007/0017540 | A1 | 1/2007 | Davis et al. | |
| 2007/0142845 | A1 | 6/2007 | Akridge et al. | |
| 2007/0179412 | A1 | 8/2007 | Imboden et al. | |
| 2007/0198031 | A1 | 8/2007 | Kellogg | |
| 2007/0232967 | A1* | 10/2007 | Driscoll | A61H 19/00 601/46 |
| 2008/0110471 | A1 | 5/2008 | Oliver et al. | |
| 2008/0119913 | A1 | 5/2008 | Powell et al. | |
| 2008/0125680 | A1 | 5/2008 | Richmond et al. | |
| 2008/0125682 | A1 | 5/2008 | Bonneyrat | |
| 2008/0167590 | A1 | 7/2008 | Jon et al. | |
| 2008/0210252 | A1 | 9/2008 | Taggart et al. | |
| 2009/0036809 | A1 | 2/2009 | Nishio et al. | |
| 2009/0198159 | A1 | 8/2009 | Linzell | |
| 2009/0275796 | A1* | 11/2009 | Gil | A61H 19/44 600/38 |
| 2009/0318853 | A1 | 12/2009 | Reed et al. | |
| 2010/0217357 | A1 | 8/2010 | Da Silva et al. | |
| 2010/0262051 | A1 | 10/2010 | De LaForcade | |
| 2011/0071445 | A1* | 3/2011 | Imboden | A61H 19/30 601/46 |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. | |
| 2011/0098613 | A1 | 4/2011 | Thomas et al. | |
| 2011/0144426 | A1 | 6/2011 | Blenk et al. | |
| 2011/0184499 | A1 | 7/2011 | Radi | |
| 2011/0251537 | A1 | 10/2011 | Yeo | |
| 2012/0121313 | A1 | 5/2012 | Thiebaut | |
| 2012/0165708 | A1 | 6/2012 | Parsloe | |
| 2012/0209151 | A1 | 8/2012 | Zhou et al. | |
| 2012/0234336 | A1 | 9/2012 | Paquet et al. | |
| 2013/0023805 | A1 | 1/2013 | Ungemach et al. | |
| 2013/0046212 | A1 | 2/2013 | Nichols | |
| 2013/0079689 | A1 | 3/2013 | Thierman | |
| 2013/0178769 | A1 | 7/2013 | Schmidt | |
| 2014/0046127 | A1 | 2/2014 | Topolovac et al. | |
| 2014/0107543 | A1 | 4/2014 | Pazouki | |
| 2014/0171841 | A1 | 6/2014 | Kazaryan et al. | |
| 2015/0105802 | A1* | 4/2015 | Sedic | A47K 7/043 606/131 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 101056603 | 10/2007 |
| CN | 201422994 | 3/2010 |
| CN | 2012637712 | 1/2013 |
| EP | 1484043 | 12/2004 |
| EP | 1525872 | 4/2005 |
| EP | 1942857 | 7/2008 |
| EP | 2164443 | 3/2010 |
| EP | 2490645 | 8/2012 |
| JP | 2000-000283 | 1/2000 |
| JP | 2004-249061 | 9/2004 |
| KR | 101078567 | 1/2011 |
| TW | 200410650 | 7/2004 |

#### OTHER PUBLICATIONS

"Silicone Face Massage Brush," Alibaba.com, 1999-2014, Alibaba. com, 6 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/countrysearch/CN/silicone-face-massage-brush.html.

United States Office Action, U.S. Appl. No. 14/572,519, dated Jul. 18, 2016, twelve pages.

"Clarisonic" Web Page, Clarisonic, Pacific Bioscience Laboratories, Inc., 2013, 2 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.clarisonic.com/>.

US 9,889,065 B2

Page 3

(56)          **References Cited**

OTHER PUBLICATIONS

"Neutrogena® Wave®," Neutrogena Corporation, 2014, 1 page, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.neutrogenawave.com/#/products>.

"Silicon Face Brushes," Alibaba.com, 1999-2014, Alibaba.com, 8 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/manufacturers/face-sili-cone-brush-manufacturer.html>.

"Vibrating cosmetics," 12 pages, PoshGlam®, Sep. 8, 2014, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.poshglam.com/beauty/>.

"Waterproof Electric Face Massager," Alibaba.com, 1999-2014, 3 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/product-gs/537532136/Water_proof_Electric_Face_Massager.html>.

Australian Government, IP Australia, Patent Examination Report No. 1, Australian Patent Application No. 2014204242, dated Jan. 28, 2016, three pages.

European Extended Search Report, European Application No. 14735118.3, dated Jun. 7, 2016, ten pages.

FOREO: Building the Best Brand of Skin Care, Dec. 13, 2013 [online retrieved on Aug. 26, 2014]. Retrieved from the Internet: <http://luxury.ce.cn/hydt/cygc/201312/13/t20131213_1271555.shtml>.

Global First Silicone Cleansing Instrument FOREO Leading a New Revolution 1-19 in Facial Care, Jun. 28, 2013 [online], (retrieved on Aug. 26, 2014). Retrieved from the Internet: <http://fashion.ifeng.com/news/detail_2013_06/28/26922193_0_shtml>.

Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006716, dated Jul. 29, 2016, five pages.

Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006717, dated Jul. 29, 2016, five pages.

PCT International Search Report and Written Opinion, PCT Application No. PCT/IB2014/000530, dated Oct. 22, 2014, eight pages.

Science Share: Share the Tutorials of Electric Washing Device FOREO, Nov. 20, 2013 [online], [retrieved on Aug. 26, 2014). Retrieved from the Internet: <http://bbs.pclady.com.cn/topic-1782404.html1> (with concise explanation of relevance).

Silicone Suction Cup Face Exfoliate Beauty Brushes, SourcingMap Ltd., 2006-2014, two pages, [Online] [Retrieved on Sep. 15, 2014]

Retrieved from the Internet<URL: http://www.sourcingmap.com/ladies-silicone-suction-cup-face-exfoliate-beauty-brushes-pink-p-242745.html>.

United States Office Action, U.S. Appl. No. 14/149,793, dated Apr. 21, 2016, twenty-five pages.

United States Office Action, U.S. Appl. No. 14/572,519, dated Mar. 27, 2015, ten pages.

United States Office Action, U.S. Appl. No. 14/149,793, dated Sep. 24, 2015, twenty-seven pages.

USPTO, Final Office Action, U.S. Appl. No. 14/149,793, dated Feb. 9, 2017, 32 pages.

State Intellectual Property Office (China), Intl. App. No. 20140010001.2, First Office Action, dated Feb. 23, 2017, pp. 1-11.

Reply to Final Office Action for U.S. Appl. No. 14/149,793, filed May 8, 2017, pp. 1-9.

United States Office Action, U.S. Appl. No. 14/572,519, dated May 9, 2017, pp. 1-9.

Reply to Final Office Action for U.S. Appl. No. 14/572,519, filed Feb. 23, 2017, pp. 1-13.

United States Office Action, U.S. Appl. No. 14/149,793, dated Jun. 2, 2017, pp. 1-30.

Reply to Office Action for U.S. Appl. No. 14/149,793, filed Aug. 24, 2017, pp. 1-8.

Reply to Office Action for U.S. Appl. No. 14/572,519, filed Jun. 13, 2017, pp. 1-14.

United States Office Action, U.S. Appl. No. 14/572,519, dated Sep. 26, 2017, pp. 1-8.

IP Australia, "Examination Report No. 2 for Innovation Patent," Int. App. No. 2017100130, dated Aug. 11, 2017, pp. 1-5.

European Patent Office, Examination Report, European Patent Application No. 14735118.3, dated Aug. 29, 2017, 6 pages.

SIPO of the People's Republic of China, Second Office Action, Chinese Pat. App. No. 201480010001.2, dated Aug. 23, 2017, 10 pages.

USPTO, Non-final Office Action, U.S. Appl. No. 14/572,519, dated Sep. 26, 2017.

Australian Government, IP Australia, Examination Report No. 1 for Australian Patent Application No. AU 2016262690, dated Sep. 27, 2017, 3 pages.

* cited by examiner



*Fig. 1*



*Fig. 2*



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*



*Fig. 8*



*Fig. 9*



*Fig. 10*



*Fig. 11*



*Fig. 12*



*Fig. 13*



*Fig. 14*



*Fig. 15*



*Fig. 16*



*Fig. 17*



*Fig. 18*

US 9,889,065 B2

**1**

## SKIN CLEANSER

### CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. Non-provisional patent application Ser. No. 14/572,519, filed Dec. 16, 2014, which is a continuation of Non-provisional U.S. patent application Ser. No. 14/149,793, filed Jan. 7, 2014, which claims the benefit of U.S. Provisional Application Ser. No. 61/749,751, filed Jan. 7, 2013 and U.S. Provisional Application Ser. No. 61/841,542, filed Jul. 1, 2013. Each of these related applications is incorporated by reference into this disclosure its entirety.

### BACKGROUND

Skin health and appearance is an important aspect of many beauty regimens. Typical skin care focuses on particular creams or lotions to be applied to the skin, usually performed manually by sponge or brush. Cleaning by hand often fails to adequately apply lotions to the skin, and can be ineffective at removing grease, oils, and other contaminants. An effective skin cleanser device should clean the face more effectively than hand cleaning, but avoid abrasions or other harsh impacts on the skin.

### SUMMARY

A skin cleanser includes one or more oscillating motors or other electromagnetic device that can provide the skin cleanser with various frequency pulsations, and an extruder that can be composed of a soft elastic material, such as silicone, and one or more textured surfaces, including rounded touch-points of 0.5 to 2.5 mm of diameter, or solid surfaces with ridges for cleaning or otherwise interacting with the skin. The oscillating motor moves or oscillates the textured surfaces for application to a user's skin. As the user moves the skin cleanser on the skin, the oscillating pulsations combined with the textured surfaces' touch-points remove oil and other contaminants on the skin's surface. The oscillating pulsations provide a tapping motion to the user's skin to cleanse and loosen contaminants. The oscillations occur at around 50-300 Hertz (Hz). One embodiment includes a high-frequency and a low-frequency oscillating motor or other electromagnetic device that may operate simultaneously or independently. The simultaneous pulsations provide a deep cleaning to the skin. While referred to here as a skin cleanser, the device can also perform other functions besides cleansing, including massaging, exfoliating, buffing, stimulating, toning, exercising, heating, applying lotions or other substances, and so forth.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a cross-sectional view of a skin cleanser, according to one embodiment.

FIG. **2** is a cross-sectional view of a skin cleanser, according to one embodiment.

FIG. **3** is a front view of a skin cleanser, according to one embodiment.

FIG. **4** is a back view of a skin cleanser, according to one embodiment.

FIGS. **5** and **6** are side views of a skin cleanser, according to one embodiment.

FIGS. **7** and **8** are top and bottom views of a skin cleanser, according to one embodiment.

**2**

FIG. **9** is a perspective view of a skin cleanser, according to one embodiment.

FIGS. **10** and **11** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. **12** and **13** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. **14** and **15** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIG. **16** is a skin analyzer, according to one embodiment.

FIGS. **17** and **18** are views of one embodiment of a brush surface configuration for a skin cleanser.

The figures depict various embodiments of the present invention for purposes of illustration only. One skilled in the art will readily recognize from the following discussion that alternative embodiments of the structures and methods illustrated herein may be employed without departing from the principles of the invention described herein.

### DETAILED DESCRIPTION

FIG. **1** is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser directs pulsations to a user through rounded touch-points on a brush, such as silicone brush **100**. The touch-points and brush can be composed of various elastic materials, preferably materials that are soft and do not damage the skin, such as silicone. Silicone is used as an example throughout, though it is understood that other materials can be used, as well. The silicone brush **100** is made of a hygienic silicone that is fast-drying and non-absorbent, allowing the skin cleanser to be used with many skin cleaning products without wear. The silicone brush **100** and other skin-contacting portions of the skin cleanser may also include active ingredients, such as vitamin E, antioxidants, or silver nano-particles. For example, the can be coated with these ingredients by the user or pre-coated, or can have a delivery mechanism in the brush that can store and provide these ingredients upon use. A high- or low-frequency oscillating motor **110** creates pulsations that vibrate the skin cleanser. The oscillating motor **110** in this embodiment provides vibrations between 50 and 300 Hz, though pulsation frequencies higher and lower than this range may also provide beneficial cleansing of the skin. When the skin cleanser, and the silicone brush **100** in particular, is applied to the body, such as the face or neck, the pulsations provide a thorough cleaning of the skin. The pulsations provide a tapping motion to the skin, in some embodiments, by providing impulses to the skin's surface from the silicone touch-points **100** pulsating against the skin's surface. The tapping-based cleansing provided by the silicone brush provides a deeper clean that is less abrasive than scrubbing the skin with harsher bristles of other materials (e.g., nylon brush bristles). Frequencies in this range provide deep facial cleansing of oil and dirt, unclog follicles, and stimulate blood circulation and lymph flow within the skin.

The oscillating motor **110** is enclosed in a frame **120**, which is enclosed by a casing including a top **130** and a bottom **140** made of a suitable material, such as plastic. In some embodiments, there is more than one oscillating motor, which may vary from one another in frequency. A controller, such as a printed circuit board **150**, provides control to the oscillating motor **110**, which is powered by a battery **160**. The battery **160** is charged through a charging port, such as a DC jack **170**.

The user interacts with the controller through controls on the exterior of the skin cleanser (such as those shown in FIG. **3**) or through a wireless remote. When activated by the

US 9,889,065 B2

3

controls, the controller initiates a high-frequency vibration of the oscillating motor **110**. The user may increase and decrease the frequency of vibration of the motor through controls to set the frequency desired by the user. The frequency set by the user may be stored by the controller when the controller is deactivated, such that the next time the controller is turned on the controller resumes the desired frequency.

FIG. **2** is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser in FIG. **2** includes similar components to the skin cleanser in FIG. **1**, and additional components as described. This embodiment includes a second oscillating motor **200** and a frame **210** containing the second motor **200**. In this embodiment, the second motor **200** is capable of creating vibrations at a lower frequency relative to the high-frequency oscillating motor **110**. The second motor **200**, for example, produces pulsations of 50-130 Hz. The controller in this embodiment may use the second motor **200** alone or in combination with the high-frequency motor **110** to create different vibration effects from the skin cleanser. Using the back-side of the brush, upward strokes on the skin, such as beneath the jaw line, allow the stronger combination of high-frequency and lower-frequency vibration to tone and tighten underlying musculature, such as that of the neck. Additional benefits can range from stimulating collagen synthesis in fibroblast cells to improving the flow of blood and lymphatic fluid— the result is healthier, younger-looking skin, such as in the known problem areas of the face, and a more sharply defined profile of the face. In one embodiment, the FIG. **2** device is a larger cleanser and the FIG. **1** device is a smaller or mini-cleanser.

The controller may also activate the lower-frequency motor alone. The lower-frequency vibrations (e.g., in the range of 50-130 Hertz) in conjunction with ridged silicone brush may be used by a user on the skin to relax underlying musculature. In particular, when gently applied to expression-line problem areas at the brow, temples and nasolabial folds, the skin cleanser can relax underlying muscles and reduce the appearance of dynamic wrinkles. Thus, the high-frequency oscillating motor **110** together with the second oscillating motor **200** may enable the skin cleanser to provide a variety of modes and benefits to the user. In some embodiments, the motors **110**, **200** can be used in an alternating fashion to provide alternating low and high frequency pulsations to the cleanser.

In one embodiment, a sensor is also included in the skin cleanser near the front or back of the skin cleanser (or both). The sensor may be a pressure sensor, capacitive sensor, or similar, and detects a user's action to activate the sensor, such as by contacting the body exterior to the sensor. In one embodiment, the controller activates at least one of the oscillating motors when the sensor is activated, permitting the device to automatically activate when the user activates the sensor. Multiple sensors may be included to activate different functions. For instance, in one configuration a sensor is located underneath each textured side of the skin cleanser and detects contact with that textured side. Based on which sensor is activated, the controller activates an operational mode suitable for the side on which the sensor was activated. For example, activating only the low-frequency oscillating motor when one side is contacted, and simultaneously activating the low- and high-frequency oscillating motors when the other side is contacted.

FIGS. **3-9** illustrate various views of the exterior of a skin cleanser according to some embodiments. The exterior shown in FIGS. **3-9** correspond to the internal configuration

4

shown in FIG. **2**. The exterior is formed of a soft but durable elastic material, such as a hygienic silicone. The skin cleanser includes brush surfaces **300** and **400** on the front and the back of the device with varying textures, such as touch-points of 0.5-2.5 mm diameter, or solid ridged surfaces. The brush surface **300** comprises a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser. Providing more resistance than the thinner touch-points, the thicker touch-points allow for more targeted cleansing of oilier areas and hard to-reach points around the nose, ears and hairline. The pattern of touch-points presented in FIGS. **3-9** is one example of a pattern that might be used to cleansing of what is commonly referred to as "normal" skin. Normal skin can include some areas that are drier, oilier, or more sensitive, such that the different patterns of thinner and thicker touch-points can be helpful in targeting these areas (e.g., thinner touch-points for oily areas around the nose). The thinner touch-points and thicker touch-points may vary in size and spacing. In various embodiments, the thinner touch-points are 25-80% thinner (e.g., 30%, 40%, 50%, 60%, 70%, etc. or values in between) compared to the thicker touch-points. In various embodiments, the thinner touch-points are spaced closer together (i.e., the distance between touch-points) by 15%-60%. Thus, the thinner and thicker touch-points for the normal skin cleansing can also be arranged differently around the brush surface than is shown in FIGS. **3-9**. In one embodiment, the thicker touch points are between about 1.5 mm and 2.5 mm in diameter, and the thinner touch points are between about 0.5 mm and 1.5 mm in diameter.

The touch points and the body of the skin cleanser itself may be compressible and bendable, such that the touch points and body of the skin cleanser conform to the surface of the skin during use.

The brush surface **400** is a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the pulsation energy transfer, and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. Thus, both surfaces **300** and **400** of the brush can be used for skin cleansing, and specifically for different applications of skin cleansing.

The front of the skin cleanser also includes a mode control **310** and frequency controls **320**. The mode control **310** activates the skin cleanser and is used to cycle through modes of operation for the skin cleanser, such as turning the cleanser on, activating the high-frequency and second lower-frequency motor both independently or in unison, and turning the skin cleanser off. Fewer, more, or different controls may be included for other embodiments. The skin cleanser may also activate a mode that directs the user to cycle through portions of the face when applying vibrations through the skin cleanser. The base **330** of the cleanser may light up or otherwise indicate a prompt for the user to move to another portion of the face. As one example, in this mode that directs cycling through the face, the cleanser may first indicate that the user should apply the brush to the area around the cheeks for a period of time, and then may indicate that the user should apply the brush to the area around the chin, and so forth until the user has cycled throughout the face. The cleanser can indicate when it is time to switch by, for example, lighting up the base, blinking the light a certain number of times, or otherwise using the light to indicate instructions to the user. Different cleaning regimens can be used for different cleansers. For example, a sensitive skin cleanser might have a cycle that is shorter in certain areas of the face to avoid irritating the face. A user might also have

US 9,889,065 B2

5   6

a program designed specifically for the user's own skin, with shorter or longer application of the brush to different areas of the face as needed for that user's skin. The program designed for a user's skin may be assessed by the manufacturer and programmed to the controller according to a diagnostic of the user's particular skincare needs.

The brush surfaces are designed to efficiently channel the high-frequency vibrations into the skin to cleanse deeply, unblock follicles, and to boost circulation and lymph flow. By avoiding abrasive exfoliation (as used in other brush-type devices), the brush surface remains gentle enough to use for twice-daily facial cleansing or more uses in the day, as needed. Relative to other cleansing devices, this skin cleanser does not rely on a spinning or twisting action; the result is a deeper clean without the need for such abrasive scrubbing. The pulsations in combination with the textured surfaces, the elastic, soft material touch-points and the solid ridged surfaces provide thorough cleansing, since the textured surface directs the power of the high-frequency motor substantially orthogonal to the skin's surface, which unlocks the skin's natural potential. In one embodiment, the touch-points of the textured surface vertically oscillate from the brush to the skin to create a tapping motion on the skin, similar to the tapping of fingertips on the skin or the patting with a towel or cotton pad. The vertical tapping of the skin in this embodiment provides a gentle cleansing of the skin, as opposed to a rotating motion that can cause a less favorable twisting or stretching of the skin that may cause damage to or scratching of the skin surface.

The vertical tapping motion can be generated by the vibrations of the motor or of multiple motors, or other electromagnetic device in the brush, by electromechanical mechanisms, among other means. For example, the motors can be positioned in the brush to cause the vertical oscillations of the touch-points, such as by positioning one or more motors directly under or adjacent to the textured surface of the brush. The oscillation of the motor(s) can cause each of or at least some of the touch-points to move orthogonal to the skin's surface to tap the skin. Multiple motors can be arranged near the textured surface to create different motions or different speeds of vertical oscillations across the textured surface of the skin. For example, the motors can be positioned so that different touch-point arrangements or patterns on the textured surface can oscillate differently from one another to provide one type of tapping motion for some touch-points and a different type (e.g., different speed, pattern, etc.) for other touch-points. In some embodiments, each touch-point is a single structure rather than a plurality of structures, such as might be found in a brush where each brush bristle is made up of multiple bristle components arranged as a bunch.

The skin cleanser body can be configured to have different shapes, such as a substantially oval shape (e.g., FIGS. 3-9), a substantially round shape (e.g., FIGS. 17-18), and so forth, and it includes a base 330 that is substantially flat to allow the cleanser to be placed on and stand on a surface. The oval or round shape of the body allows the user to hold the cleanser in the palm of her hand, possibly with fingers splayed along the back side of the cleanser and thumb against the controls in the front side of the cleanser. In some embodiments, the cleanser is wider than it is thick, as is shown, for example, in FIG. 5. This configuration allows the user to easily hold the cleanser in the palm of her hand and reach her fingers around both side of the cleanser for easy and ergonomic manipulation of the cleanser against the skin. The body can thus have two components, the textured portions 300 and 400, and a handle or portion for grasping

or manipulating the device, which includes everything other than the textured portions 300, 400. The textured portion can comprise at least 10%, 20%, 30%, 40%, 50% or more of the cleanser outer surface or of the front or of the back of the cleanser outer surface. The textured portion can be positioned on an upper portion or tip of the cleanser, such as is shown in FIGS. 3-9, but can also be otherwise positioned (e.g., at the sides, in the middle, at the bottom, etc.).

FIGS. 3-9 provide just one example of how the touch-points on the brush can be arranged. A variety of other arrangements are also possible (e.g., thinner touch-points at the top and thicker at the bottom, thinner on one side and thicker on the other side, alternating rows of thinner and thicker, various areas or groupings of thinner and thicker in different locations on the brush, and so forth). In addition, different types of touch-points can be included, such as taller or shorter touch-points, touch-points with more or less bulbous ends, touch-points with ends of different shapes (e.g., pointed, feathered, ridged, etc.), and so forth. Similarly, the touch-points can be arranged more or less densely, can be positioned on both the front and back of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), among other variations. Some other examples of touch-point arrangements are shown in FIGS. 10-15. In addition, the ridges of brush surface 400 in FIGS. 3-9 (and for FIGS. 10-15) can be arranged on one or both sides of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), can be positioned with the touch-points (e.g., above or below, or intermingled within the touch-points), can be formed into other patterns or shapes or with different spacing, among other variations.

FIGS. 10 and 11 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for men's facial skin. The brush on the front side, as shown in FIG. 10, includes a series of thicker touch-points covering the whole front surface, reflecting the additional cleansing normally required for men's oilier skin, with its larger pores and facial hair that act as magnets for dirt and pollutants, making acne, blackheads and breakouts more likely to occur. Providing more resistance than the thinner touch-points, they allow for firmer, deeper cleansing to meet the challenges of a man's thicker skin. The resulting boost to the health of the skin can reduce the discomfort and irritation often associated with, for example, daily wet shaving. The brush on the back side, as shown in FIG. 11, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency (high-frequency and lower-frequency motor in combination) toning and low-frequency, muscle-relaxing functions.

FIGS. 12 and 13 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for skin with some oilier areas. The brush on the front side, as shown in FIG. 12, includes a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser, as well as two additional waves of thicker touch-points. Providing less flexibility than the thinner touch-points, these allow for stronger cleansing and the targeting of oilier areas and hard to-reach points around the nose, ears and hairline. The brush on the back side, as shown in FIG. 13, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the

US 9,889,065 B2

7      8

pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions.

FIGS. **14** and **15** are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for sensitive skin. The brush on the front side, as shown in FIG. **14**, includes a series of closely packed, smooth silicone ridges in a wave formation, designed to minimize abrasion and allow for the extra-gentle yet highly effective cleansing of even the most sensitive skin. The brush on the back-side, as shown in FIG. **15**, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. The smooth silicone ridges on the front side in one embodiment are spaced closer to one another compared to the spacing of the ridges on the back-side. The ridges on the front side may be spaced between 10-60% closer together (e.g., 20%, 30%, 40%, 50%, etc. or values in between) relative to the spacing of the ridges on the back-side. In addition, the ridges on the front side are cushioned with additional space between the soft elastic surface and the plastic casing in order to provide with extra-gentle cleansing.

FIGS. **17** and **18** are views of one embodiment of a brush surface configuration for a skin cleanser. This brush surface configuration corresponds to the internal configuration shown in FIG. **1**. The brush on the front side, as shown in FIG. **17**, includes a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the brush. The brush on the back side, as shown in FIG. **18**, provides a series of thicker touch-points allowing a deeper clean provided by the thicker touch-points to be applied to a larger area.

FIGS. **3-15** and **17-18** are just some examples of different brush surface configurations matched to different skin types. Other designs for other skin types are also possible, such as a particular pattern for dry skin, for aging skin, for combination skin or T-zone skin (e.g., oilier around the forehead, nose, and chin), among others. In some embodiments, the front textured surface includes at least two different types of touch-points (e.g., thicker and thinner). The touch-points of a type can be grouped to provide a pattern. For example, FIG. **3** shows a group of thicker touch-points at the tip of the cleanser and a group of thinner touch-points below. Each pattern can correspond to a particular skin type (e.g., male, sensitive, oily, normal, etc.). In some embodiments, at least 10%, 20%, 30%, 40%, 50% of the front textured surface includes touch-points of a different type than the rest of the front textured surface.

The brush surface can also be designed to contour the curves of the body or face. In one embodiment, one or more surfaces of the brush, e.g., the textured surfaces, are deformable or bendable. For example, where the textured surface is composed of silicone, the surface can compress or bend when pressed against the skin to mold to the surface of the skin for providing a deeper cleansing and for better cleaning of skin surfaces that are curved. In other embodiments, the textured surface can be designed to pivot relative to the brush or to include one or more portions that pivot such that the textured surface can mold to the shape of the skin.

FIG. **16** is a skin analyzer according to one embodiment. The skin analyzer is a handheld device capable of analyzing the skin of the user. The results of the skin analysis may be provided to the user to guide use of the skin cleanser, for example by measuring effectiveness and oiliness of the skin after use. The skin analyzer is encased in a body **1600** held by the operator of the skin analyzer. The skin analyzer includes sensors **1610** that sense the skin's condition, such as oil levels, moisture content, and dead skin cell levels. The results of the skin analysis may be communicated to the user by connecting the skin analyzer to a display or by wireless communication with a display or computer to direct the user in the use of a skin cleanser, such as whether the skin cleanser is being used too frequently or to show improvement of the skin over a period of time as the skin cleanser is applied. The skin analyzer may also provide the results of the analysis via an interface to the skin cleanser, which may be used to change the suggested frequency of applying the skin cleanser to portions of the user's face during cleansing. The cleanser can also include an interface to communicate with the skin analyzer, including sending information about how often it is used, what skin regimens or programs are used, etc.

In one embodiment, the skin analyzer can provide a diagnostic of the user's particular skincare needs, such as by indicating skin type (e.g., oily skin, oily skin in certain areas, sensitive skin, dry skin, dry in certain areas, male or female skin, normal skin, etc.) or by indicating specific details about the user's skin at different areas of the face or different times of day (e.g., tends to be dry in the morning, tends to be thin near the eye area, tends to be dry around the nose, etc.). The skin analyzer data can be used to design a program or skincare regimen specific to the user's skin. The program designed for a user's skin may be assessed by the user or by a third party, such as the manufacturer of the skin cleanser or analyzer, a beautician, a dermatologist or other medical personnel, etc. For example, information about the program can be transmitted via the interface of the skin analyzer or skin cleanser to a computer of the user or third party for review and possible revision. The program or regimen (possibly as revised by the user or third party) can be programmed to the controller of the skin cleanser according to the diagnostic of the user's particular skincare needs.

Additional features may also be included in the skin cleanser. In one embodiment, the skin cleanser includes a heat-emitting source located between the body and the textured surfaces. The heat-emitting source, when activated by the controller, heats the textured surfaces and may be used in conjunction with the oscillations of the touch-points. In a further embodiment, the skin cleanser includes a dosing mechanism integrated in the body of the device to dispense liquids or solid suspensions, such as for the delivery of silver nanoparticles, Vitamin E, etc. as described above. The dosing mechanism may include a reservoir, for example at the base of the skin cleanser, and a pump with an outlet to dispense contents of the reservoir to the textured surfaces or near the textured surfaces.

SUMMARY

The foregoing description of the embodiments of the invention has been presented for the purpose of illustration; it is not intended to be exhaustive or to limit the invention to the precise forms disclosed. Persons skilled in the relevant art can appreciate that many modifications and variations are possible in light of the above disclosure.

The language used in the specification has been principally selected for readability and instructional purposes, and it may not have been selected to delineate or circumscribe the inventive subject matter. It is therefore intended that the scope of the invention be limited not by this detailed

US 9,889,065 B2

9

description, but rather by any claims that issue on an application based hereon. Accordingly, the disclosure of the embodiments of the invention is intended to be illustrative, but not limiting, of the scope of the invention.

What is claimed is:

**1**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having:

a first side defining first and second textured surface areas that are integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points and a second textured surface area comprising a second set of touch-points, each touch-point of the second set of touch-points having a diameter that is smaller than a diameter of each touch-point of the first set of touch-points, the second set of touch-points being disposed closer to the base than the first set of touch-points, wherein the diameter of each touch-point of the first set of touch-points is between about 0.5 millimeters and 2.5 millimeters, wherein the diameter of each touch-point of the second set of touch-points is between about 0.5 millimeters and 2.5 millimeters, and

a second side defining a third textured surface area that is integrally formed with the silicone exterior, the third textured surface comprising a third set of touch-points;

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor.

**2**. The skin cleanser of claim **1**, wherein the first set of touch-points form a substantially semi-circular pattern.

**3**. The skin cleanser of claim **2**, wherein the second set of touch-points form a substantially semi-circular pattern.

**4**. The skin cleanser of claim **1**, wherein the first textured surface area is smaller than the second textured surface area.

**5**. The skin cleanser of claim **4**, wherein the third textured surface area is substantially the same size as the first and second textured surface areas combined.

**6**. The skin cleanser of claim **1**, wherein the silicone exterior defines a strip disposed between the first touch-points and the third touch-points at a top of the skin cleanser that does not define touch-points.

**7**. The skin cleanser of claim **1**, further comprising a first groove defined by the first side of the silicone exterior disposed nearer to the base than is the second set of touch-points.

**8**. The skin cleanser of claim **7**, further comprising a second groove defined by the second side of the silicone exterior disposed nearer to the base than is the third set of touch-points.

**9**. The skin cleanser of claim **1**, wherein the base is configured to emit light.

**10**. The skin cleanser of claim **9**, wherein the light emitted by the base indicates a pattern of use of the skin cleanser.

**11**. The skin cleanser of claim **10**, wherein the base is substantially transparent.

10

**12**. The skin cleanser of claim **1**, wherein the second side defines a charging port disposed closer to the base than to the third set of touch-points.

**13**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having:

a first side defining first and second textured surface areas that are integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points and a second textured surface area comprising a second set of touch-points, each touch-point of the second set of touch-points having a diameter that is smaller than a diameter of each touch-point of the first set of touch-points, the second set of touch-points being disposed closer to the base than the first set of touch-points, wherein the diameter of each touch-point of the first set of touch-points is between about 0.5 millimeters and 2.5 millimeters, wherein the diameter of each touch-point of the second set of touch-points is between about 0.5 millimeters and 2.5 millimeters, and

a second side defining a third textured surface area that is integrally formed with the silicone exterior, the third textured surface comprising a first set of ridges;

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor.

**14**. The skin cleanser of claim **13**, wherein the first set of ridges defines at least five ridges.

**15**. The skin cleanser of claim **14**, wherein each ridge of the first set of ridges is substantially arcuate in shape.

**16**. The skin cleanser of claim **15**, wherein each ridge of the first set of ridges is disposed on the second side and extends towards the base from an end of said skin cleanser body opposite the base.

**17**. The skin cleanser of claim **13**, wherein the base is configured to emit light.

**18**. The skin cleanser of claim **17**, wherein the light emitted by the base indicates a pattern of use of the skin cleanser.

**19**. The skin cleanser of claim **13**, further comprising a first groove defined by the first side of the silicone exterior disposed nearer to the base than is the second set of touch-points.

**20**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having a first side defining first and second textured surface areas that are integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points and a second textured surface area comprising a second set of touch-points, each touch-point of the second set of touch-points having a diam-

US 9,889,065 B2

11

12

eter that is smaller than a diameter of each touch-point of the first set of touch-points, the second set of touch-points being disposed closer to the base than the first set of touch-points, wherein the diameter of each touch-point of the first set of touch-points is between about 0.5 millimeters and 2.5 millimeters, wherein the diameter of each touch-point of the second set of touch-points is between about 0.5 millimeters and 2.5 millimeters;

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor;

wherein the base is configured to emit light; and

wherein the light emitted by the base indicates a pattern of use of the skin cleanser.

\* \* \* \* \*

US010349788B1

(12) **United States Patent**
Sedic

(10) **Patent No.:**    **US 10,349,788 B1**
(45) **Date of Patent:**    ***Jul. 16, 2019**

(54) **SKIN CLEANSER**

(71) Applicant: **FOREO Inc.**, Las Vegas, NV (US)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(73) Assignee: **FOREO Inc.**, Las Vegas, NV (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/295,446**

(22) Filed: **Mar. 7, 2019**

**Related U.S. Application Data**

(63) Continuation of application No. 16/007,078, filed on Jun. 13, 2018, which is a continuation of application
(Continued)

(51) **Int. Cl.**
**A47K 7/02**        (2006.01)
**A61H 7/00**        (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .................. ***A47K 7/02*** (2013.01); ***A47K 7/04*** (2013.01); ***A47K 7/043*** (2013.01); ***A61B 5/443*** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A61H 23/00; A61H 7/003; A61H 7/005; A61H 7/002; A61H 19/44; A61H 19/34;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,491,016 | A | 4/1924 | McGowan et al. |
| 2,480,023 | A | 8/1949 | Holden |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2040777 | 7/1989 |
| CN | 2172110 | 7/1994 |

(Continued)

OTHER PUBLICATIONS

"Silicone Face Massage Brush," Alibaba.com, 1999-2014, Alibaba_com, 6 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL.:http://www.alibaba.com/countrysearch/CN/silicone-face-massage-brush.html.

(Continued)

*Primary Examiner* — Kathleen S Holwerda
*Assistant Examiner* — Christina C Lauer
(74) *Attorney, Agent, or Firm* — Evan Feldstein

(57)        **ABSTRACT**

A skin cleanser includes a surface, such as a silicone surface, with at least one textured portion for transmitting vibrational tapping to the skin. The skin cleanser includes at least one oscillating motor for generating the tapping motion to the skin. The textured portion includes touch-points or a wave that transmit the tapping motion to skin in contact with the textured portions. The touch-points may include thicker and thinner formations of the touch-points to provide firmer or softer vibrations to the skin. The touch-points are within about 0.5 to 2.5 mm in diameter. One configuration includes multiple oscillating motors configured to provide different vibration frequencies at around 50-300 Hertz and operable simultaneously.

**20 Claims, 17 Drawing Sheets**



**US 10,349,788 B1**

Page 2

## Related U.S. Application Data

No. 15/893,971, filed on Feb. 12, 2018, now Pat. No. 10,028,884, which is a continuation of application No. 15/397,976, filed on Jan. 4, 2017, now Pat. No. 9,889,065, which is a continuation of application No. 14/572,519, filed on Dec. 16, 2014, now Pat. No. 10,213,064, which is a continuation of application No. 14/149,793, filed on Jan. 7, 2014, now Pat. No. 9,907,439.

(60) Provisional application No. 61/749,751, filed on Jan. 7, 2013, provisional application No. 61/841,542, filed on Jul. 1, 2013.

(51) **Int. Cl.**

| | |
|---|---|
| *A61B 5/00* | (2006.01) |
| *A61H 23/00* | (2006.01) |
| *A47K 7/04* | (2006.01) |
| *A61H 23/02* | (2006.01) |

(52) **U.S. Cl.**
CPC ............. *A61B 5/445* (2013.01); *A61H 7/002* (2013.01); *A61H 7/003* (2013.01); *A61H 7/004* (2013.01); *A61H 7/005* (2013.01); *A61H 23/00* (2013.01); *A61H 23/006* (2013.01); *A61H 23/02* (2013.01); *A61H 23/0254* (2013.01); *A61H 23/0263* (2013.01); *A61H 2023/0272* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/02* (2013.01); *A61H 2201/0207* (2013.01); *A61H 2201/105* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1223* (2013.01); *A61H 2201/5002* (2013.01); *A61H 2201/5035* (2013.01); *A61H 2201/5038* (2013.01); *A61H 2201/5041* (2013.01); *A61H 2201/5097* (2013.01); *A61H 2205/022* (2013.01)

(58) **Field of Classification Search**
CPC .......... A61H 19/40; A47K 7/043; A47K 7/04; A47K 7/02
See application file for complete search history.

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,764,773 | A | 10/1956 | Glanvill et al. |
| 2,867,211 | A | 1/1959 | Hughes |
| 3,251,085 | A | 5/1966 | Jacobs |
| 3,346,748 | A | 10/1967 | Mcnair |
| 3,358,309 | A | 12/1967 | Richardson |
| 3,906,940 | A | 9/1975 | Kawada |
| 3,968,789 | A | 7/1976 | Simoncini |
| 4,027,348 | A | 6/1977 | Flowers et al. |
| 4,112,040 | A | 9/1978 | Orentreich |
| 4,249,521 | A | 2/1981 | Gueret |
| 4,463,485 | A | 8/1984 | Gueret |
| 4,564,032 | A | 1/1986 | Araki |
| 4,570,616 | A | 2/1986 | Kunz et al. |
| D288,847 | S | 3/1987 | Kaeser |
| D331,466 | S | 12/1992 | Doria |
| 5,176,130 | A | 1/1993 | Kim |
| D351,474 | S | 10/1994 | Huang |
| D361,386 | S | 8/1995 | Vandenbelt |
| D369,220 | S | 4/1996 | Huang |
| 5,511,270 | A | 4/1996 | Eliachar et al. |
| D382,645 | S | 8/1997 | Bergeron |
| 5,792,080 | A | 8/1998 | Ookawa et al. |
| D423,109 | S | 4/2000 | Allende |
| 6,202,242 | B1 | 3/2001 | Salmon et al. |
| 6,226,811 | B1 | 5/2001 | Fagan |
| 6,267,736 | B1 | 7/2001 | McCambridge et al. |
| 6,283,930 | B1 | 9/2001 | Purvis et al. |
| D456,942 | S | 5/2002 | Au et al. |
| 6,393,718 | B1 | 5/2002 | Harris et al. |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| D466,217 | S | 11/2002 | Harris et al. |
| D466,695 | S | 12/2002 | Chen |
| D469,183 | S | 1/2003 | Gerth et al. |
| D476,087 | S | 6/2003 | Dirks et al. |
| 6,588,964 | B1 | 7/2003 | Au et al. |
| D478,174 | S | 8/2003 | Huang |
| D487,592 | S | 3/2004 | Chang |
| D512,225 | S | 12/2005 | Chien |
| D514,328 | S | 2/2006 | Huang |
| D517,218 | S | 3/2006 | Kalen |
| D523,561 | S | 6/2006 | Telford |
| D523,958 | S | 6/2006 | Fang |
| D539,917 | S | 4/2007 | Park |
| D548,851 | S | 8/2007 | Huang |
| D549,351 | S | 8/2007 | Wu |
| D557,806 | S | 12/2007 | Gromosaik et al. |
| 7,303,534 | B2 | 12/2007 | Kahn |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| D569,106 | S | 5/2008 | Maruyama |
| D571,926 | S | 6/2008 | Wu |
| 7,384,377 | B2 | 6/2008 | Berman |
| D574,108 | S | 7/2008 | Yando et al. |
| D576,736 | S | 9/2008 | Hagege |
| D595,898 | S | 7/2009 | Syran et al. |
| D616,103 | S | 5/2010 | Ford-Robertson |
| D622,405 | S | 8/2010 | Tuli |
| D626,656 | S | 11/2010 | Jarry |
| D629,528 | S | 12/2010 | Adkisson |
| D635,720 | S | 4/2011 | Cammarano |
| D645,569 | S | 9/2011 | Nitsch |
| D646,795 | S | 10/2011 | Seehoff et al. |
| D648,442 | S | 11/2011 | Caggiano |
| D652,525 | S | 1/2012 | Caggiano |
| D652,941 | S | 1/2012 | Zamar |
| D671,281 | S | 11/2012 | Singer |
| D674,108 | S | 1/2013 | York |
| 8,523,791 | B2 | 9/2013 | Castel |
| 8,622,890 | B1 | 1/2014 | Caggiano et al. |
| 8,679,039 | B2 | 3/2014 | Tieu et al. |
| 8,745,807 | B2 | 6/2014 | Vamer et al. |
| D715,935 | S | 10/2014 | Untington et al. |
| D768,301 | S | 10/2016 | Kling et al. |
| 9,889,065 | B2 * | 2/2018 | Sedic ................... A47K 7/043 |
| 10,028,884 | B2 * | 7/2018 | Sedic ................... A47K 7/043 |
| 2002/0107459 | A1 | 8/2002 | Chang |
| 2004/0060571 | A1 | 11/2004 | Mayeri |
| 2004/0225239 | A1 | 11/2004 | Yamamoto et al. |
| 2005/0059914 | A1 | 5/2005 | Kleinhenz et al. |
| 2005/0113725 | A1 | 6/2005 | Masuda |
| 2005/0142093 | A1 | 6/2005 | Skover et al. |
| 2006/0010630 | A1 | 3/2006 | Tse |
| 2006/0058714 | A1 | 8/2006 | Rhoades |
| 2006/0236474 | A1 | 10/2006 | Jaffe |
| 2006/0168746 | A1 | 12/2006 | Guyuron et al. |
| 2006/0276731 | A1 | 12/2006 | Thiebaut et al. |
| 2007/0017540 | A1 | 1/2007 | Davis et al. |
| 2007/0142845 | A1 | 6/2007 | Akridge et al. |
| 2007/0179412 | A1 | 8/2007 | Imboden et al. |
| 2007/0198031 | A1 | 8/2007 | Kellogg |
| 2007/0232967 | A1 * | 10/2007 | Driscoll .................. A61H 19/00 |
| | | | 601/46 |
| 2008/0110471 | A1 | 5/2008 | Oliver et al. |
| 2008/0119913 | A1 | 5/2008 | Powell |
| 2008/0125680 | A1 | 5/2008 | Richmond et al. |
| 2008/0125682 | A1 | 5/2008 | Bonneyrat |
| 2008/0167590 | A1 | 7/2008 | Jon et al. |
| 2008/0210252 | A1 | 9/2008 | Taggart et al. |
| 2009/0036809 | A1 | 2/2009 | Nishio et al. |
| 2009/0198159 | A1 | 8/2009 | Linzell |
| 2009/0275796 | A1 | 11/2009 | Gil |
| 2009/0312590 | A1 | 12/2009 | Smith |
| 2009/0318755 | A1 | 12/2009 | Adams et al. |
| 2009/0318853 | A1 | 12/2009 | Reed et al. |
| 2010/0036295 | A1 | 2/2010 | Altshuler et al. |

**US 10,349,788 B1**

Page 3

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2010/0217357 | A1 | 8/2010 | Da Silva et al. |
| 2010/0262051 | A1 | 10/2010 | De LaForcade |
| 2011/0071445 | A1* | 3/2011 | Imboden ................ A61H 19/30 601/46 |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. |
| 2011/0098613 | A1 | 4/2011 | Thomas et al. |
| 2011/0144426 | A1 | 6/2011 | Blenk et al. |
| 2011/0184499 | A1 | 7/2011 | Radi |
| 2011/0251537 | A1 | 10/2011 | Yeo |
| 2011/0257474 | A1 | 10/2011 | Howard |
| 2011/0270274 | A1 | 11/2011 | Hull |
| 2012/0121313 | A1 | 5/2012 | Thiebaut |
| 2012/0165708 | A1 | 6/2012 | Parsloe |
| 2012/0209151 | A1 | 8/2012 | Zhou et al. |
| 2012/0234336 | A1 | 9/2012 | Paquet et al. |
| 2013/0023805 | A1 | 1/2013 | Ungemach et al. |
| 2013/0046212 | A1 | 2/2013 | Nichols |
| 2013/0079689 | A1 | 3/2013 | Thierman |
| 2013/0178769 | A1 | 7/2013 | Schmidt |
| 2014/0046127 | A1 | 2/2014 | Topolovac et al. |
| 2014/0107543 | A1 | 4/2014 | Pazouki |
| 2014/0171841 | A1 | 6/2014 | Kazaryan et al. |
| 2014/0296626 | A1 | 10/2014 | Butler et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 1655709 | 8/2005 |
| CN | 2761119 | 3/2006 |
| CN | 101056603 | 10/2007 |
| CN | 201422994 | 3/2010 |
| CN | 2012637712 | 1/2013 |
| EP | 1484043 | 12/2004 |
| EP | 1525872 | 4/2005 |
| EP | 1942857 | 7/2008 |
| EP | 2164443 | 3/2010 |
| EP | 2490645 | 8/2012 |
| JP | 2000-000283 | 1/2000 |
| JP | 2004-249061 | 9/2004 |
| KR | 101078567 | 1/2011 |
| TW | 200410650 | 7/2004 |

OTHER PUBLICATIONS

United States Office Action, U.S. Appl. No. 14/572,519, dated Jul. 18, 2016, twelve pages.
"Clarisonic" Web Page, Clarisonic, Pacific Bioscience Laboratories, Inc., 2013, 2 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.clarisonic.com/>.
"Neutrogena® Wave®," Neutrogena Corporation, 2014, 1 page, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.neutrogenawave.com/#/products>.
"Silicon Face Brushes," Alibaba.com, 1999-2014, 8 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/manufacturers/face-silicone-brush-manufacturer.html>.
"Vibrating cosmetics," 12 pages, PoshGlam®, Sep. 8, 2014, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.poshglam.com/beauty/>.
"Waterproof Electric Face Massager," Alibaba.com, 1999-2014, 3 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/product-gs/537532136/Water_proof_Electric_Face_Massager.html>.
Australian Government, IP Australia, Patent Examination Report No. 1, Australian Patent Application No. 2014204242, Jan. 28, 2016, three pages.

European Extended Search Report, European Application No. 14735118.3, Jun. 7, 2016, ten pages.
FOREO: Building the Best Brand of Skin Care, Dec. 13, 2013 [online retrieved on Aug. 26, 2014]. Retrieved from the Internet: <http://luxury.ce._cn/hydt/cygc/201312/13/t20131213_1271555_shtml>.
Global First Silicone Cleansing Instrument FOREO Leading a New Revolution 1-19 in Facial Care, Jun. 28, 2013 [online], [retrieved on Aug. 26, 2014]. Retrieved from the Internet: <http://fashion.ifeng.com/news/detail_2013_06/28/26922193_0. shtml>.
Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006716, dated Jul. 29, 2016, five pages.
Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006717, dated Jul. 29, 2016, five pages.
PCT International Search Report and Written Opinion, PCT Application No. PCT/IB2014/000530, dated Oct. 22, 2014, eight pages.
Science Share: Share the Tutorials of Electric Washing Device FOREO, Nov. 20, 2013 [online], [retrieved on Aug. 26, 2014). Retrieved from the Internet: <http://bbs.pclady.com.cn/topic-1782404.html> (with concise explanation of relevance).
Silicone Suction Cup Face Exfoliate Beauty Brushes, SourcingMap Ltd., 2006-2014, two pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.sourcingmap.com/ladies-silicone-suction-cup-face-exfoliate-beauty-brushes-pink-p-242745.html>.
United States Office Action, U.S. Appl. No. 14/149,793, dated Apr. 21, 2016, twenty-five pages.
United States Office Action, U.S. Appl. No. 14/572,519, dated Mar. 27, 2015, ten pages.
United States Office Action, U.S. Appl. No. 14/149,793, dated Sep. 24, 2015, twenty-seven pages.
United States Office Action, U.S. Appl. No. 14/572,519, dated Dec. 16, 2016, 13 pages.
United States Office Action, U.S. Appl. No. 15/397,976, dated Feb. 8, 2017, 40 pages.
United States Office Action, U.S. Appl. No. 15/397,976, dated Mar. 21, 2017, 16 pages.
United States Office Action, U.S. Appl. No. 15/397,976, dated May 23, 2017, 24 pages.
United States Office Action, U.S. Appl. No. 14/149,793, dated Feb. 9, 2017, 32 pages.
SIPO of the People's Republic of China, Second Office Action, Chinese Pat. App. No. 201480010001.2, dated Aug. 23, 2017, 10 pages.
United States Office Action, U.S. Appl. No. 14/572,519, dated May 9, 2017, pp. 1-9.
United States Office Action, U.S. Appl. No. 14/572,519, dated Sep. 26, 2017, pp. 1-8.
State Intellectual Property Office (China), Intl. App. No. 20140010001.2, First Office Action, dated Feb. 23, 2017, pp. 1-11.
United States Office Action, U.S. Appl. No. 14/149,793, dated Jun. 2, 2017, pp. 1-30.
Australian Government, IP Australia, Examination Report No. 1 for Australian Patent Application No. AU 2016262690, dated Sep. 27, 2017, 3 pages.
3rd Office Action for Chinese Patent Application No. CN 201480010001.2, dated Apr. 11, 2018, 9 pages.
IP Australia, "Examination Report No. 2 for Innovation Patent," Int. App. No. 2017100130, dated Aug. 11, 2017, pp. 1-5.
European Patent Office, Examination Report, European Patent Application No. 14735118.3, dated Aug. 29, 2017, 6 pages.
SIPO of the People's Republic of China, Fourth Office Action, Chinese Pat. App. No. 201480010001.2, dated Nov. 7, 2018, 6 pages.
CIPO, Office Action, Int'l app. No. 2,897,177, dated Feb. 25, 2019, pp. 1-4.

* cited by examiner



*Fig. 1*

U.S. Patent          Jul. 16, 2019          Sheet 2 of 17          US 10,349,788 B1



Fig. 2



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*



*Fig. 8*



*Fig. 9*



*Fig. 10*



*Fig. 11*



*Fig. 12*



*Fig. 13*



*Fig. 14*



*Fig. 15*



*Fig. 16*



*Fig. 17*



*Fig. 18*

US 10,349,788 B1

**1**

# SKIN CLEANSER

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of Non-provisional U.S. patent application Ser. No. 16/007,078, filed Jun. 13, 2018, which is a continuation of Non-provisional U.S. patent application Ser. No. 15/893,971, filed Feb. 12, 2018, which is a continuation of Non-provisional U.S. patent application Ser. No. 15/397,976, filed Jan. 4, 2017, which is a continuation of Non-provisional U.S. patent application Ser. No. 14/572,519, filed Dec. 16, 2014, which is a continuation of Non-provisional U.S. patent application Ser. No. 14/149,793, filed Jan. 7, 2014, which claims the benefit of U.S. Provisional Application No. 61/749,751, filed Jan. 7, 2013, and U.S. Provisional Application No. 61/841,542, filed Jul. 1, 2013. Each of these related applications is incorporated by reference into this disclosure in its entirety.

## BACKGROUND

Skin health and appearance is an important aspect of many beauty regimens. Typical skin care focuses on particular creams or lotions to be applied to the skin, usually performed manually by sponge or brush. Cleaning by hand often fails to adequately apply lotions to the skin, and can be ineffective at removing grease, oils, and other contaminants. An effective skin cleanser device should clean the face more effectively than hand cleaning, but avoid abrasions or other harsh impacts on the skin.

## SUMMARY

A skin cleanser includes one or more oscillating motors or other electromagnetic device that can provide the skin cleanser with various frequency pulsations, and an exterior that can be composed of a soft elastic material, such as silicone, and one or more textured surfaces, including rounded touch-points of 0.5 to 2.5 mm of diameter, or solid surfaces with ridges for cleaning or otherwise interacting with the skin. The oscillating motor moves or oscillates the textured surfaces for application to a user's skin. As the user moves the skin cleanser on the skin, the oscillating pulsations combined with the textured surfaces' touch-points remove oil and other contaminants on the skin's surface. The oscillating pulsations provide a tapping motion to the user's skin to cleanse and loosen contaminants. The oscillations occur at around 50-300 Hertz (Hz). One embodiment includes a high-frequency and a low-frequency oscillating motor or other electromagnetic device that may operate simultaneously or independently. The simultaneous pulsations provide a deep cleaning to the skin. While referred to here as a skin cleanser, the device can also perform other functions besides cleansing, including massaging, exfoliating, buffing, stimulating, toning, exercising, heating, applying lotions or other substances, and so forth.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a cross-sectional view of a skin cleanser, according to one embodiment.

FIG. **2** is a cross-sectional view of a skin cleanser, according to one embodiment.

FIG. **3** is a front view of a skin cleanser, according to one embodiment.

**2**

FIG. **4** is a back view of a skin cleanser, according to one embodiment.

FIGS. **5** and **6** are side views of a skin cleanser, according to one embodiment.

FIGS. **7** and **8** are top and bottom views of a skin cleanser, according to one embodiment.

FIG. **9** is a perspective view of a skin cleanser, according to one embodiment.

FIGS. **10** and **11** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. **12** and **13** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. **14** and **15** are views of one embodiment of a brush surface configuration for a skin cleanser.

FIG. **16** is as skin analyzer, according to one embodiment.

FIGS. **17** and **18** are views of one embodiment of a brush surface configuration for a skin cleanser.

The figures depict various embodiments of the present invention for purposes of illustration only. One skilled in the art will readily recognize from the following discussion that alternative embodiments of the structures and methods illustrated herein may be employed without departing from the principles of the invention described herein.

## DETAILED DESCRIPTION

FIG. **1** is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser directs pulsations to a user through rounded touch-points on a brush, such as silicone brush **100**. The touch-points and brush can be composed of various elastic materials, preferably materials that are soft and do not damage the skin, such as silicone. Silicone is used as an example throughout, though it is understood that other materials can be used, a well. The silicone brush **100** is made of a hygienic silicone that is fast-drying and non-absorbent, allowing the skin cleanser to be used with many skin cleaning products without wear. The silicone brush **100** and other user-contacting portions of the skin cleanser may also include active ingredients, such as vitamin E, antioxidants, or silver nanoparticles. For example, the can be coated with these ingredients by the user or pre-coated, or can have a delivery mechanism in the brush that can store and provide these ingredients upon use. A high- or low-frequency oscillating motor **110** creates pulsations that vibrate the skin cleanser. The oscillating motor **110** in this embodiment provides vibrations between 50 and 300 Hz, though pulsation frequencies higher and lower than this range may also provide beneficial cleansing of the skin. When the skin cleanser, and the silicone brush **100** in particular, is applied to the body, such as the face or neck, the pulsations provide a thorough cleaning of the skin. The pulsations provide a tapping motion to the skin, in some embodiments, by providing impulses to the skin's surface from the silicone touch-points **100** pulsating against the skin's surface. The tapping-based cleansing provided by the silicone brush provides a deeper clean that is less abrasive than scrubbing the skin with harsher bristles of other materials (e.g., nylon brush bristles). Frequencies in this range provide deep facial cleansing of oil and dirt, unclog follicles, and stimulate blood circulation and lymph flow within the skin.

The oscillating motor **110** is enclosed in a frame **120**, which is enclosed by a casing including a top **130** and a bottom **140** made of a suitable material, such as plastic. In some embodiments, there is more than one oscillating motor, which may vary from one another in frequency. A controller, such as a printed circuit board **150**, provides control to the

US 10,349,788 B1

3

oscillating motor **110**, which is powered by a battery **160**. The battery **160** is charged through a charging port, such as a DC jack **170**.

The user interacts with the controller through controls on the exterior of the skin cleanser (such as those shown in FIG. **3**) or through a wireless remote. When activated by the controls, the controller initiates a high-frequency vibration of the oscillating motor **110**. The user may increase and decrease the frequency of vibration of the motor through controls to set the frequency desired by the user. The frequency set by the user may be stored by the controller when the controller is deactivated, such that the next time the controller is turned on the controller resumes the desired frequency.

FIG. **2** is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser in FIG. **2** includes similar components to the skin cleanser in FIG. **1**, and additional components as described. This embodiment includes a second oscillating motor **200** and a frame **210** containing the second motor **200**. In this embodiment, the second motor **200** is capable of creating vibrations at a lower frequency relative to the high-frequency oscillating motor **110**. The second motor **200**, for example, produces pulsations of 50-130 Hz. The controller in this embodiment may use the second motor **200** alone or in combination with the high-frequency motor **110** to create different vibration effects from the skin cleanser. Using the back-side of the brush, upward strokes on the skin, such as beneath the jaw line, allow the stronger combination of high-frequency and lower-frequency vibration to tone and tighten underlying musculature, such as that of the neck. Additional benefits can range from stimulating collagen synthesis in fibroblast cells to improving the flow of blood and lymphatic fluid— the result is healthier, younger-looking skin, such as in the known problem areas of the face, and a more sharply defined profile of the face. In one embodiment, the FIG. **2** device is a larger cleanser and the FIG. **1** device is a smaller or mini-cleanser.

The controller may also activate the lower-frequency motor alone. The lower-frequency vibrations (e.g., in the range of 50-130 Hertz) in conjunction with ridged silicone brush may be used by a user on the skin to relax underlying musculature. In particular, when gently applied to expression-line problem areas at the brow, temples and nasolabial folds, the skin cleanser can relax underlying muscles and reduce the appearance of dynamic wrinkles. Thus, the high-frequency oscillating motor **110** together with the second oscillating motor **200** may enable the skin cleanser to provide a variety of modes and benefits to the user. In some embodiments, the motors **110**, **200** can be used in an alternating fashion to provide alternating low and high frequency pulsations to the cleanser.

In one embodiment, a sensor is also included in the skin cleanser near the front or back of the skin cleanser (or both). The sensor may be a pressure sensor, capacitive sensor, or similar, and detects a user's action to activate the sensor, such as by contacting the body exterior to the sensor. In one embodiment, the controller activates at least one of the oscillating motors when the sensor is activated, permitting the device to automatically activate when the user activates the sensor. Multiple sensors may be included to activate different functions. For instance, in one configuration a sensor is located underneath each textured side of the skin cleanser and detects contact with that textured side. Based on which sensor is activated, the controller activates an operational mode suitable for the side on which the sensor was activated. For example, activating only the low-fre-

4

quency oscillating motor when one side is contacted, and simultaneously activating the low- and high-frequency oscillating motors when the other side is contacted.

FIGS. **3**-**9** illustrate various views of the exterior of a skin cleanser according to some embodiments. The exterior shown in FIGS. **3**-**9** correspond to the internal configuration shown in FIG. **2**. The exterior is formed of a soft but durable elastic material, such as a hygienic silicone. The skin cleanser includes brush surfaces **300** and **400** on the front and the back of the device with varying textures, such as touch-points of 0.5-2.5 mm diameter, or solid ridged surfaces. The brush surface **300** comprises a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser. Providing more resistance than the thinner touch-points, the thicker touch-points allow for more targeted cleansing of oilier areas and hard-to-reach points around the nose, ears and hairline. The pattern of touch-points presented in FIGS. **3**-**9** is one example of a pattern that might be used to cleansing of what is commonly referred to as "normal" skin. Normal skin can include some areas that are drier, oilier, or more sensitive, such that the different patterns of thinner and thicker touch-points can be helpful in targeting these areas (e.g., thinner touch-points for oily areas around the nose). The thinner touch-points and thicker touch-points may vary in size and spacing. In various embodiments, the thinner touch-points are 25-80% thinner (e.g., 30%, 40%, 50%, 60%, 70%, etc. or values in between) compared to the thicker touch-points. In various embodiments, the thinner touch-points are spaced closer together (i.e., the distance between touch-points) by 15%-60%. Thus, the thinner and thicker touch-points for the normal skin cleansing can also be arranged differently around the brush surface than is shown in FIGS. **3**-**9**. In one embodiment, the thicker touch points are between about 1.5 mm and 2.5 mm in diameter, and the thinner touch points are between about 0.5 mm and 1.5 mm in diameter.

The touch points and the body of the skin cleanser itself may be compressible and bendable, such that the touch points and body of the skin cleanser conform to the surface of the skin during use.

The brush surface **400** is a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the pulsation energy transfer, and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. Thus, both surfaces **300** and **400** of the brush can be used for skin cleansing, and specifically for different applications of skin cleansing.

The front of the skin cleanser also includes a mode control **310** and frequency controls **320**. The mode control **310** activates the skin cleanser and is used to cycle through modes of operation for the skin cleanser, such as turning the cleanser on, activating the high-frequency and second lower-frequency motor both independently or in unison, and turning the skin cleanser off. Fewer, more, or different controls may be included for other embodiments. The skin cleanser may also activate a mode that directs the user to cycle through portions of the face when applying vibrations through the skin cleanser. The base **330** of the cleanser may light up or otherwise indicate a prompt for the user to move to another portion of the face. As one example, in this mode that directs cycling through the face, the cleanser may first indicate that the user should apply the brush to the area around the cheeks for a period of time, and then may indicate that the user should apply the brush to the area around the chin, and so forth until the user has cycled throughout the face. The cleanser can indicate when it is time to switch by,

US 10,349,788 B1

5

for example, lighting up the base, blinking the light a certain number of times, or otherwise using the light to indicate instructions to the user. Different cleaning regimens can be used for different cleansers. For example, a sensitive skin cleanser might have a cycle that is shorter in certain areas of the face to avoid irritating the face. A user might also have a program designed specifically for the user's own skin, with shorter or longer application of the brush to different areas of the face as needed for that user's skin. The program designed for a user's skin may be assessed by the manufacturer and programmed to the controller according to a diagnostic of the user's particular skincare needs.

The brush surfaces are designed to efficiently channel the high-frequency vibrations into the skin to cleanse deeply, unblock follicles, and to boost circulation and lymph flow. By avoiding abrasive exfoliation (as used in other brush-type devices), the brush surface remains gentle enough to use for twice-daily facial cleansing or more uses in the day, as needed. Relative to other cleansing devices, this skin cleanser does not rely on a spinning or twisting action; the result is a deeper clean without the need for such abrasive scrubbing. The pulsations in combination with the textured surfaces, the elastic, soft material touch-points and the solid ridged surfaces provide thorough cleansing, since the textured surface directs the power of the high-frequency motor substantially orthogonal to the skin's surface, which unlocks the skin's natural potential. In one embodiment, the touch-points of the textured surface vertically oscillate from the brush to the skin to create a tapping motion on the skin, similar to the tapping of fingertips on the skin or the patting with a towel or cotton pad. The vertical tapping of the skin in this embodiment provides a gentle cleansing of the skin, as opposed to a rotating motion that can cause a less favorable twisting or stretching of the skin that may cause damage to or scratching of the skin surface.

The vertical tapping motion can be generated by the vibrations of the motor or of multiple motors, or other electromagnetic device in the brush, by electromechanical mechanisms, among other means. For example, the motors can be positioned in the brush to cause the vertical oscillations of the touch-points, such as by positioning one or more motors directly under or adjacent to the textured surface of the brush. The oscillation of the motor(s) can cause each of or at least some of the touch-points to move orthogonal to the skin's surface to tap the skin. Multiple motors can be arranged near the textured surface to create different motions or different speeds of vertical oscillations across the textured surface of the skin. For example, the motors can be positioned so that different touch-point arrangements or patterns on the textured surface can oscillate differently from one another to provide one type of tapping motion for some touch-points and a different type (e.g., different speed, pattern, etc.) for other touch-points. In some embodiments, each touch-point is a single structure rather than a plurality of structures, such as might be found in a brush where each brush bristle is made up of multiple bristle components arranged as a bunch.

The skin cleanser body can be configured to have different shapes, such as a substantially oval shape (e.g., FIGS. 3-9), a substantially round shape (e.g., FIGS. 17-18), and so forth, and it includes a base 330 that is substantially flat to allow the cleanser to be placed on and stand on a surface. The oval or round shape of the body allows the user to hold the cleanser in the palm of her hand, possibly with fingers splayed along the back side of the cleanser and thumb against the controls in the front side of the cleanser. In some embodiments, the cleanser is wider than it is thick, as is

6

shown, for example, in FIG. 5. This configuration allows the user to easily hold the cleanser in the palm of her hand and reach her fingers around both side of the cleanser for easy and ergonomic manipulation of the cleanser against the skin. The body can thus have two components, the textured portions 300 and 400, and a handle or portion for grasping or manipulating the device, which includes everything other than the textured portions 300, 400. The textured portion can comprise at least 10%, 20%, 30%, 40%, 50% or more of the cleanser outer surface or of the front or of the back of the cleanser outer surface. The textured portion can be positioned on an upper portion or tip of the cleanser, such as is shown in FIGS. 3-9, but can also be otherwise positioned (e.g., at the sides, in the middle, at the bottom, etc.).

FIGS. 3-9 provide just one example of how the touch-points on the brush can be arranged. A variety of other arrangements are also possible (e.g., thinner touch-points at the top and thicker at the bottom, thinner on one side and thicker on the other side, alternating rows of thinner and thicker, various areas or groupings of thinner and thicker in different locations on the brush, and so forth). In addition, different types of touch-points can be included, such as taller or shorter touch-points, touch-points with more or less bulbous ends, touch-points with ends of different shapes (e.g., pointed, feathered, ridged, etc.), and so forth. Similarly, the touch-points can be arranged more or less densely, can be positioned on both the front and hack of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), among other variations. Some other examples of touch-point arrangements are shown in FIGS. 10-15. In addition, the ridges of brush surface 400 in FIGS. 3-9 (and for FIGS. 10-15) can be arranged on one or both sides of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), can be positioned with the touch-points (e.g., above or below, or intermingled within the touch-points), can be formed into other patterns or shapes or with different spacing, among other variations.

FIGS. 10 and 11 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for men's facial skin. The brush on the front side, as shown in FIG. 10, includes a series of thicker touch-points covering the whole front surface, reflecting the additional cleansing normally required for men's oilier skin, with its larger pores and facial hair that act as magnets for dirt and pollutants, making acne, blackheads and breakouts more likely to occur. Providing more resistance than the thinner touch-points, they allow for firmer, deeper cleansing to meet the challenges of a man's thicker skin. The resulting boost to the health of the skin can reduce the discomfort and irritation often associated with, for example, daily wet shaving. The brush on the back side, as shown in FIG. 11, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency (high-frequency and lower-frequency motor in combination) toning and low-frequency, muscle-relaxing functions.

FIGS. 12 and 13 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for skin with some oilier areas. The brush on the front side, as shown in FIG. 12, includes a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser, as well as two additional waves of thicker touch-points. Providing less flexibility than the thinner touch-points, these allow for

US 10,349,788 B1

7

stronger cleansing and the targeting of oilier areas and hard to-reach parts around the nose, ears and hairline. The brush on the back side, as shown in FIG. 13, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions.

FIGS. 14 and 15 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for sensitive skin. The brush on the front side, as shown in FIG. 14, includes a series of closely packed, smooth silicone ridges in a wave formation, designed to minimize abrasion and allow for the extra-gentle yet highly effective cleansing of even the most sensitive skin. The brush on the back-side, as shown in FIG. 15, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. The smooth silicone ridges on the front side in one embodiment are spaced closer to one another compared to the spacing of the ridges on the back-side. The ridges on the front side may be spaced between 10-60% closer together (e.g., 20%, 30%, 40%, 50%, etc. or values in between) relative to the spacing of the ridges on the back-side. In addition, the ridges on the front side are cushioned with additional space between the soft elastic surface and the plastic casing in order to provide with extra-gentle cleansing.

FIGS. 17 and 18 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush surface configuration corresponds to the internal configuration shown in FIG. 1. The brush on the front side, as shown in FIG. 17, includes a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser. The brush on the back side, as shown in FIG. 18, provides a series of thicker touch-points allowing a deeper clean provided by the thicker touch-points to be applied to a larger area.

FIGS. 3-15 and 17-18 are just some examples of different brush surface configurations matched to different skin types. Other designs for other skin types are also possible, such as a particular pattern for dry skin, for aging skin, for combination skin or T-zone skin (e.g., oilier around the forehead, nose, and chin), among others. In some embodiments, the front textured surface includes at least two different types of touch-points (e.g., thicker and thinner). The touch-points of a type can be grouped to provide a pattern. For example, FIG. 3 shows a group of thicker touch-points at the tip of the cleanser and a group of thinner touch-points below. Each pattern can correspond to a particular skin type (e.g., male, sensitive, oily, normal, etc.). In some embodiments, at least 10%, 20%, 30%, 40%, 50% of the front textured surface includes touch-points of a different type than the rest of the front textured surface.

The brush surface can also be designed to contour to the curves of the body or face. In one embodiment, one or more surfaces of the brush, e.g., the textured surfaces, are deformable or bendable. For example, where the textured surface is composed of silicone, the surface can compress or bend when pressed against the skin to mold to the surface of the skin for providing a deeper cleansing and for better cleaning of skin surfaces that are curved. In other embodiments, the textured surface can be designed to pivot relative to the

8

brush or to include one or more portions that pivot such that the textured surface can mold to the shape of the skin.

FIG. 16 is a skin analyzer according to one embodiment. The skin analyzer is a handheld device capable of analyzing the skin of the user. The results of the skin analysis may be provided to the user to guide use of the skin cleanser, for example by measuring effectiveness and oiliness of the skin after use. The skin analyzer is encased in a body 1600 held by the operator of the skin analyzer. The skin analyzer includes sensors 1610 that sense the skin's condition, such as oil levels, moisture content, and dead skin cell levels. The results of the skin analysis may be communicated to the user by connecting the skin analyzer to a display or by wireless communication with a display or computer to direct the user in the use of a skin cleanser, such as whether the skin cleanser is being used too frequently or to show improvement of the skin over a period of time as the skin cleanser is applied. The skin analyzer may also provide the results of the analysis via an interface to the skin cleanser, which may be used to change the suggested frequency of applying the skin cleanser to portions of the user's face during cleansing. The cleanser can also include an interface to communicate with the skin analyzer, including sending information about how often it is used, what skin regimens or programs are used, etc.

In one embodiment, the skin analyzer can provide a diagnostic of the user's particular skincare needs, such as by indicating skin type (e.g., oily skin, oily skin in certain areas, sensitive skin, dry skin, dry in certain areas, male or female skin, normal skin, etc.) or by indicating specific details about the user's skin at different areas of the face or different times of day (e.g., tends to be dry in the morning, tends to be thin near the eye area, tends to be dry around the nose, etc.). The skin analyzer data can be used to design a program or skincare regimen specific to the user's skin. The program designed for a user's skin may be assessed by the user or by a third party, such as the manufacturer of the skin cleanser or analyzer, a beautician, a dermatologist or other medical personnel, etc. For example, information about the program can be transmitted via the interface of the skin analyzer or skin cleanser to a computer of the user or third party for review and possible revision. The program or regimen (possibly as revised by the user or third party) can be programmed to the controller of the skin cleanser according to the diagnostic of the user's particular skincare needs.

Additional features may also be included in the skin cleanser. In one embodiment, the skin cleanser includes a heat-emitting source located between the body and the textured surfaces. The heat-emitting source, when activated by the controller, heats the textured surfaces and may be used in conjunction with the oscillations of the touch-points. In a further embodiment, the skin cleanser includes a dosing mechanism integrated in the body of the device to dispense liquids or solid suspensions, such as for the delivery of silver nanoparticles, Vitamin E, etc. as described above. The dosing mechanism may include a reservoir, for example at the base of the skin cleanser, and a pump with an outlet to dispense contents of the reservoir to the textured surfaces or near the textured surfaces.

SUMMARY

The foregoing description of the embodiments of the invention has been presented for the purpose of illustration; it is not intended to be exhaustive or to limit the invention to the precise forms disclosed. Persons skilled in the relevant

US 10,349,788 B1

9

art can appreciate that many modifications and variations are possible in light of the above disclosure.

The language used in the specification has been principally selected for readability and instructional purposes, and it may not have been selected to delineate or circumscribe the inventive subject matter. It is therefore intended that the scope of the invention be limited not by this detailed description, but rather by any claims that issue on an application based hereon. Accordingly, the disclosure of the embodiments of the invention is intended to be illustrative, but not limiting, of the scope of the invention.

What is claimed is:

**1**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having:

a first side defining a first textured surface area that is integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points, and

a second side defining a second textured surface area that is integrally formed with the silicone exterior, the second textured surface area comprising a second set of touch-points;

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor.

**2**. The skin cleanser of claim **1**, wherein at least two touch-points of the second set of touch-points has a diameter that is larger than the diameter of at least two touch-points of the first set of touch-points.

**3**. The skin cleanser of claim **1**, wherein the diameter of at least two touch-points or the second set of touch-points is between about 0.5 millimeters and about 2.5 millimeters.

**4**. The skin cleanser of claim **3**, wherein the diameter of at least two touch-points of the first set of touch-points is between about 0.5 millimeters and about 2.5 millimeters.

**5**. The skin cleanser of claim **1**, wherein the first textured surface area is larger than the second textured surface area.

**6**. The skin cleanser of claim **1**, wherein the second textured surface area is substantially the same size as the first textured surface area.

**7**. The skin cleanser of claim **1**, wherein the base is substantially transparent.

**8**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having:

a first side defining a first textured surface area that is integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points, and

a second side defining a second textured surface area that is integrally formed with the silicone exterior;

10

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor.

**9**. The skin cleanser of claim **8**, wherein the diameter of at least two touch-points of the first set of touch-points is between about 0.5 millimeters and about 2.5 millimeters.

**10**. The skin cleanser of claim **9**, wherein each touch-point of the first set of touch-points has substantially the same diameter.

**11**. The skin cleanser of claim **8**, wherein the second textured surface area comprises a second set of touch-points.

**12**. The skin cleanser of claim **11**, wherein each touch-point of the second set of touch-points has substantially the same diameter.

**13**. The skin cleanser of claim **8**, further comprising a first groove defined by the first side of the silicone exterior disposed substantially adjacent the first textured surface area.

**14**. The skin cleanser of claim **13**, further comprising a second groove defined by the second side of the silicone exterior disposed substantially adjacent the second textured surface area.

**15**. A skin cleanser having a skin cleanser body, comprising:

a substantially flat base configured to stand unaided on a substantially flat surface, said skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base;

a silicone exterior covering substantially all of an exterior of said skin cleanser body, the silicone exterior having a first side defining a first textured surface area that is integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points;

a first oscillating motor disposed within said skin cleanser body configured to produce pulsations of the skin cleanser; and

at least one control disposed on said skin cleanser body configured to operate the first oscillating motor.

**16**. The skin cleanser of claim **15**, wherein each touch-point of the first set of touch-points has substantially the same diameter.

**17**. The skin cleanser of claim **16**, wherein the oscillating motor is operable to oscillate within the range of about 50 Hertz to about 300 Hertz.

**18**. The skin cleanser of claim **17**, wherein the at least one control is disposed on the first side.

**19**. The skin cleanser of claim **18**, wherein the at least one control comprises a mode control in a lower portion of said skin cleanser body, the mode control configured to turn on and off the skin cleanser.

**20**. The skin cleanser of claim **19**, wherein the at least one control further comprises plus and minus controls on either side of the mode control, the plus and minus controls configured to increase and decrease, respectively, a speed of the oscillating motor.

\* \* \* \* \*

US011633073B2

## (12) United States Patent
Sedic

(10) Patent No.: **US 11,633,073 B2**
(45) Date of Patent: **\*Apr. 25, 2023**

(54) **SKIN CLEANSER**

(71) Applicant: **FOREO Inc.**, Las Vegas, NV (US)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(73) Assignee: **FOREO Inc.**, Las Vegas, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **17/574,364**

(22) Filed: **Jan. 12, 2022**

(65) **Prior Publication Data**

US 2022/0133096 A1      May 5, 2022

**Related U.S. Application Data**

(63) Continuation of application No. 17/087,887, filed on Nov. 3, 2020, now Pat. No. 11,596,275, which is a (Continued)

(51) **Int. Cl.**
*A47K 7/02* (2006.01)
*A61H 7/00* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .................. *A47K 7/02* (2013.01); *A47K 7/04* (2013.01); *A47K 7/043* (2013.01); *A61B 5/443* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .... A61H 2201/5097; A61H 2201/0153; A61H 23/02; A61H 7/003; A61H 7/005;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,491,016 | A | 4/1924 | McGowan et al. |
| 2,480,023 | A | 8/1949 | Holden |
| (Continued) | | | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2040777 | 7/1989 |
| CN | 2172110 | 7/1994 |
| (Continued) | | |

OTHER PUBLICATIONS

"Silicone Face Massage Brush," Alibaba.com, 1999-2014, Alibaba.com, 6 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL.:http://www.alibaba.com/countrysearch/CN/silicone-face-massage-brush.html.

*Primary Examiner* — Diane D Yabut
*Assistant Examiner* — Christina C Lauer
(74) *Attorney, Agent, or Firm* — Evan Feldstein

(57)      **ABSTRACT**

A skin cleanser includes a surface, such as a silicone surface, with at least one textured portion for transmitting vibrational tapping to the skin. The skin cleanser includes at least one oscillating motor for generating the tapping motion to the skin. The textured portion includes touch-points or a wave that transmit the tapping motion to skin in contact with the textured portions. The touch-points may include thicker and thinner formations of the touch-points to provide firmer or softer vibrations to the skin. The touch-points are within about 0.5 to 2.5 mm in diameter. One configuration includes multiple oscillating motors configured to provide different vibration frequencies at around 50-300 Hertz and operable simultaneously.

**14 Claims, 17 Drawing Sheets**



US 11,633,073 B2

Page 2

### Related U.S. Application Data

continuation of application No. 16/429,394, filed on Jun. 3, 2019, now Pat. No. 10,856,705, which is a continuation of application No. 16/295,446, filed on Mar. 7, 2019, now Pat. No. 10,349,788, which is a continuation of application No. 16/007,078, filed on Jun. 13, 2018, now Pat. No. 10,716,437, which is a continuation of application No. 15/893,971, filed on Feb. 12, 2018, now Pat. No. 10,028,884, which is a continuation of application No. 15/397,976, filed on Jan. 4, 2017, now Pat. No. 9,889,065, which is a continuation of application No. 14/572,519, filed on Dec. 16, 2014, now Pat. No. 10,213,064, which is a continuation of application No. 14/149,793, filed on Jan. 7, 2014, now Pat. No. 9,907,439.

(60) Provisional application No. 61/841,542, filed on Jul. 1, 2013, provisional application No. 61/749,751, filed on Jan. 7, 2013.

(51) **Int. Cl.**
| | |
|---|---|
| *A61H 23/00* | (2006.01) |
| *A61H 23/02* | (2006.01) |
| *A61B 5/00* | (2006.01) |
| *A47K 7/04* | (2006.01) |

(52) **U.S. Cl.**
CPC ............. *A61B 5/445* (2013.01); *A61H 7/002* (2013.01); *A61H 7/003* (2013.01); *A61H 7/004* (2013.01); *A61H 7/005* (2013.01); *A61H 23/00* (2013.01); *A61H 23/006* (2013.01); *A61H 23/02* (2013.01); *A61H 23/0254* (2013.01); *A61H 23/0263* (2013.01); *A61H 2023/0272* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/02* (2013.01); *A61H 2201/0207* (2013.01); *A61H 2201/105* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1223* (2013.01); *A61H 2201/5002* (2013.01); *A61H 2201/5035* (2013.01); *A61H 2201/5038* (2013.01); *A61H 2201/5041* (2013.01); *A61H 2201/5097* (2013.01); *A61H 2205/022* (2013.01)

(58) **Field of Classification Search**
CPC .......... A61H 23/00; A61H 19/40; A47K 7/04; A47K 7/043; A47K 7/02; A47K 13/16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,764,773 | A | 10/1956 | Glanvill et al. |
| 2,867,211 | A | 1/1959 | Hughes |
| 3,251,085 | A | 5/1966 | Jacobs |
| 3,346,748 | A | 10/1967 | Mcnair |
| 3,358,309 | A | 12/1967 | Richardson |
| 3,906,940 | A | 9/1975 | Kawada |
| 3,968,789 | A | 7/1976 | Simoncini |
| 4,027,348 | A | 6/1977 | Flowers et al. |
| 4,112,040 | A | 9/1978 | Orentreich |
| 4,249,521 | A | 2/1981 | Gueret |
| 4,463,485 | A | 8/1984 | Gueret |
| 4,564,032 | A | 1/1986 | Araki |
| 4,570,616 | A | 2/1986 | Kunz et al. |
| D288,847 | S | 3/1987 | Kaeser |
| D331,466 | S | 12/1992 | Doria |
| 5,176,130 | A | 1/1993 | Kim |
| D351,474 | S | 10/1994 | Huang |
| D361,386 | S | 8/1995 | Vandenbelt |
| D369,220 | S | 4/1996 | Huang |
| 5,511,270 | A | 4/1996 | Eliachar et al. |
| D382,645 | S | 8/1997 | Bergeron |
| 5,792,080 | A | 8/1998 | Ookawa et al. |
| D423,109 | S | 4/2000 | Allende |
| 6,202,242 | B1 | 3/2001 | Salmon et al. |
| 6,226,811 | B1 | 5/2001 | Fagan |
| 6,267,736 | B1 | 7/2001 | McCambridge et al. |
| 6,283,930 | B1 | 9/2001 | Purvis et al. |
| D456,942 | S | 5/2002 | Au et al. |
| 6,393,718 | B1 | 5/2002 | Harris et al. |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| D466,217 | S | 11/2002 | Harris et al. |
| D466,695 | S | 12/2002 | Chen |
| D469,183 | S | 1/2003 | Gerth et al. |
| D476,087 | S | 6/2003 | Dirks et al. |
| 6,588,964 | B1 | 7/2003 | Au et al. |
| D478,174 | S | 8/2003 | Huang |
| D487,592 | S | 3/2004 | Chang |
| D512,225 | S | 12/2005 | Chien |
| D514,328 | S | 2/2006 | Huang |
| D517,218 | S | 3/2006 | Kalen |
| D523,561 | S | 6/2006 | Telford |
| D523,958 | S | 6/2006 | Fang |
| D539,917 | S | 4/2007 | Park |
| D548,851 | S | 8/2007 | Huang |
| D549,351 | S | 8/2007 | Wu |
| D557,806 | S | 12/2007 | Gromosaik et al. |
| 7,303,534 | B2 | 12/2007 | Kahn |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| D569,106 | S | 5/2008 | Maruyama |
| D571,926 | S | 6/2008 | Wu |
| 7,384,377 | B2 | 6/2008 | Berman |
| D574,108 | S | 7/2008 | Yando et al. |
| D576,736 | S | 9/2008 | Hagege |
| D595,898 | S | 7/2009 | Syran et al. |
| D616,103 | S | 5/2010 | Ford-Robertson |
| D622,405 | S | 8/2010 | Tuli |
| D626,656 | S | 11/2010 | Jarry |
| D629,528 | S | 12/2010 | Adkisson |
| D635,720 | S | 4/2011 | Cammarano |
| D645,569 | S | 9/2011 | Nitsch |
| D646,795 | S | 10/2011 | Seehoff et al. |
| D648,442 | S | 11/2011 | Caggiano |
| D652,525 | S | 1/2012 | Caggiano |
| D652,941 | S | 1/2012 | Zamar |
| D671,281 | S | 11/2012 | Singer |
| D674,108 | S | 1/2013 | York |
| 8,523,791 | B2 | 9/2013 | Castel |
| 8,622,890 | B1 | 1/2014 | Caggiano et al. |
| 8,679,039 | B2 | 3/2014 | Tieu et al. |
| 8,745,807 | B2 | 6/2014 | Varner et al. |
| D715,915 | S | 10/2014 | Huntington et al. |
| D768,391 | S | 10/2016 | Kling et al. |
| 9,889,065 | B2 * | 2/2018 | Sedic .............. A61H 23/0263 |
| 10,028,884 | B2 * | 7/2018 | Sedic ................... A61H 23/00 |
| 10,213,064 | B2 * | 2/2019 | Sedic .................... A61B 5/445 |
| 10,349,788 | B1 * | 7/2019 | Sedic ..................... A47K 7/04 |
| 10,716,437 | B2 * | 7/2020 | Sedic ..................... A47K 7/02 |
| 10,856,705 | B2 * | 12/2020 | Sedic .................... A61B 5/445 |
| 2002/0107459 | A1 | 8/2002 | Chang |
| 2004/0060571 | A1 | 11/2004 | Mayeri |
| 2004/0225239 | A1 | 11/2004 | Yamamoto et al. |
| 2005/0059914 | A1 | 5/2005 | Kleinhenz et al. |
| 2005/0113725 | A1 | 6/2005 | Masuda |
| 2005/0142093 | A1 | 6/2005 | Skover et al. |
| 2006/0010630 | A1 | 3/2006 | Tse |
| 2006/0058714 | A1 | 3/2006 | Rhoades |
| 2006/0236474 | A1 | 10/2006 | Jaffe |
| 2006/0168746 | A1 | 12/2006 | Guyuron et al. |
| 2006/0276731 | A1 | 12/2006 | Thiebaut et al. |
| 2007/0017540 | A1 | 1/2007 | Davis et al. |
| 2007/0142845 | A1 | 6/2007 | Akridge et al. |
| 2007/0179412 | A1 | 8/2007 | Imboden et al. |
| 2007/0198031 | A1 | 8/2007 | Kellogg |
| 2007/0232967 | A1 * | 10/2007 | Driscoll .............. A61H 23/0254 |
| | | | 601/46 |
| 2008/0110471 | A1 | 5/2008 | Oliver et al. |
| 2008/0119913 | A1 | 5/2008 | Powell et al. |

## US 11,633,073 B2

Page 3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2008/0125680 | A1 | 5/2008 | Richmond et al. |
| 2008/0125682 | A1 | 5/2008 | Bonneyrat |
| 2008/0167590 | A1 | 7/2008 | Jon et al. |
| 2008/0210252 | A1 | 9/2008 | Taggart et al. |
| 2009/0036809 | A1 | 2/2009 | Nishio et al. |
| 2009/0198159 | A1 | 8/2009 | Linzell |
| 2009/0275796 | A1 | 11/2009 | Gil |
| 2009/0312599 | A1 | 12/2009 | Smith |
| 2009/0318755 | A1 | 12/2009 | Adams et al. |
| 2009/0318853 | A1 | 12/2009 | Reed et al. |
| 2010/0036295 | A1 | 2/2010 | Altshuler et al. |
| 2010/0217357 | A1 | 8/2010 | Da Silva et al. |
| 2010/0262051 | A1 | 10/2010 | De LaForcade |
| 2011/0071445 | A1* | 3/2011 | Imboden ............ A61H 23/0263 |
| | | | 601/46 |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. |
| 2011/0098613 | A1 | 4/2011 | Thomas et al. |
| 2011/0144426 | A1 | 6/2011 | Blenk et al. |
| 2011/0184499 | A1 | 7/2011 | Radi |
| 2011/0251537 | A1 | 10/2011 | Yeo |
| 2011/0257474 | A1 | 10/2011 | Howard |
| 2011/0270274 | A1 | 11/2011 | Hull |
| 2012/0121313 | A1 | 5/2012 | Thiebaut |
| 2012/0165708 | A1 | 6/2012 | Parsloe |
| 2012/0209151 | A1 | 8/2012 | Zhou et al. |
| 2012/0234336 | A1 | 9/2012 | Paquet et al. |
| 2013/0023805 | A1 | 1/2013 | Ungemach et al. |
| 2013/0046212 | A1 | 2/2013 | Nichols |
| 2013/0079689 | A1 | 3/2013 | Thierman |
| 2013/0178769 | A1 | 7/2013 | Schmidt |
| 2014/0046127 | A1 | 2/2014 | Topolovac et al. |
| 2014/0107543 | A1 | 4/2014 | Pazouki |
| 2014/0171841 | A1 | 6/2014 | Kazaryan et al. |
| 2014/0296626 | A1 | 10/2014 | Butler et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 1655709 | 8/2005 |
| CN | 2761119 | 3/2006 |
| CN | 101056603 | 10/2007 |
| CN | 201422994 | 3/2010 |
| CN | 2012637712 | 1/2013 |
| CN | 302512535 | 7/2013 |
| CN | 302512536 | 7/2013 |
| EP | 1484043 | 12/2004 |
| EP | 1525872 | 4/2005 |
| EP | 1942857 | 7/2008 |
| EP | 2164443 | 3/2010 |
| EP | 2490645 | 8/2012 |
| JP | 2000-000283 | 1/2000 |
| JP | 2004-249061 | 9/2004 |
| KR | 101078567 | 1/2011 |
| TW | 200410650 | 7/2004 |

OTHER PUBLICATIONS

United States Office Action, U.S. Appl. No. 14/572,519, filed Jul. 18, 2016, twelve pages.

"Clarisonic" Web Page, Clarisonic, Pacific Bioscience Laboratories, Inc., 2013, 2 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.clarisonic.com/>.

"Neutrogena® Wave®," Neutrogena Corporation, 2014, 1 page, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.neutrogenawave.com/#/products>.

"Silicon Face Brushes," Alibaba.com, 1999-2014, Alibaba.com, 8 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/manufacturers/face-silicone-brush-manufacturer.html>.

EPO, "Summons to attend oral proceedings," Int'l app. 14735118. 3., mailed Nov. 4, 2019, pp. 1-11.

TechFever Network, techfever.com, "FOREO's Luna mini Promises to Bring Tech to Skincare," pp. 1-2, Jan. 11, 2013, http:www. techfever.net/2013/01/ces-2013-foreos-luna-mini-promises-to-bring-tech-to-skincare/.

Australian Government, IP Australia, Patent Examination Report No. 1, Australian Patent Application No. 2014204242, dated Jan. 28, 2016, three pages.

European Extended Search Report, European Application No. 14735118. 3, dated Jun. 7, 2016, ten pages.

FOREO: Building the Best Brand of Skin Care, Dec. 13, 2013 [online retrieved on Aug. 26, 2014]. Retrieved from the Internet: <http://luxury.ce.cn/hydt/cygc/201312/13/t20131213_1271555. shtml>.

Global First Silicone Cleansing Instrument FOREO Leading a New Revolution 1-19 in Facial Care, Jun. 28, 2013 [online], [retrieved on Aug. 26, 2014]. Retrieved from the Internet: <http://fashion.ifeng. com/news/detail_2013_06/28/26922193_0.shtml>.

Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006716, dated Jul. 29, 2016, five pages.

Japan Patent Office, Office Action, Japanese Patent Application No. 2016-006717, dated Jul. 29, 2016, five pages.

PCT International Search Report and Written Opinion, PCT Application No. PCT/IB2014/000530, dated Oct. 22, 2014, eight pages.

Science Share: Share the Tutorials of Electric Washing Device FOREO, Nov. 20, 2013 [online], [retrieved on Aug. 26, 2014). Retrieved from the Internet: <http://bbs.pclady.com.cn/topic-1782404. html> (with concise explanation of relevance).

USPTO, "Non-final Office Action," dated Apr. 23, 2020, U.S. Appl. No. 16/007,078, pp. 1-55.

United States Office Action, U.S. Appl. No. 14/149,793, dated Apr. 21, 2016, twenty-five pages.

United States Office Action, U.S. Appl. No. 14/572,519, dated Mar. 27, 2015, ten pages.

United States Office Action, U.S. Appl. No. 14/149,793, dated Sep. 24, 2015, twenty-seven pages.

United States Office Action, U.S. Appl. No. 14/572,519, dated Dec. 16, 2016, 13 pages.

United States Office Action, U.S. Appl. No. 15/397,976, dated Feb. 8, 2017, 40 pages.

United States Office Action, U.S. Appl. No. 15/397,976, dated Mar. 21, 2017, 16 pages.

United States Office Action, U.S. Appl. No. 15/397,976, dated May 23, 2017, 24 pages.

United States Office Action, U.S. Appl. No. 14/149,793, dated Feb. 9, 2017, 32 pages.

SIPO of the People's Republic of China, Second Office Action, Chinese Pat. App. No. 201480010001.2, dated Aug. 23, 2017, 10 pages.

United States Office Action, U.S. Appl. No. 14/572,519, dated May 9, 2017, pp. 1-9.

United States Office Action, U.S. Appl. No. 14/572,519, dated Sep. 26, 2017, pp. 1-8.

State Intellectual Property Office (China), Intl. App. No. 20140010001. 2, First Office Action, dated Feb. 23, 2017, pp. 1-11.

United States Office Action, U.S. Appl. No. 14/149,793, dated Jun. 2, 2017, pp. 1-30.

Australian Government, IP Australia, Examination Report No. 1 for Australian Patent Application No. AU 2016262690, dated Sep. 27, 2017, 3 pages.

3rd Office Action for Chinese Patent Application No. CN 201480010001. 2, dated Apr. 11, 2018, 9 pages.

IP Australia, "Examination Report No. 2 for Innovation Patent," Int. App. No. 2017100130, dated Aug. 11, 2017, pp. 1-5.

European Patent Office, Examination Report, European Patent Application No. 14735118.3, dated Aug. 29, 2017, 6 pages.

SIPO of the People's Republic of China, Fourth Office Action, Chinese Pat. App. No. 201480010001.2, dated Nov. 7, 2018, 6 pages.

CIPO, Office Action, Int'l app. No. 2,897,177, dated Feb. 25, 2019, pp. 1-4.

* cited by examiner



Fig. 1



Fig. 2



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*



*Fig. 8*



*Fig. 9*



*Fig. 10*



*Fig. 11*



*Fig. 12*



*Fig. 13*



*Fig. 14*



*Fig. 15*



*Fig. 16*



*Fig. 17*



*Fig. 18*

US 11,633,073 B2

**1**

## SKIN CLEANSER

### CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of Non-provisional U.S. patent application Ser. No. 17/087,887, filed Nov. 3, 2020, which is a continuation of Non-provisional U.S. patent application Ser. No. 16/429,394, filed Jun. 3, 2019, which is a continuation of Non-provisional U.S. patent application Ser. No. 16/295,446, filed Mar. 7, 2019, which is a continuation of Non-provisional U.S. patent application Ser. No. 16/007,078, filed Jun. 13, 2018, which is a continuation of Non-provisional U.S. patent application Ser. No. 15/893, 971, filed Feb. 12, 2018, which is a continuation of Non-provisional U.S. patent application Ser. No. 15/397,976, filed Jan. 4, 2017, which is a continuation of Non-provisional U.S. patent application Ser. No. 14/572,519, filed Dec. 16, 2014, which is a continuation of Non-provisional U.S. patent application Ser. No. 14/149,793, filed Jan. 7, 2014, which claims the benefit of U.S. Provisional Application No. 61/749,751, filed Jan. 7, 2013, and U.S. Provisional Application No. 61/841,542, filed Jul. 1, 2013. Each of these related applications is incorporated by reference into this disclosure in its entirety.

### BACKGROUND

Skin health and appearance is an important aspect of many beauty regimens. Typical skin care focuses on particular creams or lotions to be applied to the skin, usually performed manually by sponge or brush. Cleaning by hand often fails to adequately apply lotions to the skin, and can be ineffective at removing grease, oils, and other contaminants. An effective skin cleanser device should clean the face more effectively than hand cleaning, but avoid abrasions or other harsh impacts on the skin.

### SUMMARY

A skin cleanser includes one or more oscillating motors or other electromagnetic device that can provide the skin cleanser with various frequency pulsations, and an exterior that can be composed of a soft elastic material, such as silicone, and one or more textured surfaces, including rounded touch-points of 0.5 to 2.5 mm of diameter, or solid surfaces with ridges for cleaning or otherwise interacting with the skin. The oscillating motor moves or oscillates the textured surfaces for application to a user's skin. As the user moves the skin cleanser on the skin, the oscillating pulsations combined with the textured surfaces' touch-points remove oil and other contaminants on the skin's surface. The oscillating pulsations provide a tapping motion to the user's skin to cleanse and loosen contaminants. The oscillations occur at around 50-300 Hertz (Hz). One embodiment includes a high-frequency and a low-frequency oscillating motor or other electromagnetic device that may operate simultaneously or independently. The simultaneous pulsations provide a deep cleaning to the skin. While referred to here as a skin cleanser, the device can also perform other functions besides cleansing, including massaging, exfoliating, buffing, stimulating, toning, exercising, heating, applying lotions or other substances, and so forth.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a cross-sectional view of a skin cleanser, according to one embodiment.

**2**

FIG. 2 is a cross-sectional view of a skin cleanser, according to one embodiment.

FIG. 3 is a front view of a skin cleanser, according to one embodiment.

FIG. 4 is a back view of a skin cleanser, according to one embodiment.

FIGS. 5 and 6 are side views of a skin cleanser, according to one embodiment.

FIGS. 7 and 8 are top and bottom views of a skin cleanser, according to one embodiment.

FIG. 9 is a perspective view of a skin cleanser, according to one embodiment.

FIGS. 10 and 11 are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. 12 and 13 are views of one embodiment of a brush surface configuration for a skin cleanser.

FIGS. 14 and 15 are views of one embodiment of a brush surface configuration for a skin cleanser.

FIG. 16 is a skin analyzer, according to one embodiment.

FIGS. 17 and 18 are views of one embodiment of a brush surface configuration for a skin cleanser.

The figures depict various embodiments of the present invention for purposes of illustration only. One skilled in the art will readily recognize from the following discussion that alternative embodiments of the structures and methods illustrated herein may be employed without departing from the principles of the invention described herein.

### DETAILED DESCRIPTION

FIG. 1 is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser directs pulsations to a user through rounded touch-points on a brush, such as silicone brush **100**. The touch-points and brush can be composed of various elastic materials, preferably materials that are soft and do not damage the skin, such as silicone. Silicone is used as an example throughout, though it is understood that other materials can be used, as well. The silicone brush **100** is made of a hygienic silicone that is fast-drying and non-absorbent, allowing the skin cleanser to be used with many skin cleaning products without wear. The silicone brush **100** and other user-contacting portions of the skin cleanser may also include active ingredients, such as vitamin E, antioxidants, or silver nanoparticles. For example, the can be coated with these ingredients by the user or pre-coated, or can have a delivery mechanism in the brush that can store and provide these ingredients upon use. A high- or low-frequency oscillating motor **110** creates pulsations that vibrate the skin cleanser. The oscillating motor **110** in this embodiment provides vibrations between 50 and 300 Hz, though pulsation frequencies higher and lower than this range may also provide beneficial cleansing of the skin. When the skin cleanser, and the silicone brush **100** in particular, is applied to the body, such as the face or neck, the pulsations provide a thorough cleaning of the skin. The pulsations provide a tapping motion to the skin, in some embodiments, by providing impulses to the skin's surface from the silicone touch-points **100** pulsating against the skin's surface. The tapping-based cleansing provided by the silicone brush provides a deeper clean that is less abrasive than scrubbing the skin with harsher bristles of other materials (e.g., nylon brush bristles). Frequencies in this range provide deep facial cleansing of oil and dirt, unclog follicles, and stimulate blood circulation and lymph flow within the skin.

The oscillating motor **110** is enclosed in a frame **120**, which is enclosed by a casing including a top **130** and a

US 11,633,073 B2

3

bottom **140** made of a suitable material, such as plastic. In some embodiments, there is more than one oscillating motor, which may vary from one another in frequency. A controller, such as a printed circuit board **150**, provides control to the oscillating motor **110**, which is powered by a battery **160**. The battery **160** is charged through a charging port, such as a DC jack **170**.

The user interacts with the controller through controls on the exterior of the skin cleanser (such as those shown in FIG. **3**) or through a wireless remote. When activated by the controls, the controller initiates a high-frequency vibration of the oscillating motor **110**. The user may increase and decrease the frequency of vibration of the motor through controls to set the frequency desired by the user. The frequency set by the user may be stored by the controller when the controller is deactivated, such that the next time the controller is turned on the controller resumes the desired frequency.

FIG. **2** is a cross-sectional view of a skin cleanser, according to one embodiment. The skin cleanser in FIG. **2** includes similar components to the skin cleanser in FIG. **1**, and additional components as described. This embodiment includes a second oscillating motor **200** and a frame **210** containing the second motor **200**. In this embodiment, the second motor **200** is capable of creating vibrations at a lower frequency relative to the high-frequency oscillating motor **110**. The second motor **200**, for example, produces pulsations of 50-130 Hz. The controller in this embodiment may use the second motor **200** alone or in combination with the high-frequency motor **110** to create different vibration effects from the skin cleanser. Using the back-side of the brush, upward strokes on the skin, such as beneath the jaw line, allow the stronger combination of high-frequency and lower-frequency vibration to tone and tighten underlying musculature, such as that of the neck. Additional benefits can range from stimulating collagen synthesis in fibroblast cells to improving the flow of blood and lymphatic fluid— the result is healthier, younger-looking skin, such as in the known problem areas of the face, and a more sharply defined profile of the face. In one embodiment, the FIG. **2** device is a larger cleanser and the FIG. **1** device is a smaller or mini-cleanser.

The controller may also activate the lower-frequency motor alone. The lower-frequency vibrations (e.g., in the range of 50-130 Hertz) in conjunction with rigid silicone brush may be used by a user on the skin to relax underlying musculature. In particular, when gently applied to expression-line problem areas at the brow, temples and nasolabial folds, the skin cleanser can relax underlying muscles and reduce the appearance of dynamic wrinkles. Thus, the high-frequency oscillating motor **110** together with the second oscillating motor **200** may enable the skin cleanser to provide a variety of modes and benefits to the user. In some embodiments, the motors **110**, **200** can be used in an alternating fashion to provide alternating low and high frequency pulsations to the cleanser.

In one embodiment, a sensor is also included in the skin cleanser near the front or back of the skin cleanser (or both). The sensor may be a pressure sensor, capacitive sensor, or similar, and detects a user's action to activate the sensor, such as by contacting the body exterior to the sensor. In one embodiment, the controller activates at least one of the oscillating motors when the sensor is activated, permitting the device to automatically activate when the user activates the sensor. Multiple sensors may be included to activate different functions. For instance, in one configuration a sensor is located underneath each textured side of the skin

4

cleanser and detects contact with that textured side. Based on which sensor is activated, the controller activates an operational mode suitable for the side on which the sensor was activated. For example, activating only the low-frequency oscillating motor when one side is contacted, and simultaneously activating the low- and high-frequency oscillating motors when the other side is contacted.

FIGS. **3-9** illustrate various views of the exterior of a skin cleanser according to some embodiments. The exterior shown in FIGS. **3-9** correspond to the internal configuration shown in FIG. **2**. The exterior is formed of a soft but durable elastic material, such as a hygienic silicone. The skin cleanser includes brush surfaces **300** and **400** on the front and the back of the device with varying textures, such as touch-points of 0.5-2.5 mm diameter, or solid ridged surfaces. The brush surface **300** comprises a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser. Providing more resistance than the thinner touch-points, the thicker touch-points allow for more targeted cleansing of oilier areas and herd to-reach points around the nose, ears and hairline. The pattern of touch-points presented in FIGS. **3-9** is one example of a pattern that might be used to cleansing of what is commonly referred to as "normal" skin. Normal skin can include some areas that are drier, oilier, or more sensitive, such that the different patterns of thinner and thicker touch-points can be helpful in targeting these areas (e.g., thinner touch-points for oily areas around the nose). The thinner touch-points and thicker touch-points may vary in size and spacing. In various embodiments, the thinner touch-points are 25-80% thinner (e.g., 30%, 40%, 50%, 60%, 70%, etc. or values in between) compared to the thicker touch-points. In various embodiments, the thinner touch-points are spaced closer together (i.e., the distance between touch-points) by 15%-60%. Thus, the thinner and thicker touch-points for the normal skin cleansing can also be arranged differently around the brush surface than is shown in FIGS. **3-9**. In one embodiment, the thicker touch points are between about 1.5 mm and 2.5 mm in diameter, and the thinner touch points are between about 0.5 mm and 1.5 mm in diameter.

The touch points and the body of the skin cleanser itself may be compressible and bendable, such that the touch points and body of the skin cleanser conform to the surface of the skin during use.

The brush surface **400** is a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the pulsation energy transfer, and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. Thus, both surfaces **300** and **400** of the brush can be used for skin cleansing, and specifically for different applications of skin cleansing.

The front of the skin cleanser also includes a mode control **310** and frequency controls **320**. The mode control **310** activates the skin cleanser and is used to cycle through modes of operation for the skin cleanser, such as turning the cleanser on, activating the high-frequency and second lower-frequency motor both independently or in unison, and turning the skin cleanser off. Fewer, more, or different controls may be included for other embodiments. The skin cleanser may also activate a mode that directs the user to cycle through portions of the face when applying vibrations through the skin cleanser. The base **330** of the cleanser may light up or otherwise indicate a prompt for the user to move to another portion of the face. As one example, in this mode that directs cycling through the face, the cleanser may first indicate that the user should apply the brush to the area

US 11,633,073 B2

5     6

around the cheeks for a period of time, and then may indicate that the user should apply the brush to the area around the chin, and so forth until the user has cycled throughout the face. The cleanser can indicate when it is time to switch by, for example, lighting up the base, blinking the light a certain number of times, or otherwise using the light to indicate instructions to the user. Different cleaning regimens can be used for different cleansers. For example, a sensitive skin cleanser might have a cycle that is shorter in certain areas of the face to avoid irritating the face. A user might also have a program designed specifically for the user's own skin, with shorter or longer application of the brush to different areas of the face as needed for that user's skin. The program designed for a user's skin may be assessed by the manufacturer and programmed to the controller according to a diagnostic of the user's particular skincare needs.

The brush surfaces are designed to efficiently channel the high-frequency vibrations into the skin to cleanse deeply, unblock follicles, and to boost circulation and lymph flow. By avoiding abrasive exfoliation (as used in other brush-type devices), the brush surface remains gentle enough to use for twice-daily facial cleansing or more uses in the day, as needed. Relative to other cleansing devices, this skin cleanser does not rely on a spinning or twisting action; the result is a deeper clean without the need for such abrasive scrubbing. The pulsations in combination with the textured surfaces, the elastic, soft material touch-points and the solid ridged surfaces provide thorough cleansing, since the textured surface directs the power of the high-frequency motor substantially orthogonal to the skin's surface, which unlocks the skin's natural potential. In one embodiment, the touch-points of the textured surface vertically oscillate from the brush to the skin to create a tapping motion on the skin, similar to the tapping of fingertips on the skin or the patting with a towel or cotton pad. The vertical tapping of the brush in this embodiment provides a gentle cleansing of the skin, as opposed to a rotating motion that can cause a less favorable twisting or stretching of the skin that may cause damage to or scratching of the skin surface.

The vertical tapping motion can be generated by the vibrations of the motor or of multiple motors, or other electromagnetic device in the brush, by electromechanical mechanisms, among other means. For example, the motors can be positioned in the brush to cause the vertical oscillations of the touch-points, such as by positioning one or more motors directly under or adjacent to the textured surface of the brush. The oscillation of the motor(s) can cause each of or at least some of the touch-points to move orthogonal to the skin's surface to tap the skin. Multiple motors can be arranged near the textured surface to create different motions or different speeds of vertical oscillations across the textured surface of the skin. For example, the motors can be positioned so that different touch-point arrangements or patterns on the textured surface can oscillate differently from one another to provide one type of tapping motion for some touch-points and a different type (e.g., different speed, pattern, etc.) for other touch-points. In some embodiments, each touch-point is a single structure rather than a plurality of structures, such as might be found in a brush where each brush bristle is made up of multiple bristle components arranged as a bunch.

The skin cleanser body can be configured to have different shapes, such as a substantially oval shape (e.g., FIGS. 3-9), a substantially round shape (e.g., FIGS. 17-18), and so forth, and it includes a base 330 that is substantially flat to allow the cleanser to be placed on and stand on a surface. The oval or round shape of the body allows the user to hold the

cleanser in the palm of her hand, possibly with fingers splayed along the back side of the cleanser and thumb against the controls in the front side of the cleanser. In some embodiments, the cleanser is wider than it is thick, as is shown, for example, in FIG. 5. This configuration allows the user to easily hold the cleanser in the palm of her hand and reach her fingers around both side of the cleanser for easy and ergonomic manipulation of the cleanser against the skin. The body can thus have two components, the textured portions 300 and 400, and a handle or portion for grasping or manipulating the device, which includes everything other than the textured portions 300, 400. The textured portion can comprise at least 10%, 20%, 30%, 40%, 50% or more of the cleanser outer surface or of the front or of the back of the cleanser outer surface. The textured portion can be positioned on an upper portion or tip of the cleanser, such as is shown in FIGS. 3-9, but can also be otherwise positioned (e.g., at the sides, in the middle, at the bottom, etc.).

FIGS. 3-9 provide just one example of how the touch-points on the brush can be arranged. A variety of other arrangements are also possible (e.g., thinner touch-points at the top and thicker at the bottom, thinner on one side and thicker on the other side, alternating rows of thinner and thicker, various areas or groupings of thinner and thicker in different locations on the brush, and so forth). In addition, different types of touch-points can be included, such as taller or shorter touch-points, touch-points with more or less bulbous ends, touch-points with ends of different shapes (e.g., pointed, feathered, ridged, etc.), and so forth. Similarly, the touch-points can be arranged more or less densely, can be positioned on both the front and back of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), among other variations. Some other examples of touch-point arrangements are shown in FIGS. 10-15. In addition, the ridges of brush surface 400 in FIGS. 3-9 (and for FIGS. 10-15) can be arranged on one or both sides of the brush, can be otherwise located on the brush (e.g., only in the middle, only at the edges, etc.), can be positioned with the touch-points (e.g., above or below, or intermingled within the touch-points), can be formed into other patterns or shapes or with different spacing, among other variations.

FIGS. 10 and 11 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for men's facial skin. The brush on the front side, as shown in FIG. 10, includes a series of thicker touch-points covering the whole front surface, reflecting the additional cleansing normally required for men's oilier skin, with its larger pores and facial hair that act as magnets for dirt and pollutants, making acne, blackheads and breakouts more likely to occur. Providing more resistance than the thinner touch-points, they allow for firmer, deeper cleansing to meet the challenges of a man's thicker skin. The resulting boost to the health of the skin can reduce the discomfort and irritation often associated with, for example, daily wet shaving. The brush on the back side, as shown in FIG. 11, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency (high-frequency and lower-frequency motor in combination) toning and low-frequency, muscle-relaxing functions.

FIGS. 12 and 13 are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for skin with some oilier areas. The brush on the front side, as shown in FIG. 12, includes a series of thinner touch-points for gentle cleansing of non-

US 11,633,073 B2

7
8

oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser, as well as two additional waves of thicker touch-points. Providing less flexibility than the thinner touch-points, these allow for stronger cleansing and the targeting of oilier areas and hard to-reach points around the nose, ears and hairline. The brush on the back side, as shown in FIG. **13**, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and maximize the pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions.

FIGS. **14** and **15** are views of one embodiment of a brush surface configuration for a skin cleanser. This brush configuration is specialized for sensitive skin. The brush on the front side, as shown in FIG. **14**, includes a series of closely packed, smooth silicone ridges in a wave formation, designed to minimize abrasion and allow for the extra-gentle yet highly effective cleansing of even the most sensitive skin. The brush on the back-side, as shown in FIG. **15**, includes a series of smooth silicone ridges arranged in a wave formation, intended to provide minimal abrasion and to maximize the pulsation energy transfer and the effectiveness of the dual-frequency toning and low-frequency, muscle-relaxing functions. The smooth silicone ridges on the front side in one embodiment are spaced closer to one another compared to the spacing of the ridges on the back-side. The ridges on the front side may be spaced between 10-60% closer together (e.g., 20%, 30%, 40%, 50%, etc. or values in between) relative to the spacing of the ridges on the back-side. In addition, the ridges on the front side are cushioned with additional space between the soft elastic surface and the plastic casing in order to provide with extra-gentle cleansing.

FIGS. **17** and **18** are views of one embodiment of a brush surface configuration for a skin cleanser. This brush surface configuration corresponds to the internal configuration shown in FIG. **1**. The brush on the front side, as shown in FIG. **17**, includes a series of thinner touch-points for gentle cleansing of non-oily or sensitive skin, with an area of thicker touch-points grouped towards the top of the cleanser. The brush on the back side, as shown in FIG. **18**, provides a series of thicker touch-points allowing a deeper clean provided by the thicker touch-points to be applied to a larger area.

FIGS. **3-15** and **17-18** are just some examples of different brush surface configurations matched to different skin types. Other designs for other skin types are also possible, such as a particular pattern for dry skin, for aging skin, for combination skin or T-zone skin (e.g., oilier around the forehead, nose, and chin), among others. In some embodiments, the front textured surface includes at least two different types of touch-points (e.g., thicker and thinner). The touch-points of a type can be grouped to provide a pattern. For example, FIG. **3** shows a group of thicker touch-points at the tip of the cleanser and a group of thinner touch-points below. Each pattern can correspond to a particular skin type (e.g., male, sensitive, oily, normal, etc.). In some embodiments, at least 10%, 20%, 30%, 40%, 50% of the front textured surface includes touch-points of a different type than the rest of the front textured surface.

The brush surface can also be designed to contour the curves of the body or face. In one embodiment, one or more surfaces of the brush, e.g., the textured surfaces, are deformable or bendable. For example, where the textured surface is composed of silicone, the surface can compress or bend when pressed against the skin to mold to the surface of the skin for providing a deeper cleansing and for better cleaning of skin surfaces that are curved. In other embodiments, the textured surface can be designed to pivot relative to the brush or to include one or more portions that pivot such that the textured surface can mold to the shape of the skin.

FIG. **16** is a skin analyzer according to one embodiment. The skin analyzer is a handheld device capable of analyzing the skin of the user. The results of the skin analysis may be provided to the user to guide use of the skin cleanser, for example by measuring effectiveness and oiliness of the skin after use. The skin analyzer is encased in a body **1600** held by the operator of the skin analyzer. The skin analyzer includes sensors **1610** that sense the skin's condition, such as oil levels, moisture content, and dead skin cell levels. The results of the skin analysis may be communicated to the user by connecting the skin analyzer to a display or by wireless communication with a display or computer to direct the user in the use of a skin cleanser, such as whether the skin cleanser is being used too frequently or to show improvement of the skin over a period of time as the skin cleanser is applied. The skin analyzer may also provide the results of the analysis via an interface to the skin cleanser, which may be used to change the suggested frequency of applying the skin cleanser to portions of the user's face during cleansing. The cleanser can also include an interface to communicate with the skin analyzer, including sending information about how often it is used, what skin regimens or programs are used, etc.

In one embodiment, the skin analyzer can provide a diagnostic of the user's particular skincare needs, such as by indicating skin type (e.g., oily skin, oily skin in certain areas, sensitive skin, dry skin, dry in certain areas, male or female skin, normal skin, etc.) or by indicating specific details about the user's skin at different areas of the face or different times of day (e.g., tends to be dry in the morning, tends to be thin near the eye area, tends to be dry around the nose, etc.). The skin analyzer data can be used to design a program or skincare regimen specific to the user's skin. The program designed for a user's skin may be assessed by the user or by a third party, such as the manufacturer of the skin cleanser or analyzer, a beautician, a dermatologist or other medical personnel, etc. For example, information about the program can be transmitted via the interface of the skin analyzer or skin cleanser to a computer of the user or third party for review and possible revision. The program or regimen (possibly as revised by the user or third party) can be programmed to the controller of the skin cleanser according to the diagnostic of the user's particular skincare needs.

Additional features may also be included in the skin cleanser. In one embodiment, the skin cleanser includes a heat-emitting source located between the body and the textured surfaces. The heat-emitting source, when activated by the controller, heats the textured surfaces and may be used in conjunction with the oscillations of the touch-points. In a further embodiment, the skin cleanser includes a dosing mechanism integrated in the body of the device to dispense liquids or solid suspensions, such as for the delivery of silver nanoparticles, Vitamin E, etc. as described above. The dosing mechanism may include a reservoir, for example at the base of the skin cleanser, and a pump with an outlet to dispense contents of the reservoir to the textured surfaces or near the textured surfaces.

SUMMARY

The foregoing description of the embodiments of the invention has been presented for the purpose of illustration;

US 11,633,073 B2

9

it is not intended to be exhaustive or to limit the invention to the precise forms disclosed. Persons skilled in the relevant art can appreciate that many modifications and variations are possible in light of the above disclosure.

The language used in the specification has been principally selected for readability and instructional purposes, and it may not have been selected to delineate or circumscribe the inventive subject matter. It is therefore intended that the scope of the invention be limited not by this detailed description, but rather by any claims that issue on an application based hereon. Accordingly, the disclosure of the embodiments of the invention is intended to be illustrative, but not limiting, of the scope of the invention.

What is claimed is:

1. A skin cleanser, comprising:
a skin cleanser body having:
   a front,
   a back,
   a base, and
   a cross-sectional shape that is longer in a first direction
     substantially parallel
      to the base than in a second direction substantially
      parallel to the base;
a silicone exterior covering substantially all of an exterior of said skin cleanser body;
a textured surface area on the skin cleanser body that is integrally formed with the silicone exterior, the first textured surface area comprising a first set of touch-points; and
a motor disposed within the skin cleanser body configured to produce pulsations of the skin cleanser;
wherein the base is substantially flat; and
wherein the base is configured to stand unaided on a substantially flat surface.

2. The skin cleanser of claim 1, wherein the textured surface area is disposed on the front of the skin cleanser.

3. The skin cleanser of claim 2, further comprising at least one control configured to operate the motor.

4. A skin cleanser, comprising:
a skin cleanser body, the skin cleanser body comprising a silicone exterior covering substantially all of an exterior side of the skin cleanser body, the silicone exterior having a textured surface area that is integrally formed with the silicone exterior, the textured surface area comprising a set of touch-points;

10

a base configured to stand unaided on a substantially flat surface, the skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base; and
a motor disposed within the skin cleanser body configured to produce pulsations of the skin cleanser.

5. The skin cleanser of claim 4, wherein the base is attached to the skin cleanser body.

6. The skin cleanser of claim 4, further comprising at least one control configured to operate the motor.

7. The skin cleanser of claim 4, wherein the skin cleanser body comprises a substantially round shape.

8. The skin cleanser of claim 4, further comprising a heat-emitting source.

9. The skin cleanser of claim 4, further comprising a second textured surface area that is integrally formed with the silicone exterior, the second textured surface area comprising a second set of touch-points.

10. The skin cleanser of claim 4, wherein the base is substantially flat.

11. A skin cleanser, comprising:
a skin cleanser body, the skin cleanser body comprising a silicone exterior covering substantially all of an exterior side of the skin cleanser body, the silicone exterior having a textured surface area that is integrally formed with die silicone exterior, the textured surface area comprising a set of touch-points;
a base configured to stand unaided on a substantially flat surface, the skin cleanser body having a cross-sectional shape that is longer in a first direction substantially parallel to the base than in a second direction substantially parallel to the base; and
a motor disposed within the skin cleanser body configured to produce pulsations of the skin cleanser;
wherein the skin cleanser body comprises a substantially oval shape that is configured to be held in the palm of a hand of a user.

12. The skin cleanser of claim 11, further comprising a heat-emitting source.

13. The skin cleanser of claim 11, wherein the base is attached to the skin cleanser body.

14. The skin cleanser of claim 11, wherein the motor is operable to oscillate within the range of 50 Hertz to 300 Hertz.

* * * * *

US009578956B2

(12) **United States Patent**
Sedic

(10) Patent No.: **US 9,578,956 B2**
(45) Date of Patent: **Feb. 28, 2017**

(54) **TOOTHBRUSH WITH BIOFILM-REMOVING TOUCH POINTS**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 95 days.

(21) Appl. No.: **14/576,134**

(22) Filed: **Dec. 18, 2014**

(65) **Prior Publication Data**

US 2015/0173502 A1    Jun. 25, 2015

**Related U.S. Application Data**

(60) Provisional application No. 61/919,673, filed on Dec. 20, 2013.

(51) **Int. Cl.**
| | |
|---|---|
| *A46B 9/04* | (2006.01) |
| *A46B 13/02* | (2006.01) |
| *A46D 1/00* | (2006.01) |
| *A61C 17/22* | (2006.01) |
| *A61C 17/16* | (2006.01) |

(52) **U.S. Cl.**
CPC .............. *A46B 9/04* (2013.01); *A46B 13/023* (2013.01); *A46D 1/0207* (2013.01); *A61C 17/22* (2013.01); *A61C 17/16* (2013.01)

(58) **Field of Classification Search**
CPC ...... A46B 9/04; A46B 13/023; A46D 1/0207; A61C 17/22; A61C 17/16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 686,764 | A | * 11/1901 | Richards | ........................ 15/188 |
| 1,817,585 | A | * 8/1931 | Samuel | .................... A46D 1/00 |
| | | | | 15/188 |
| 2,225,331 | A | * 12/1940 | Campbell | .............. A46B 9/005 |
| | | | | 15/167.1 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 201070108 Y | 6/2008 |
| KR | 10-2012-0026955 A | 3/2012 |
| WO | WO 2005/096882 A1 | 10/2005 |
| WO | WO 2011013533 A1 * | 2/2011 ............... A46B 9/04 |

OTHER PUBLICATIONS

AZO materials; Properties: Silicone Rubber; www.azom.com/properties.aspx?ArticleID=920.*
PCT International Search Report and Written Opinion, PCT Application No. PCT/IB2014/003193, Jun. 18, 2015, ten pages.

* cited by examiner

*Primary Examiner* — Shay Karls
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57) **ABSTRACT**

A tooth brush device having bristle touch-points composed of a polymer material (e.g., silicone) provides improved biofilm removal from teeth. The tooth brush device comprises a head with an apex, a base opposite the apex, a front surface, and a back surface opposite the front surface. The front surface of the head includes bristle touch-points arranged along rows. The rows are arranged orthogonal to the longitudinal axis of the head extending from the apex of the head to the base of the head. Each of a plurality of the bristle touch-points is a single solid elongate structure extending from the head and is composed of a polymer material. The device further includes a neck coupled to the base of the head and a handle coupled to the head via the neck.

**19 Claims, 10 Drawing Sheets**





FIG. 1



FIG. 2          FIG. 3



FIG. 4

FIG. 5

100



FIG. 6

100



FIG. 7



FIG. 8



110

102

FIG. 9



FIG. 10



FIG. 11a



FIG. 11b



FIG. 12



FIG. 13

US 9,578,956 B2

1

# TOOTHBRUSH WITH BIOFILM-REMOVING TOUCH POINTS

## CROSS-REFERENCE TO RELATED APPLICATION

This application claims priority under 35 U.S.C. §119(e) from U.S. Provisional Patent Application No. 61/919,673, entitled "Toothbrush With Biofilm-Removing Touch Points," filed on Dec. 20, 2013, which is incorporated by reference herein in its entirety.

## BACKGROUND

The disclosure relates generally to a toothbrush, and more particularly to tooth cleaning, and gum muscle and tissue massage, stimulation, or treatment that combines specific geometry, material properties and stimulation generated by one or more motors of the toothbrush apparatus.

General mouth hygiene and oral health is dependent on the presence of microbial cultures and bacteria on the teeth, and in the mouth cavity, and the related microbial excretions that damage the protective layers of teeth causing greater probability of cavity creation and development. These microbial cultures are present in the biofilm on the surfaces of the teeth and in the food that remains present in the oral cavity and on the surfaces of the teeth. Effective removal of biofilm and food diminishes the presence of microbial cultures and excretions, and aids to improve the natural protection of teeth, leading to better oral hygiene.

The gum tissue and muscles are vital for the protection of the teeth as far as exposure of the lower layers of the teeth and sensitivity to touch and temperature changes are concerned. Today's dental care products and toothbrush apparatus rely on the use of nylon bristles that can, in the case of application of too much pressure, damage the gum tissue and muscles. In addition, today's dental care apparatuses and toothbrushes that are based on nylon or equivalent bristles do not stimulate the tissue nor enhance circulation important for the regenerative and continuous healing process of the gum tissue and muscles.

To date, the devices to address oral hygiene are based on nylon bristles that are designed to reduce the presence of biofilm, remove food remains, and treat gum tissue and muscles, however these devices are not very effective due to the geometry and properties of the bristles, which limits their ability to remove the very thin biofilm across large surface areas of the teeth. These bristles also fail to effectively stimulate gum tissue and muscles. In fact, most devices currently available are designed with special mechanisms to minimize damage to the gum tissue rather than to stimulate gum tissue. What is needed, therefore, is a device that would overcome the above limitations and both remove the biofilm with greater efficacy while stimulating gum tissue and muscles effectively and safely.

## SUMMARY

Embodiments include a toothbrush apparatus with one or more oscillating motors, or other electromagnetic devices that can provide the toothbrush with various frequency pulsations, and an exterior that can be composed of a soft elastic material, such as silicone. The apparatus also includes a brush with one or more textured surfaces including touch-points of, for example, 0.5 to 2.5 mm in dimension, or solid surfaces with ridges for cleaning the teeth and interacting with the gum tissue and muscles. The oscillating

2

motor moves or oscillates the textured surfaces of the brush for application to a user's teeth and gums. As the user moves the toothbrush on the teeth and gums, the oscillating pulsations combined with the textured surfaces' touch-points remove biofilm and other contaminants on the tooth surface. The oscillating pulsations provide a tapping motion to the user's gums to stimulate the tissue without abrasive action. The oscillations occur at around 50-300 Hertz (Hz). One embodiment includes a high-frequency and a low-frequency oscillating motor, or other electromagnetic device, that may operate simultaneously. The simultaneous pulsations provide a deep cleaning to the teeth. While referred to here as a toothbrush, the device can also perform other functions besides cleaning, including massaging, stimulating, heating, applying tooth paste or other substances, and so forth.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a toothbrush, according to one embodiment.

FIGS. 2 and 3 are side views of a toothbrush, according to one embodiment.

FIG. 4 is a front view a toothbrush, according to one embodiment.

FIG. 5 is a back view a toothbrush, according to one embodiment.

FIGS. 6 and 7 are top and bottom views of a toothbrush, respectively, according to one embodiment.

FIG. 8 is a perspective view of a head of a toothbrush, according to one embodiment.

FIG. 9 is a front view of a head of a toothbrush, according to one embodiment.

FIG. 10 is a side view of a head of a toothbrush, according to one embodiment.

FIG. 11a is a perspective view of a convention toothbrush head.

FIG. 11b is a perspective view of a toothbrush head, according to some embodiments.

FIG. 12 is an exploded view of a toothbrush, according to one embodiment.

FIG. 13 is a graphical illustration of internal components of a toothbrush, according to one embodiment.

The figures depict various embodiments of the present disclosure for purposes of illustration only. One skilled in the art will readily recognize from the following discussion that alternative embodiments of the structures and methods illustrated herein may be employed without departing from the principles of the disclosure described herein.

## DETAILED DESCRIPTION

FIG. 1 is a perspective view of a toothbrush 100, according to one embodiment. In some embodiments, the toothbrush 100 is an electromechanical device that uses electric power from AC mains (e.g., through a power converter) or uses battery power and generates mechanical energy to mechanically stimulate and provide pulsations to various parts of the mouth (teeth, gums, gumline, jaws, tongue, inner cheek walls, and the like).

As shown in FIG. 1, toothbrush 100 has a head 102, a handle 104, and a neck 106. Neck 106 couples or connects the head 102 to the handle 104. Depending on the use case or application, and depending on the target users (e.g., children versus adults, people with sensitive teeth or gums, and so on), toothbrush 100 can be made of a variety of different materials, a variety of different sizes (e.g., smaller tooth brushes for children), such as different overall lengths,

US 9,578,956 B2

3

different lengths or widths of head **102**, different lengths or widths of the handle **104**, and so on. Head **102** optionally has a rounded or smooth perimeter and tapers toward the apex (e.g., in an oval shape), thereby facilitating easier usage in the mouth.

In some embodiments, a front surface of the head **102** includes bristle touch-points **110** arranged along rows. The rows in turn are arranged orthogonally to a longitudinal axis **112** of the head **102** extending from an apex **152** of the head **102** to the base **154** of the head **102**.

In some embodiments, as illustrated in the inset **150**, a given bristle touch-point of the plurality of bristle touch-points is a single solid elongate structure. Furthermore, as shown in inset **150**, the single solid elongate structure of a given bristle touch-point has rectangular or substantially rectangular cross-sections of decreasing cross-sectional area from a proximal end to a distal end of the given bristle touch-point. In other words, the single solid elongate structure of a given bristle touch-point tapers along its central axis from a base to a tip, forming a frustum of a rectangular pyramid. In some embodiments, the elongate structure of a bristle touch-point has a polygonal cross-section. For example, the cross-section may be trapezoidal—two parallel sides of the trapezoid cross-section formed parallel to the longitudinal axis of the head, the side closer to a lateral or outer edge of the head having a greater length than the side further away from the lateral or outer edge of the head. This is illustrated in the view **160** where touch-points **150-a** and **150-b** of the inset **150** have trapezoidal cross sections. The sides of the trapezoid closer to the outer edge or periphery of the tooth brush head (e.g., **155-a** and **157-a**) have a greater dimension than the side of the trapezoid further away from the periphery (e.g., **155-b** and **157-b**). Thus, the touch-points may be designed to be wider in cross-section near the outer edge of the brush head and narrower in cross section toward the center. This variation or difference in width (e.g., the difference between length of side **155-a** and length of side **155-b**) for an individual touch point may be greater for the touch points that are closer to the outer or lateral periphery of the head. In such embodiments, the touch points near the center of the brush head are more rectangular and have more uniform widths. Other cross-sectional shapes such as circular, oval, oblong, concave shapes may be used alternatively or in addition to the polygonal shapes. Cross sectional shapes may also vary based on a location of the touch point on the head of the tooth brush—for example, circular cross sections may be used for touch points near the apex **152**, trapezoidal cross sections near the outer periphery of the head, and rectangular or square cross sections may be used in the central region of the head.

Moreover, the cross-sectional shapes may be configured to have a narrower or smaller dimension along the longitudinal axis of the tooth brush head. For example, the narrower or shorter sides of the rectangular or polygonal cross section are optionally parallel to the longitudinal axis of the tooth brush head. In the illustration of touch points **150-a** and **150-b**, the shorter sides **155-a** and **155-b** are formed parallel to or along the longitudinal axis of the tooth brush head. This design feature results in less resistance to flexure or bending forces that are applied along the longitudinal axis of the tooth brush head than along a lateral, short, or horizontal axis of the tooth brush head. More generally, a width of the touch points may be increased or greater along a direction orthogonal to a direction in which the brush strokes or flexure forces are likely to be applied, thus providing lower resistance to these flexure forces.

4

In some embodiments, a center of the touch-point cross section aligns with the central axis of the touch-point throughout the length of the touch-point—in other words, the bristle touch point tapers along its central axis. In this case, the central axis of the touch point is orthogonal to the plane of the base of the touch point where the touch point contacts or is attached to the head of the tooth brush. This centered tapering provides symmetric mechanical flexure properties along the central axis of the touch point. Alternatively, a center of the touch-point cross section may be offset relative to the central axis of the touch-point as the touch-point tapers along its length. In other words, the bristle touch-point may asymmetrically taper away from the central axis and the axis of tapering may be offset and angled (e.g., non-parallel) to the central axis of the touch-point. This is illustrated in the views of touch points **150-a** and **150-b** where the axes of tapering **155-c** and **157-c** are offset or angled relative to the central axes **155-d** and **157-d** of the touch points. This non-centered centered tapering may be used to provide asymmetric mechanical flexure properties to forces applied from opposite sides of the central axis of the touch point. For example, if the bristle touch-points (e.g., touch points **150-a** and **150-b**) taper towards a base side of the tooth brush head, as illustrated in FIG. **1**, then the bristle touch points offer more flexibility (less resistance) to flexing or bending toward the base **154** of the tooth brush head than towards the apex **152** of the head.

More generally, an axis of tapering of the touch points may be angled away from a central axis of the touch point in a direction in which flexure forces associated with brush strokes are likely to be applied. The measure of the angle formed between the central axis and the axis of tapering may vary with the measure of asymmetry that is desired between the amount of resistance to be applied to flexure forces in the two opposite directions. In such embodiments, this differential resistance to brush strokes in opposite directions provides differential levels of cleansing. For example, referring to the angled bristle touch points **150-a** and **150-b** of FIG. **1**, brush strokes that bend the touch points toward the apex (bend upwards) would face greater resistance and cause firmer or stronger cleansing than brush strokes that bend the touch points toward the base (bend downwards). Strokes along the latter direction would face lower resistance and provide gentler cleansing. The measure of the angle formed between the central axis and the axis of tapering may also vary across touch points—some touch points may have a more symmetric tapering than others. This variation in the measure of the angle may vary based on locations of the touch points on the brush head.

In some embodiments, the single solid elongate structure of the bristle touch-point is composed of a polymer material (such as silicone). In some embodiments, a Young's modulus of the polymer material ranges approximately from 0.001 GPa to 0.05 GPa. In some embodiments, the Young's modulus of the polymer material ranges approximately from 0.01 GPa to 0.1 GPa. In some embodiments, a Young's modulus of the polymer material is lower than a specified threshold (e.g., less than 0.1 GPa or less than 1 GPa, and so on).

A polymer material having such mechanical properties is typically softer, less rigid, and more malleable (flexible or pliable) than other materials, such as nylon or polypropylene, which typically have a higher Young's modulus (e.g., commonly in the 2-4 GPa range for nylon, 1.5-2 GPa for polypropylene, and so on). As a result, the bristle touch-points made from such polymer materials (as silicone) are gentle on the mouth parts and do not damage or injure the

5

mouth parts (such as gums and other soft tissue of the mouth) during brushing or mechanical stimulation. Accordingly, the touch-points described herein are gentler than bristles used in conventional toothbrushes, thereby providing better comfort and functionality for children, for people with sensitive teeth, for people with dental conditions, such as receding gum lines, for aggressive brushers, and the like.

It should be understood that although the Young's modulus is described and used herein as one metric for illustrating the mechanical properties of the materials that can be used for making the bristle touch-points, other metrics (e.g., other moduli of elasticity such as shear modulus or bulk modulus; tensile strength, compressive strength, modulus of resilience, and so on) may alternatively be used to select an appropriate material that has these desired mechanical properties—e.g., has the desired softness, is adequately pliable, offers the desired range of resistance to being deformed elastically (e.g., non-permanently) when a force is applied to it, and has the desired resilience to restore its original shape once the force is removed. The Young's modulus is just one example of such a metric or mechanical parameter.

Additionally, mechanical properties that relate to the shapes or structures of the bristle touch-point may be defined or specified in addition to or instead of the mechanical properties of the material of which the touch-points are made. Such structural or shape dependent properties may be defined in terms of ranges of a bending modulus, a flexural modulus, and the like. Although the ranges of each of these parameters is not specifically listed here, it should be understood that any suitable parameters may be used to select a material that in combination with the shape or structure described herein provides these desired material properties.

Furthermore, silicone is characterized by stronger adhesive properties (tendency to adhere or stick to surfaces) than several other materials, such as nylon. Thus, bristle touch-points made of polymers, such as silicone, form a stronger mechanical bond with biofilms in the mouth and provide improved friction or drag forces that help clean the biofilms effectively from tooth surfaces. The shape of the bristle touch-points also assists in removing biofilm. The elongated, thin, generally flat surfaces of the touch-points cover at least 50% and some cases 100% of one of the tooth surfaces, and are dragged across the surface of the tooth during brushing to cleanse or polish the tooth.

Additionally, a hygienic silicone material that is fast-drying and non-absorbent can be used, thus allowing the tooth brush 100 to be used in the mouth and in water-based media and environments. Such a material is also easy to clean with water and even with soap or other cleansers as needed and is readily dryable after cleaning, unlike nylon bristles that tend to absorb and retain water and cleansers.

Additionally, the filaments of conventional nylon bristles commonly flex, deform, and spread out around the outer edges (lateral peripheries of the front surface of the head) due to long term use of the tooth brush resulting in the bristles becoming ineffective or less effective for prolonged or long-term use. Additionally, upon undergoing such permanent deformation, such bristles become potentially hurtful or harmful on the gums and soft tissues of the mouth. In contrast, the thicker silicone bristle touch-points, being more flexible, elastic, and thicker, are more resistant to mechanical wear, permanent flexure, or deformation. In some embodiments, the touch-points are thinner along the direction of brush strokes (e.g., along the longitudinal axis of the tooth brush) and therefore are less likely to undergo flexure in an orthogonal direction to the direction of brush strokes or brushing action. Thus, the touch-points are more immune

6

to permanently outwardly deforming or bending out of shape along the outer edges or lateral peripheries of the toothbrush head.

In some embodiments, the toothbrush 100 also includes manual controls 120, 130-a, and 130-b that enable the user to vary one or more parameters or attributes of the mechanical stimulation energy provided to the mouth by the vibration of the brush head. For example, the controls 120, 130-a, and 130-b may be used to modify (e.g., increase 130-a or decrease 130-b) a frequency of mechanical vibrations provided to various mouth parts. As another example, the controls 120, 130-a, and 130-b may be used to modify (e.g., increase or decrease) an intensity (e.g., amplitude or strength) of mechanical vibrations provided to various mouth parts. As yet another example, the controls 120, 130-a, and 130-b may be used to modify a direction (e.g., longitudinal or lateral rubbing, vertical tapping, circular or rotatory direction) of mechanical vibrations provided to various mouth parts. As yet another example, the controls 120, 130-a, and 130-b may be used to modify a pattern (e.g., burst mode pattern, continuous pattern, preprogrammed combination of frequency and intensity patterns) of mechanical vibrations provided to various mouth parts. The user may increase or decrease a parameter value (e.g., intensity or frequency) of vibration of the motor through the manual controls to set an appropriate parameter value desired by the user. The parameter value set by the user may be stored by a controller (that controls or governs the operation of the brush) when the controller is deactivated, such that the next time the controller is turned on, the controller resumes operation the desired parameter value. Manual controls 120, 130-a, and 130-b are optionally placed along the handle 104 (which also serves as a hand grip) for convenient access and use. Alternatively, or in addition, in some embodiments, the one or more parameters or attributes of the mechanical stimulation energy provided to the mouth by the vibration of the brush head may be varied through a wireless remote.

FIGS. 2 and 3 are side views of a toothbrush, according to one embodiment. In some embodiments, tooth brush 100 has an ergonomically designed shape. A curved and tapering shape of the head 102 facilitates comfortable usage inside the mouth. The handle 104 optionally has a smooth and arcuate surface that facilitates a comfortable and convenient hand grip and is well-contoured to the shape of the palm.

In some embodiments, the toothbrush surface can also be designed to contour to the curves of the mouth. In one embodiment, one or more surfaces of the toothbrush 100 are deformable or bendable. For example, if the textured surface is composed of silicone, the surface can compress or bend when pressed against an inner wall of the cheek or a gum or tongue surface to mold to the contour of the mouth part for providing a thorough cleansing and for better cleaning of mouth surfaces that are curved. In some embodiments, the head 102 is flexible and can bend along its length or at the neck 106 during usage to conform to the shape of the user's mouth. The brush head 102 can also be replaceable with new brush heads as desired. In some embodiments, all or substantially all of the toothbrush is covered with an outer layer of silicone or other polymer material. In the embodiment of FIG. 1, for example, only a base portion of the handle 104 at the bottom-most section is not covered with silicone and a portion at the neck 106 where the head is detachable from the neck (which can be composed of a metal accent) is not covered with silicone. In some embodiments, the tooth brush is completely waterproof. In the FIG. 1 embodiment, the base portion of the handle is a clear/transparent or translu-

US 9,578,956 B2

7

8

cent band (e.g., plastic or other polymer) that includes a lighting mechanism nearby or above the band, the lighting mechanism allowing light to shine through such that a user can determine whether the device is turned on or off by whether there is light shining through the clear base band. The base allows the device to stand on a surface, such as a tabletop.

Furthermore, as shown in FIG. **2**, in some embodiments, the neck **106** couples the handle **104** to the head **102** of the tooth brush **100** via a curved or arcuate surface that transitions smoothly from a handle-proximal region that is broader than a head-proximal region, to the head-proximal region. In such embodiments, a radius of curvature of the arcuate surface (e.g., R**1** 230 or R**2** 240, illustrated in FIG. **2**) varies from approximately 5-20 centimeters (e.g., R**2** 240) at the broader handle-proximal region to approximately 5-10 centimeters (e.g., R**1** 230) at the narrower head-proximal region, for a 15 to 25 centimeter total length of tooth brush **100**. Radii of curvature optionally scale linearly with dimensions such as a total length of tooth brush **100**.

Additionally, as shown in FIGS. **2-3**, in some embodiments, the bristle touch-points **110** vary in length from a first length at an apex of the head **102**, to a second length (e.g., greater than the first length, for example, by a factor of 2-10) in a central region of the head **102** between the apex and a base of the head **102**, to a third length (e.g., less than the second length, for example, by a factor of 2-10) at the base of the head **102**. The varying length of the bristle-touch points allows for easier access to hard-to-reach sections of the mouth, such as molars, premolars, and other inner mouth parts. In some embodiments, for a 15 centimeter tooth brush length, the first length ranges from approximately 1 millimeter to 3 millimeters; the second length ranges from approximately 3 millimeters to 15 millimeters; and the third length ranges from approximately 1 millimeter to 3 millimeters. In some embodiments, a ratio of the second length to the first length ranges from approximately 2 to 10; a ratio of the second length to the third length ranges from approximately 2 to 10; and a ratio of a length of the tooth brush to the second length ranges from approximately 10 to 100.

FIG. **3** additionally illustrates, in the side view, a front surface **302** of the tooth brush head that includes the bristle touch-points **110** arranged along rows, and a back surface **304** of the tooth brush that comprises a plurality of ridges. In some embodiments, the touch-points may also vary in breadth and aspect ratio along the front surface **302** of the head **102**. In some embodiments, the touch points **110** include at least two different types of touch-points (e.g., thicker and thinner). The touch points of a type can be grouped to provide a pattern. For example, a group of thicker touch points may be located at the apex of the head **102** and a group of thinner touch points toward a base of head **102**. In some embodiments, at least 10%, 20%, 30%, 40%, 50% of the front surface **302** of head **102** includes touch points of a different type than the rest of the front surface of head **102**.

In general, in some embodiments, a variety of other touch-point arrangements are possible—for example, thinner touch points at the top and thicker at the bottom, thinner on one side and thicker on the other side, alternating rows of thinner and thicker, various areas or groupings of thinner and thicker in different locations on the head **102**, and so forth. In addition, different types of touch points can be included, such as taller or shorter touch points, touch points with more or less bulbous ends, touch points with ends of different shapes (e.g., pointed, feathered, ridged, etc.), and so forth. Similarly, the touch points can be arranged more or less densely, can be positioned on both the front and back of the

tooth brush, can be otherwise located on the tooth brush (e.g., only in the middle, only at the edges, etc.), among other variations.

In some embodiments, the thinner touch points and thicker touch points may vary in size and spacing. In various embodiments, the thinner touch points are 25-80% thinner (e.g., 30%, 40%, 50%, 60%, 70%, etc. or values in between) compared to the thicker touch points. In various embodiments, the thinner touch points are spaced closer together (e.g., the distance between touch points) by 15%-60%.

FIG. **4** is a front view of a toothbrush, according to one embodiment. In some embodiments, as shown in FIG. **4**, bristle touch points **110** extend substantially to the edge of the toothbrush head **102**. For example, the touch-points extend to within approximately 1 millimeter of a lateral periphery or edge of the front surface of the head **102**. This configuration of touch points extending substantially to the lateral peripheries of the front surface of the head leave negligible area around the side of the brush when inserted into the mouth, thereby improving accessibility of the touch points to the hard-to-reach areas of the mouth without the wall of the head **102** hitting or touching the inside of the mouth.

As explained with reference to FIG. **2**, the neck **106** couples the handle **104** to the head **102** of the toothbrush **100** via a curved or arcuate surface that transitions smoothly from a handle-proximal region that is broader than a head-proximal region, to the head-proximal region. In such embodiments, a radius of curvature of the arcuate surface (e.g., R**3** 430 or R**4** 450, illustrated in FIG. **4**) varies from approximately 5-20 centimeters (e.g., R**5** 450) at the broader handle-proximal region to approximately 5-10 centimeters (e.g., R**4** 430) at the narrower head-proximal region, for a 15 to 25 centimeter total length of tooth brush **100**. Radii of curvature optionally scale linearly with dimensions such as a total length of tooth brush **100**.

FIG. **5** is a back view a toothbrush, according to one embodiment. Toothbrush **100** on a back side of the head **102**, as shown in FIG. **5**, includes a series of smooth silicone ridges **550** (e.g., arranged in an undulating or wave-like formation), intended to provide minimal abrasion and to maximize a mechanical pulsation energy transfer and the effectiveness of a dual-frequency (e.g., high-frequency and lower-frequency) toning and muscle-relaxing functions (e.g., at lower vibration frequencies). In some embodiments, more or fewer ridges, different patterns and configurations, different sizes and shapes, could be used. Furthermore, charger port **560** enables battery charging via various charging means, such as using AC mains, transformer or power converters, inductive charging, or any other suitable charging means. In other embodiments, a base with one or more recesses into which the toothbrush **100** can be positioned, and the toothbrush can be charged through the base, for example via inductive charging based on a transmitting coil in the base and a receiving coil in the toothbrush or via metal contacts in the base and toothbrush.

FIGS. **6** and **7** include top and bottom views of toothbrush **100**, according to one embodiment. FIG. **8** is a perspective view of a head of a toothbrush head, according to one embodiment. As explained with reference to FIGS. **2-3**, and as shown in FIG. **8**, in some embodiments, the bristle touch-points vary in length from a first length at an apex of the head **102**, to a second length (e.g., greater than the first length) in a central region of the head **102** between the apex and a base of the head **102**, to a third length (e.g., less than the second length) at the base of the head **102**. FIG. **9** is a front view of a head of a toothbrush head, according to one

US 9,578,956 B2

9
10

embodiment. As shown in FIG. 9, in some embodiments, bristle touch-points along adjacent rows are mutually interleaved, thereby improving contact area with the teeth. As shown in FIG. 9, each horizontal row of bristle touch-points is offset from the row next to it such that the gap between two touch-points in one row aligns with a touch-point in the next row that stretches from one side of the gap to the other side of the gap. In other embodiments, the bristle touch-points can be non-interleaved or positioned in a single file line vertically and horizontally. Other patterns can also be used, including touch-points arranged diagonally or in circular patterns. Similarly, different patterns or arrangements can be used along different portions of the brush head 102. For example, an interleaved pattern might be used only on the top or bottom or middle portion, or only around the edges, or along one of the sides.

FIG. 10 is a side view of a head of a toothbrush, according to one embodiment. FIG. 10 illustrates that the bristle touch-points can be of different lengths or heights, with some being longer and some being shorter, as explained above. For example, in FIG. 10, the touch-points at the middle portion of the brush are longer than the touch-points at the top or bottom of the brush. The touch points can also vary in thickness or other dimensions across the length or width of the brush head 102, as can be seen from FIG. 10. The inset 1105 of FIG. 10 provides another perspective of the centered, symmetric tapering of touch points versus the non-centered, asymmetric tapering. In some embodiments, as explained with reference to FIG. 1 above, a bristle touch-point may asymmetrically taper away from the central axis and the axis of tapering may be offset and angled (e.g., non-parallel) to the central axis of the touch-point. In this case, the central axis of the touch point is orthogonal to the plane of the base of the touch point where the touch point contacts or is attached to the head of the tooth brush. For example, in the illustration of inset 1105 of FIG. 10, the axes of tapering (e.g., 1106-b, 1107-b, 1108-b) for the touch points is distinct from, offset or at an angle to the central axes (e.g., 1106-a, 1107-a, 1108-a) of the touch-point as the touch-point tapers along its length. A measure of this angular separation between the axis of tapering and the central axis may vary from one touch point to another. In alternative embodiments, for some touch points, a center of the touch-point cross section may align with the central axis of the touch-point throughout the length of the touch-point (e.g., the central axis and the axis of tapering 1109-a/b coincide for the lower most touch point illustrated in the inset 1105)—in other words, the lowermost bristle touch point tapers along its central axis.

FIG. 11a is a perspective view of a conventional toothbrush head. Traditional toothbrushes have bristle clusters, each bristle cluster having multiple narrow, filamental bristles made of a stiff material such as nylon (e.g., typically having a Young's modulus exceeding 1 GPa, such as in the 2-4 GPa range). Traditional bristles are frequently harsh on sensitive mouth parts due to the stiffer and narrower filamental bristles. In comparison, FIG. 11b is a perspective view of a toothbrush head, according to some embodiments of the instant disclosure. As described above, the individual bristle touch-points 110 are single solid elongate structures made from certain polymer materials (such as silicone). As a result, the bristle touch points 110 are gentler on the mouth parts and do not easily damage or injure the sensitive mouth parts (such as gums and other soft tissue of the mouth) during brushing or mechanical stimulation. Accordingly, the touch-points described herein are gentler than bristles used in conventional toothbrushes. This results in improved comfort and functionality for children, for people with sensitive teeth, for people with dental conditions such as receding gum lines, for aggressive brushers, and the like.

FIG. 12 is an exploded view of a toothbrush 100 illustrating various internal components of the tooth brush 100, according to one embodiment. As shown in FIG. 12, in some embodiments, the toothbrush 100 includes bristle touch-points 1202 (corresponding to touch points 110 explained with reference to FIG. 1) on the front side of the head, a frame 1204 (e.g., a nylon frame) on the back side of the head, and a shaft 1206 extending along at least a portion of the head and/or the neck. The shaft 1206, optionally couples to a ring 1208 and motor casing 1210. The ring 1208 can be a decorative ring at the neck, such as a metal component that separates the head from the rest of the toothbrush. Motor casing 1210 covers or encases one or more motors 1214 (corresponding to motor(s) 1308) explained further with reference to FIG. 13). As described with reference to FIG. 13, the motor(s) are operated on electric energy provided by battery 1224 and other electronic circuitry (such as a controller and so on) present on printed circuit board or PCBA 1220 (corresponding to battery and power supply 1304). A direct current or DC jack 1226 also optionally couples to the motor electronics. A top covering 1216 (e.g., composed of silicone or other suitable material), upper casing 1212, and lower casing 1218 form the outer protective covers for the handle of the tooth brush. The casings 1212, 1218 are made of plastic or other suitable materials.

FIG. 13 is a graphical illustration of internal components of a toothbrush, according to one embodiment. In one embodiment, the touch points 110 of the tooth brush 100 are configured to vertically oscillate from the tooth brush to the mouth parts to create a tapping motion in the mouth. The vertical tapping in the mouth in this embodiment provides a gentle cleansing of the surface being tapped on (e.g., teeth, gums, tongue, inner cheek tissue, and the like), as opposed to a rotating or translational motion that can cause a less favorable twisting or stretching of the tissue that may cause damage to or scratching of the tissue surface.

The vertical tapping motion can be generated by the vibrations of one or more motors 1308, or other electromagnetic device in the brush, by electromechanical mechanisms, among other means. For example, the motors 1308 can be positioned in the brush to cause the vertical oscillations of the touch points, such as by positioning one or more motors 1308 directly under or adjacent to the bristle touch points. The oscillation of the motor(s) 1308 can cause one or more of the touch points to move orthogonal to the mouth's surface to tap the inner mouth. Multiple motors 1308 can be arranged near the head 102 of the tooth brush 100 to create different motions or different speeds of vertical oscillations. For example, the motors 1308 can be positioned so that different touch point arrangements or patterns on the textured surface can oscillate differently from one another to provide one type of tapping motion for some touch points and a different type (e.g., different speed, pattern, etc.) for other touch points.

In some embodiments, a high-, or low-frequency motor creates pulsations that vibrate the tooth brush 100. A high frequency oscillating motor may provide vibrations between 50 and 300 Hz; and a low frequency oscillating motor in the 50-130 Hz range. Pulsation frequencies higher and lower than this range may also provide beneficial cleansing of inner mouth surface or tissue. Frequencies in this range typically provide improved cleansing and the stimulation of blood circulation and lymph flow within the mouth. In some embodiments, the high-, or low-frequency motors can be

US 9,578,956 B2

11

used in an alternating fashion to provide alternating low and high frequency pulsations to the tooth brush 100.

The one or more motors 1308 are enclosed in within the toothbrush 100, which is enclosed by one or more casings including an upper casing 1212 and a down casing 1218 (see FIG. 12), made of a suitable material, such as plastic. A controller 1306, provides control to the one or more motors 1308, which is powered by a battery and power supply 1304. The battery is charged via a charging circuit 1302 through a charging port, such as a charging port 560 (see, FIG. 5). The controller 1306 enables or disables power supply from the battery 1304 to the motor(s) 1308 via actuation of the switch 1310 in pulses of specified pulse duration period based on levels of the power supply voltage, thereby controlling the rotational operation of the motor(s) 1308.

SUMMARY

The foregoing description of the embodiments of the invention has been presented for the purpose of illustration; it is not intended to be exhaustive or to limit the invention to the precise forms disclosed. Persons skilled in the relevant art can appreciate that many modifications and variations are possible in light of the above disclosure.

The language used in the specification has been principally selected for readability and instructional purposes, and it may not have been selected to delineate or circumscribe the inventive subject matter. It is therefore intended that the scope of the invention be limited not by this detailed description, but rather by any claims that issue on an application based hereon. Accordingly, the disclosure of the embodiments of the invention is intended to be illustrative, but not limiting, of the scope of the invention.

What is claimed is:

1. A tooth brush device comprising:
a head comprising:
an apex,
a base opposite the apex,
a front surface with bristle touch-points arranged along rows, the rows arranged orthogonal to a longitudinal axis of the head extending from the apex of the head to the base of the head, each of a plurality of the bristle touch-points being a single solid elongate structure extending from the head, and
a back surface opposite the front surface,
wherein the apex, base, front surface, bristle touch-points and back surface comprise a single piece of polymer material;
a neck coupled to the base of head;
a handle coupled to the head via the neck; and
a motor housed within the handle of the toothbrush for creating vibrations within the head of the toothbrush to brush the teeth of a user.

2. The tooth brush device of claim 1, wherein the polymer material is silicone.

3. The tooth brush device of claim 1, wherein a Young's modulus of the polymer material ranges approximately from 0.001 GPa to 0.05 GPa.

4. The tooth brush device of claim 1, wherein a Young's modulus of the polymer material ranges approximately from 0.01 GPa to 0.1 GPa.

5. The tooth brush device of claim 1, wherein the single solid elongate structure of each of the plurality of bristle touch-points has a rectangular cross-section of decreasing cross-sectional area from a proximal end to a distal end of the bristle touch-point.

12

6. The tooth brush device of claim 1, wherein bristle touch-points along adjacent rows are mutually interleaved.

7. The tooth brush device of claim 1, wherein the neck couples the handle to the head via an arcuate surface that transitions smoothly from a handle-proximal region that is broader than a head-proximal region.

8. The tooth brush device of claim 7, wherein a radius of curvature of the arcuate surface varies from approximately 5-20 centimeters at the broader handle-proximal region to approximately 5-10 centimeters at the narrower head-proximal region.

9. The tooth brush device of claim 1, wherein the bristle touch-points vary in length from a first length at the apex of the head, to a second length in a central region of the head between the apex and the base of the head, to a third length at the base of the head.

10. The tooth brush device of claim 9, wherein:
the first length ranges from approximately 1 millimeter to 3 millimeters;
the second length ranges from approximately 3 millimeters to 15 millimeters; and
the third length ranges from approximately 1 millimeter to 3 millimeters.

11. The tooth brush device of claim 9, wherein:
a ratio of the second length to the first length ranges from approximately 2 to 10;
a ratio of the second length to the third length ranges from approximately 2 to 10; and
a ratio of a length of the tooth brush device to the second length ranges from approximately 10 to 100.

12. The tooth brush device of claim 1, wherein the bristle touch-points extend substantially to lateral peripheries of the front surface of the head.

13. The tooth brush device of claim 1, wherein the bristle touch-points extend to within approximately 0.5-3 millimeters of a lateral periphery of the front surface of the head.

14. The tooth brush device of claim 1, wherein the back surface of the head comprises a plurality of ridges arranged along undulating rows, the undulating rows arranged orthogonal to the longitudinal axis of the head.

15. The tooth brush device of claim 1, wherein each of the plurality of bristle touch-points is spaced apart from other of the plurality of bristle touch-points.

16. The tooth brush of claim 1, wherein the base of the head has a narrow portion that is narrower by cross section in every direction than any other portion of the head, and wherein the bristle touch-points extend into the narrow portion of the head.

17. The tooth brush of claim 1, further comprising
one or more user controls on the handle of the toothbrush for controlling the vibrations of the tooth brush.

18. The tooth brush device of claim 1, wherein the bristle touch-points extend as interleaved rows across the front surface of the head from the apex to the base, each of the bristle touch-points spaced apart from other of the bristle touch-points, each of the bristle touch-points being composed of silicone and wherein the front surface of the head is substantially covered with an outer layer of silicone.

19. The tooth brush device of claim 1, wherein:
the single solid elongate structure of a bristle touch-point is tapered along an axis of tapering, the bristle touch point having a decreasing cross-sectional area from a proximal end to a distal end of the bristle touch-point, and

US 9,578,956 B2

13

14

the touch point tapers asymmetrically with respect to the central axis of the touch point, the axis of tapering being distinct from and at an angle to the central axis of the touch point.

\* \* \* \* \*

US00D698455S

(12) **United States Design Patent**     (10) **Patent No.:**      **US D698,455 S**

Sedic                                     (45) **Date of Patent:**  ✱✱ **Jan. 28, 2014**

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor:  **Filip Sedic**, Shanghai (CN)

(73) Assignee: **Felip Sedic**, Shanghai (CN)

(**) Term:      **14 Years**

(21) Appl. No.: **29/457,890**

(22) Filed:     **Jun. 13, 2013**

(51) **LOC (10) Cl.** ................................................. **28-03**

(52) **U.S. Cl.**
     USPC ........................................................ **D24/215**

(58) **Field of Classification Search**
     USPC ............... D24/200, 211, 212, 213, 214, 215;
                       601/114, 120, 121, 124, 125, 130, 131,
                       601/134, 135, 136, 137
     See application file for complete search history.

(56)                    **References Cited**

                  U.S. PATENT DOCUMENTS

| D382,645 | S | * | 8/1997 | Bergeron | ...................... | D24/200 |
| D469,183 | S | * | 1/2003 | Gerth et al. | ................... | D24/200 |
| D523,561 | S | * | 6/2006 | Telford | ........................... | D24/215 |
| D549,351 | S | * | 8/2007 | Wu | ................................ | D24/215 |
| D616,103 | S | * | 5/2010 | Ford-Robertson | ........... | D24/200 |
| D629,528 | S | * | 12/2010 | Adkisson | ..................... | D24/215 |

* cited by examiner

*Primary Examiner* — Sandra Snapp

(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57)                    **CLAIM**
I claim the ornamental design for a skin massager, as shown
and described.

                 **DESCRIPTION**

FIG. **1** is a front view of a first embodiment of a skin massager.
FIG. **2** is a right side view of the first embodiment of the skin
massager.
FIG. **3** is a rear view of the first embodiment of the skin
massager.

FIG. **4** is a left side view of the first embodiment of the skin
massager.
FIG. **5** is a top view of the first embodiment of the skin
massager.
FIG. **6** is a bottom view of the first embodiment of the skin
massager.
FIGS. **7** and **8** are perspective views of the first embodiment
of the skin massager.
FIG. **9** is a front view of a second embodiment of the skin
massager.
FIG. **10** is a right side view of the second embodiment of the
skin massager.
FIG. **11** is a rear view of the second embodiment of the skin
massager.
FIG. **12** is a left side view of the second embodiment of the
skin massager.
FIG. **13** is a top view of the second embodiment of the skin
massager.
FIG. **14** is a bottom view of the second embodiment of the
skin massager.
FIGS. **15** and **16** are perspective views of the embodiment of
the second skin massager.
FIG. **17** is a front view of a third embodiment of the skin
massager.
FIG. **18** is a right side view of the third embodiment of the skin
massager.
FIG. **19** is a rear view of the third embodiment of the skin
massager.
FIG. **20** is a left side view of the third embodiment of the skin
massager.
FIG. **21** is a top view of the third embodiment of the skin
massager.
FIG. **22** is a bottom view of the third embodiment of the skin
massager.
FIGS. **23** and **24** are perspective views of the third embodi-
ment of the skin massager.
FIG. **25** is a front view of a fourth embodiment of the skin
massager.
FIG. **26** is a right side view of the fourth embodiment of the
skin massager.
FIG. **27** is a rear view of the fourth embodiment of the skin
massager.
FIG. **28** is a left side view of the fourth embodiment of the
skin massager.



US00D716961S

(12) **United States Design Patent**     (10) **Patent No.:**     **US D716,961 S**

Sedic     (45) **Date of Patent:**     **    Nov. 4, 2014**

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(73) Assignee: **LELO Inc.**, San Jose, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/480,166**

(22) Filed: **Jan. 23, 2014**

**Related U.S. Application Data**

(63) Continuation of application No. 29/457,890, filed on Jun. 13, 2013, now Pat. No. Des. 698,455.

(30) **Foreign Application Priority Data**

Jan. 17, 2013   (CN) .......................... 2013 3 0013432
Jan. 17, 2013   (CN) .......................... 2013 3 0013435

(51) **LOC (10) Cl.** ................................................. **28-03**
(52) **U.S. Cl.**
CPC ................................... *A61H 23/004* (2013.01)
USPC ...................................................... **D24/215**
(58) **Field of Classification Search**
CPC ....... A61H 19/30;  A61H 19/32;  A61H 19/34;
A61H 19/40;  A61H 19/44;  A61H 19/50;
A61H 19/00;  A61H 2201/0153;  A61H
2201/0207;  A61H 2201/0263;  A61H
2201/0111;  A61H 2201/1253;  A61H
2205/082;  A61H 2205/085;  A61H 15/0085
USPC ............... D24/200, 211, 212, 213, 214, 215;
601/114, 120, 121, 124, 125, 130, 131,
601/134, 135, 136, 137
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D351,474 | S | * | 10/1994 | Huang | .......................... D24/211 |
| D369,220 | S | * | 4/1996 | Huang | .................. D24/215 |
| D382,645 | S | | 8/1997 | Bergeron | |
| D466,217 | S | * | 11/2002 | Harris et al. | ................. D24/215 |
| D469,183 | S | | 1/2003 | Gerth et al. | |
| D487,592 | S | * | 3/2004 | Chang | .................. D24/215 |
| D517,218 | S | * | 3/2006 | Kalen | .................. D24/215 |
| D523,561 | S | | 6/2006 | Telford | |
| D539,917 | S | * | 4/2007 | Park | .................. D24/215 |
| D548,851 | S | * | 8/2007 | Huang | .................. D24/214 |
| D549,351 | S | | 8/2007 | Wu | |
| D571,926 | S | * | 6/2008 | Wu | .................. D24/215 |
| D616,103 | S | | 5/2010 | Ford-Robertson | |
| D626,656 | S | * | 11/2010 | Jarry | .................. D24/215 |
| D629,528 | S | | 12/2010 | Adkisson | |
| D645,569 | S | * | 9/2011 | Nitsch | .................. D24/215 |
| D674,108 | S | * | 1/2013 | York | .................. D24/215 |
| D698,455 | S | * | 1/2014 | Sedic | .................. D24/215 |

* cited by examiner

*Primary Examiner* — Sandra Snapp
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57)     **CLAIM**

I claim the ornamental design for a skin massager, as shown and described.

**DESCRIPTION**

FIG. **1** is a front view of a first embodiment of a skin massager.
FIG. **2** is a right side view of the first embodiment of the skin massager.
FIG. **3** is a rear view of the first embodiment of the skin massager.
FIG. **4** is a left side view of the first embodiment of the skin massager.
FIG. **5** is a top view of the first embodiment of the skin massager.
FIG. **6** is a bottom view of the first embodiment of the skin massager.
FIGS. **7** and **8** are perspective views of the first embodiment of the skin massager.



US00D734481S

(12) **United States Design Patent**
Sedic

(10) Patent No.: **US D734,481 S**
(45) Date of Patent: ** **Jul. 14, 2015**

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(**) Term: **14 Years**

(21) Appl. No.: **29/508,139**

(22) Filed: **Nov. 3, 2014**

**Related U.S. Application Data**

(63) Continuation of application No. 29/480,166, filed on Jan. 23, 2014, now Pat. No. Des. 716,961, which is a continuation of application No. 29/457,890, filed on Jun. 13, 2013, now Pat. No. Des. 698,455.

(30) **Foreign Application Priority Data**

| Jan. 17, 2013 | (CN) | ............................ 2013 3 0013432 |
| Jan. 17, 2013 | (CN) | ............................ 2013 3 0013435 |

(51) **LOC (10) Cl.** ............................................. **28-03**
(52) **U.S. Cl.**
USPC ........................................................... **D24/215**
(58) **Field of Classification Search**
USPC ............... D24/200, 211, 212, 213, 214, 215;
601/114, 120, 121, 124, 125, 130, 131,
601/134, 135, 136, 137
CPC ....... A61H 19/30; A61H 19/32; A61H 19/34;
A61H 19/40; A61H 19/44; A61H 19/50;
A61H 19/00; A61H 2201/0153; A61H
2201/0207; A61H 2201/0263; A61H
2201/0111; A61H 2201/1253; A61H
2205/082; A61H 2205/085; A61H 15/0085
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| D351,474 | S | * | 10/1994 | Huang | ............................ D24/211 |
| D369,220 | S | * | 4/1996 | Huang | ............................ D24/215 |
| D466,217 | S | * | 11/2002 | Harris et al. | ................. D24/215 |
| D487,592 | S | * | 3/2004 | Chang | ............................ D24/215 |
| D517,218 | S | * | 3/2006 | Kalen | ............................ D24/215 |
| D539,917 | S | * | 4/2007 | Park | ............................ D24/215 |
| D548,851 | S | * | 8/2007 | Huang | ............................ D24/214 |
| D571,926 | S | * | 6/2008 | Wu | ............................ D24/215 |
| D626,656 | S | * | 11/2010 | Jarry | ............................ D24/215 |
| D645,569 | S | * | 9/2011 | Nitsch | ............................ D24/215 |
| D674,108 | S | * | 1/2013 | York | ............................ D24/215 |
| D698,455 | S | * | 1/2014 | Sedic | ............................ D24/215 |

* cited by examiner

*Primary Examiner* — Sandra Snapp
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57) **CLAIM**

I claim the ornamental design for a skin massager, as shown and described.

**DESCRIPTION**

FIG. **1** is a front view of a first embodiment of a skin massager.
FIG. **2** is a right side view of the first embodiment of the skin massager.
FIG. **3** is a rear view of the first embodiment of the skin massager.
FIG. **4** is a left side view of the first embodiment of the skin massager.
FIG. **5** is a top view of the first embodiment of the skin massager.
FIG. **6** is a bottom view of the first embodiment of the skin massager.
FIGS. **7** and **8** are perspective views of the first embodiment of the skin massager.
FIG. **9** is a front view of a second embodiment of the skin massager.
FIG. **10** is a right side view of the second embodiment of the skin massager.
FIG. **11** is a rear view of the second embodiment of the skin massager.
FIG. **12** is a left side view of the second embodiment of the skin massager.
FIG. **13** is a top view of the second embodiment of the skin massager.
FIG. **14** is a bottom view of the second embodiment of the skin massager.



US00D774772S

(12) **United States Design Patent**
Sedic

(10) Patent No.: **US D774,772 S**
(45) Date of Patent: ** **Dec. 27, 2016**

(54) **TOOTHBRUSH HEAD**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor: **Filip Sedic**, Stockholm (SE)

(**) Term: **15 Years**

(21) Appl. No.: **29/565,946**

(22) Filed: **May 25, 2016**

**Related U.S. Application Data**

(62) Division of application No. 29/531,561, filed on Jun. 26, 2015.

(51) **LOC (10) Cl.** ............................................. **04-02**

(52) **U.S. Cl.**
USPC ...................................................... **D4/101**

(58) **Field of Classification Search**
USPC ................. D4/100–102, 104–118, 124–125, D4/127–132, 136, 138
CPC ....... A46B 5/00; A46B 5/0004; A46B 5/0008; A46B 5/0012; A46B 5/002; A46B 5/0095; A46B 9/04; A46B 11/0006; A46B 2200/1066; A61B 17/24; A61C 17/16
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D402,116 S | 12/1998 | Magloff et al. |
| D536,452 S | 2/2007 | Geiberger et al. |
| D578,772 S | 10/2008 | Provost et al. |
| D617,563 S | 6/2010 | Wagner |
| D669,687 S | 10/2012 | Heil et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| EP | 2328437 B1 | * | 4/2016 | ............... | A46B 9/04 |
| FR | 2909532 A1 | * | 6/2008 | ........... | A45D 40/265 |

*Primary Examiner* — Catherine Oliver
*Assistant Examiner* — Rebekah A Caruso

(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57) **CLAIM**

I claim the ornamental design for a toothbrush head, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of a toothbrush head.
FIG. **2** is a front view of the first embodiment of the toothbrush head.
FIG. **3** is a back view of the first embodiment of the toothbrush head.
FIG. **4** is a right side view of the first embodiment of the toothbrush head.
FIG. **5** is a left side view of the first embodiment of the toothbrush head.
FIG. **6** is a top view of the first embodiment of the toothbrush head.
FIG. **7** is a bottom view of the first embodiment of the toothbrush head.
FIG. **8** is a perspective view of a second embodiment of the toothbrush head.
FIG. **9** is a front view of the second embodiment of the toothbrush head.
FIG. **10** is a back view of the second embodiment of the toothbrush head.
FIG. **11** is a right side view of the second embodiment of the toothbrush head.
FIG. **12** is a left side view of the second embodiment of the toothbrush head.
FIG. **13** is a top view of the second embodiment of the toothbrush head; and,
FIG. **14** is a bottom view of the second embodiment of the toothbrush head.
The broken lines depict the portions of the toothbrush head that form no part of the claimed design and are for illustrative purposes only.

**1 Claim, 14 Drawing Sheets**



US00D771952S

(12) **United States Design Patent**
Sedic

(10) Patent No.: **US D771,952 S**
(45) Date of Patent: ** **Nov. 22, 2016**

(54) **TOOTHBRUSH WITH A CURVED HEAD**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(**) Term: **14 Years**

(21) Appl. No.: **29/477,432**

(22) Filed: **Dec. 20, 2013**

(51) LOC (10) Cl. ............................................... **04-02**

(52) U.S. Cl.
USPC ......................................................... **D4/104**

(58) Field of Classification Search
USPC ............ D4/101, 104–112, 132, 136; 15/110,
15/167.1, 167.2, 188, 207.2;
132/308–312; 601/139, 141, 142;
606/161

CPC .......... A46B 3/00; A46B 3/005; A46B 3/04;
A46B 3/22; A46B 9/00; A46B 9/005; A46B
9/02; A46B 9/04; A46B 9/045; A46B
15/0075; A46B 15/0081; A46B 2200/10;
A46B 2200/1026; A46B 2200/1066; A46B
2200/1073; A46B 2200/1086; A46B 1/00;
A61B 17/244; A61C 17/16; A61C 17/20;
A61C 17/22; A61C 17/221; A61C 17/222;
A61C 17/225; A61C 17/32; A61C 17/34;
A61C 17/3409; A61C 17/3445; A61C
17/3454; A61C 17/3463; A61C 17/3481;
A61H 13/00; A61H 13/005
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 659,593 | A | * | 10/1900 | Richards ......................... 15/188 |
| 1,327,757 | A | * | 1/1920 | Eggers ..................... A46D 1/00 |
| | | | | 15/188 |
| D59,127 | S | * | 9/1921 | Perrault ......................... D4/104 |
| 2,225,331 | A | * | 12/1940 | Campbell .............. A46B 9/005 |
| | | | | 15/167.1 |
| D419,774 | S | * | 2/2000 | Langue ......................... D4/104 |

| | | | | |
|---|---|---|---|---|
| D611,254 | S | * | 3/2010 | Lee ................................. D4/108 |
| D676,662 | S | * | 2/2013 | Jimenez ......................... D4/101 |
| 8,549,693 | B2 | * | 10/2013 | Gruber .................. A46B 3/005 |
| | | | | 15/167.1 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CN | 301855900 S | * | 3/2012 |
| CN | 302008637 S | * | 7/2012 |

OTHER PUBLICATIONS

CN 3594120 Registered Design, (Xu, Zhenwu) Jan. 3, 2007, [online], [retrieved on Nov. 29, 2015] Retrieved from the Questel Intellectual Property Portal Design Database using the Internet: <URL: http://www.orbit.com>.*
DE 40400262-0006 Registered Design (Wik Far East Ltd.) May 25, 2004, [online], [retrieved on Apr. 16, 2003]. Retrieved from the Designs Register of the German Patent and Trade Mark Office using the Internet <URL: http://register.dmpa.de>.*

* cited by examiner

*Primary Examiner* — Karen E Eldridge Powers
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57) **CLAIM**

I claim the ornamental design for a toothbrush with a curved head, as shown and described.

**DESCRIPTION**

FIG. **1** is a front view of a toothbrush with a curved head.
FIG. **2** is a right side view of the toothbrush with a curved head.
FIG. **3** is a rear view of the toothbrush with a curved head.
FIG. **4** is a left side view of the toothbrush with a curved head.
FIG. **5** is a perspective view of the toothbrush with a curved head.
FIG. **6** is a bottom view of the toothbrush with a curved head; and,
FIG. **7** is a top view of the toothbrush with a curved head.
The portions of the toothbrush with a curved head shown with broken lines in the drawing figures are features of the article of manufacture that form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**





US00D882104S

(12) **United States Design Patent**    (10) Patent No.:    **US D882,104 S**

Sedic    (45) Date of Patent:    ** **Apr. 21, 2020**

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor: **Filip Sedic**, Stockholm (SE)

(73) Assignee: **FOREO Inc.**, Las Vegas, NV (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/678,094**

(22) Filed: **Jan. 25, 2019**

(51) **LOC (12) Cl.** ............................................. **28-03**

(52) **U.S. Cl.**
USPC ........................................................... **D24/215**

(58) **Field of Classification Search**
USPC ........ 601/15, 18, 19, 27, 28, 29, 30, 31, 32,
601/46, 47, 48, 52, 72, DIG. 12,
601/DIG. 14–DIG. 17; D24/200, 211,
D24/212, 213, 214, 215; D28/63;
D30/160; D4/102
CPC .............. A61H 1/00; A61H 2201/0153; A61H
2201/169; A61H 7/002; A61H 7/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,491,016 | A | 4/1924 | McGowan et al. |
| 2,480,023 | A | 8/1949 | Holden |
| 2,764,773 | A | 10/1956 | Glanvill et al. |
| 3,906,940 | A | 9/1975 | Kawada |
| 3,968,789 | A | 7/1976 | Simoncini |
| 4,564,032 | A | 1/1986 | Araki |
| 4,570,616 | A | 2/1986 | Kunz et al. |
| D331,466 | S | 12/1992 | Doria |
| 5,176,130 | A | 1/1993 | Kim |
| D351,474 | S | 10/1994 | Huang |
| D369,220 | S | 4/1996 | Huang |
| 5,511,270 | A | 4/1996 | Eliachar et al. |
| D382,645 | S | 8/1997 | Bergeron |
| 5,792,080 | A | 8/1998 | Ookawa et al. |
| D423,109 | S | 4/2000 | Allende |
| 6,202,242 | B1 | 3/2001 | Salmon et al. |
| 6,226,811 | B1 | 5/2001 | Fagan |
| 6,267,736 | B1 | 7/2001 | McCambridge et al. |
| 6,283,930 | B1 | 9/2001 | Purvis et al. |
| 6,393,718 | B1 | 5/2002 | Harris et al. |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| D466,217 | S | 11/2002 | Harris et al. |
| D466,695 | S | 12/2002 | Chen |
| D469,183 | S | 1/2003 | Gerth et al. |
| D476,087 | S | 6/2003 | Dirks et al. |
| 6,588,964 | B1 | 7/2003 | Au et al. |
| D478,174 | S | 8/2003 | Huang |
| D487,592 | S | 3/2004 | Chang |
| D512,225 | S | 12/2005 | Chien |
| D514,328 | S | 2/2006 | Huang |
| D517,218 | S | 3/2006 | Kalen |
| D523,561 | S | 6/2006 | Telford |
| D539,917 | S | 4/2007 | Park |
| D548,851 | S | 8/2007 | Huang |
| D549,351 | S | 8/2007 | Wu |
| 7,303,534 | B2 | 12/2007 | Kahn |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| D569,106 | S | 5/2008 | Maruyama |
| D571,926 | S | 6/2008 | Wu |
| 7,384,377 | B2 | 6/2008 | Berman |
| D574,108 | S | 7/2008 | Yando et al. |
| D576,736 | S | 9/2008 | Hagege |
| D595,898 | S | 7/2009 | Syran et al. |
| D616,103 | S | 5/2010 | Ford-Robertson |
| D622,405 | S | 8/2010 | Tuli |
| D626,656 | S | 11/2010 | Jarry |
| D629,528 | S | 12/2010 | Adkisson |
| D635,720 | S | 4/2011 | Cammarano |
| D645,569 | S | 9/2011 | Nitsch |
| D646,795 | S | 10/2011 | Seehoff et al. |
| D671,281 | S | 11/2012 | Singer |
| D674,108 | S | 1/2013 | York |
| 8,523,791 | B2 | 9/2013 | Castel |
| D698,455 | S | 1/2014 | Sedic |
| 8,679,039 | B2 | 3/2014 | Tieu et al. |
| 8,745,807 | B2 | 6/2014 | Varner et al. |
| D715,935 | S | 10/2014 | Huntington et al. |
| D716,961 | S | 11/2014 | Sedic |
| D734,481 | S | 7/2015 | Sedic |
| D764,172 | S | * | 8/2016 | Pan ................................ D4/100 |
| D769,455 | S | 10/2016 | Sedic |
| D773,064 | S | 11/2016 | Sedic |
| D804,189 | S | * | 12/2017 | von Berg ....................... D4/100 |
| D818,272 | S | * | 5/2018 | Tai ............................... D4/100 |
| D819,338 | S | * | 6/2018 | Xiong .......................... D4/102 |
| D822,387 | S | * | 7/2018 | Tai ............................... D4/100 |
| D823,606 | S | * | 7/2018 | Roth ............................. D4/134 |
| D825,124 | S | * | 8/2018 | Celia, Jr. ...................... D32/35 |
| D837,994 | S | * | 1/2019 | Sedic ........................ D24/214 |
| D838,045 | S | * | 1/2019 | Miller ......................... D28/63 |
| D838,112 | S | * | 1/2019 | Yi ............................... D4/120 |



| | | | | | |
|---|---|---|---|---|---|
| D845,630 | S | * | 4/2019 | Sedic | D4/100 |
| D845,631 | S | * | 4/2019 | Sedic | D4/100 |
| D849,263 | S | * | 5/2019 | Soutelo Gomes | D24/215 |
| D850,111 | S | * | 6/2019 | Sedic | D4/100 |
| D852,972 | S | * | 7/2019 | Sedic | D24/214 |
| D857,221 | S | * | 8/2019 | Sedic | D24/215 |
| D857,299 | S | * | 8/2019 | Tammabattula | D28/63 |
| D862,891 | S | * | 10/2019 | Sedic | D4/100 |
| D863,586 | S | * | 10/2019 | Miller | D24/214 |
| D864,860 | S | * | 10/2019 | Zhan | D13/108 |
| D866,074 | S | * | 11/2019 | Tammabattula | D28/63 |
| D866,075 | S | * | 11/2019 | Tammabattula | D28/63 |
| 2002/0107459 | A1 | | 8/2002 | Chang | |
| 2004/0060571 | A1 | | 11/2004 | Mayeri | |
| 2004/0225239 | A1 | | 11/2004 | Yamamoto et al. | |
| 2005/0142093 | A1 | | 1/2005 | Skover et al. | |
| 2005/0059914 | A1 | | 5/2005 | Kleinhenz et al. | |
| 2005/0113725 | A1 | | 6/2005 | Masuda | |
| 2006/0010630 | A1 | | 3/2006 | Tse | |
| 2006/0058714 | A1 | | 8/2006 | Rhoades | |
| 2006/0168746 | A1 | | 12/2006 | Guyuron et al. | |
| 2006/0276731 | A1 | | 12/2006 | Thiebaut et al. | |
| 2007/0017450 | A1 | | 1/2007 | Davis et al. | |
| 2007/0142845 | A1 | | 6/2007 | Akridge et al. | |
| 2007/0179412 | A1 | | 8/2007 | Imboden et al. | |
| 2007/0198031 | A1 | | 8/2007 | Kellogg | |
| 2007/0232967 | A1 | | 10/2007 | Driscoll | |
| 2008/0110471 | A1 | | 5/2008 | Oliver et al. | |
| 2008/0119913 | A1 | | 5/2008 | Powell et al. | |
| 2008/0125680 | A1 | | 5/2008 | Richmond et al. | |
| 2008/0125682 | A1 | | 5/2008 | Bonneyrat | |
| 2008/0167590 | A1 | | 7/2008 | Jon et al. | |
| 2008/0210252 | A1 | | 9/2008 | Taggart et al. | |
| 2009/0036809 | A1 | | 2/2009 | Nishio et al. | |
| 2009/0198159 | A1 | | 8/2009 | Linzell | |
| 2009/0318853 | A1 | | 12/2009 | Reed et al. | |
| 2010/0217357 | A1 | | 8/2010 | Da Silva et al. | |
| 2010/0262051 | A1 | | 10/2010 | De LaForcade | |
| 2011/0087141 | A1 | | 4/2011 | Wagy et al. | |
| 2011/0098613 | A1 | | 4/2011 | Thomas et al. | |
| 2011/0184499 | A1 | | 7/2011 | Radi | |
| 2011/0251537 | A1 | | 10/2011 | Yeo | |
| 2012/0121313 | A1 | | 5/2012 | Thiebaut | |
| 2012/0165708 | A1 | | 6/2012 | Parsloe | |
| 2012/0209151 | A1 | | 8/2012 | Zhou et al. | |
| 2012/0234336 | A1 | | 9/2012 | Paquet et al. | |
| 2013/0023805 | A1 | | 1/2013 | Ungemach et al. | |
| 2013/0046212 | A1 | | 2/2013 | Nichols | |
| 2013/0079689 | A1 | | 3/2013 | Thierman | |
| 2014/0107543 | A1 | | 4/2014 | Pazouki | |
| 2014/0194900 | A1 | | 7/2014 | Sedic | |
| 2015/0105802 | A1 | | 4/2015 | Sedic | |
| 2019/0117471 | A1 | * | 4/2019 | Sedic | A61H 23/0218 |
| 2019/0142691 | A1 | * | 5/2019 | Sedic | A45D 44/002 601/18 |
| 2019/0290076 | A1 | * | 9/2019 | Sedic | A61H 7/003 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1484043 | 12/2004 |
| EP | 1525872 | 4/2005 |
| EP | 1942857 | 7/2008 |
| EP | 2164443 | 3/2010 |
| EP | 2490645 | 8/2012 |
| JP | 2000-000283 | 1/2000 |
| JP | 2004-249061 | 9/2004 |
| KR | 101078567 | 1/2011 |

OTHER PUBLICATIONS

"Silicone Face Massage Brush," Alibaba.com, 1999-2014, Alibaba. com, 6 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/countrysearch/CN/silicone-face-massage-brush.html.

Silicone Suction Cup Face Exfoliate Beauty Brushes, SourcingMap Ltd., 2006-2014, two pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.sourcingmap.com/

ladies-silicone-suction-cup-face-exfoliate-beauty-brushes-pink-p-242745.html>.

"Clarisonic" Web Page, Clarisonic, Pacific Bioscience Laboratories, Inc., 2013, 2 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.clarisonic.com/>.

"Neutrogena® Wave®," Neutrogena Corporation, 2014, 1 page, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.neutrogenawave.com/#/products>.

"Silicon Face Brushes," Alibaba.com, 1999-2014, Alibaba.com, 8 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/manufacturers/face-silicone-brush-manufacturer.html>.

"Vibrating cosmetics," 12 pages, PoshGlam®, Sep. 8, 2014, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.poshglam.com/beauty/>.

"Waterproof Electric Face Massager," Alibaba.com, 1999-2014, 3 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/product-gs/537532136/Water_proof_Electric_Face_Massager.html>.

"Skincare," www.foreo.com, FOREO, accessed Jan. 20, 2019, pp. 1-13.

* cited by examiner

*Primary Examiner* — Cynthia Ramirez
*Assistant Examiner* — Michael A Maharajh
(74) *Attorney, Agent, or Firm* — Evan Feldstein

(57)  **CLAIM**

I claim the ornamental design for a skin massager, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of a skin massager.

FIG. **2** is a front view of the first embodiment of the skin massager.

FIG. **3** is a rear view of the first embodiment of the skin massager.

FIG. **4** is a right side view of the first: embodiment of the skin massager.

FIG. **5** is a left side view of the first embodiment of the skin massager.

FIG. **6** is a top view of the first embodiment of the skin massager.

FIG. **7** is a bottom view of the first embodiment of the skin massager.

FIG. **8** is a perspective view of a second embodiment of a skin massager.

FIG. **9** is a front view of the second embodiment of the skin massager.

FIG. **10** is a rear view of the second embodiment of the skin massager.

FIG. **11** is a right side view of the second embodiment of the skin massager.

FIG. **12** is a left side view of the second embodiment of the skin massager.

FIG. **13** is a top view of the second embodiment of the skin massager.

FIG. **14** is a bottom view of the second embodiment of the skin massager.

FIG. **15** is a perspective view of a third embodiment of a skin massager.

FIG. **16** is a front view of the third embodiment of the skin massager.

**US D882,104 S**

Page 3

FIG. **17** is a rear view of the third embodiment of the skin massager.

FIG. **18** is a right side view of the third embodiment of the skin massager.

FIG. **19** is a left side view of the third embodiment of the skin massager.

FIG. **20** is a top view of the third embodiment of the skin massager.

FIG. **21** is a bottom view of the third embodiment of the skin massager.

FIG. **22** is a perspective view of a fourth embodiment of a skin massager.

FIG. **23** is a front view of the fourth embodiment of the skin massager.

FIG. **24** is a rear view of the fourth embodiment of the skin massager.

FIG. **25** is a right side view of the fourth embodiment of the skin massager.

FIG. **26** is a left side view of the fourth embodiment of the skin massager.

FIG. **27** is a top view of the fourth embodiment of the skin massager; and,

FIG. **28** is a bottom view of the fourth embodiment of the skin massager.

The broken lines shown in the figures are for the purposes of illustrating portions of the skin massager, which form no part of the claimed design.

**1 Claim, 28 Drawing Sheets**

**U.S. Patent**          Apr. 21, 2020          Sheet 1 of 28          **US D882,104 S**



**FIG. 1**



**FIG. 2**



**FIG. 3**



**FIG. 4**



**FIG. 5**



FIG. 6



**FIG. 7**



FIG. 8



**FIG. 9**



**FIG. 10**



**FIG. 11**



**FIG. 12**



**FIG. 13**



**FIG. 14**



**FIG. 15**



FIG. 16



**FIG. 17**



**FIG. 18**



**FIG. 19**



**FIG. 20**



**FIG. 21**



**FIG. 22**



**FIG. 23**



FIG. 24



**FIG. 25**



**FIG. 26**



**FIG. 27**



FIG. 28

US00D882810S

(12) **United States Design Patent** (10) Patent No.: **US D882,810 S**

Sedic (45) Date of Patent: ** Apr. 28, 2020

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor: **Filip Sedic**, Stockholm (SE)

(73) Assignee: **FOREO Inc.**, Las Vegas, NV (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/678,070**

(22) Filed: **Jan. 25, 2019**

(51) **LOC (12) Cl.** ............................................. **28-03**
(52) **U.S. Cl.**
USPC ...................................................... **D24/215**
(58) **Field of Classification Search**
USPC ........ 601/15, 18, 19, 27, 28, 29, 30, 31, 32,
601/46, 47, 48, 52, 72, 99, DIG. 12,
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

1,491,016 A     4/1924  McGowan et al.
2,480,023 A     8/1949  Holden
(Continued)

FOREIGN PATENT DOCUMENTS

EP          1484043        12/2004
EP          1525872         4/2005
(Continued)

OTHER PUBLICATIONS

Foreo, "Foreo LUNA Mini 3", Feb. 20, 2020. https://www.foreo.
com/luna-mini-3. Shown on pp. 1 and 2. (Year: 2020).*
(Continued)

*Primary Examiner* — Cynthia Ramirez

*Assistant Examiner* — Michael A Maharajh
(74) *Attorney, Agent, or Firm* — Evan Feldstein

(57) **CLAIM**

I claim the ornamental design for a skin massager, as shown
and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of a skin
massager.
FIG. **2** is a front view of the first embodiment of the skin
massager.
FIG. **3** is a rear view of the first embodiment of the skin
massager.
FIG. **4** is a left side view of the first: embodiment of the skin
massager.
FIG. **5** is a right side view of the first embodiment of the skin
massager.
FIG. **6** is a top view of the first embodiment of the skin
massager.
FIG. **7** is a bottom view of the first embodiment of the skin
massager.
FIG. **8** is a perspective view of a second embodiment of a
skin massager.
FIG. **9** is a front view of the second embodiment of the skin
massager.
FIG. **10** is a rear view of the second embodiment of the skin
massager.
FIG. **11** is a left side view of the second embodiment of the
skin massager.
FIG. **12** is a right side view of the second embodiment of the
skin massage.
FIG. **13** is a top view of the second embodiment of the skin
massager; and,
FIG. **14** is a bottom view of the second embodiment of the
skin massager.
The broken lines shown in the figures are for the purposes
of illustrating portions of the skin massager, which form no
part of the claimed design.

**1 Claim, 14 Drawing Sheets**



## US D882,810 S

Page 2

(58) **Field of Classification Search**
USPC .......... 601/DIG. 14–DIG. 17; D24/200, 211,
D24/212, 213, 214, 215; D28/63;
D30/160; D4/100, 102
CPC .............. A61H 1/00; A61H 2201/0153; A61H
2201/169; A61H 7/002; A61H 7/00
See application file for complete search history.

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,764,773 | A | 10/1956 | Glanvill et al. |
| 3,906,940 | A | 9/1975 | Kawada |
| 3,968,789 | A | 7/1976 | Simoncini |
| 4,564,032 | A | 1/1986 | Araki |
| 4,570,616 | A | 2/1986 | Kunz et al. |
| D331,466 | S | 12/1992 | Doria |
| 5,176,130 | A | 1/1993 | Kim |
| D351,474 | S | 10/1994 | Huang |
| D369,220 | S | 4/1996 | Huang |
| 5,511,270 | A | 4/1996 | Eliachar et al. |
| D382,645 | S | 8/1997 | Bergeron |
| 5,792,080 | A | 8/1998 | Ookawa et al. |
| D423,109 | S | 4/2000 | Allende |
| 6,202,242 | B1 | 3/2001 | Salmon et al. |
| 6,226,811 | B1 | 5/2001 | Fagan |
| 6,267,736 | B1 | 7/2001 | McCambridge et al. |
| 6,283,930 | B1 | 9/2001 | Purvis et al. |
| 6,393,718 | B1 | 5/2002 | Harris et al. |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| D466,217 | S | 11/2002 | Harris et al. |
| D466,695 | S | 12/2002 | Chen |
| D469,183 | S | 1/2003 | Gerth et al. |
| D476,087 | S | 6/2003 | Dirks et al. |
| 6,588,964 | B1 | 7/2003 | Au et al. |
| D478,174 | S | 8/2003 | Huang |
| D487,592 | S | 3/2004 | Chang |
| D512,225 | S | 12/2005 | Chien |
| D514,328 | S | 2/2006 | Huang |
| D517,218 | S | 3/2006 | Kalen |
| D523,561 | S | 6/2006 | Telford |
| D539,917 | S | 4/2007 | Park |
| D548,851 | S | 8/2007 | Huang |
| D549,351 | S | 8/2007 | Wu |
| 7,303,534 | B2 | 12/2007 | Kahn |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| D569,106 | S | 5/2008 | Maruyama |
| D571,926 | S | 6/2008 | Wu |
| 7,384,377 | B2 | 6/2008 | Berman |
| D574,108 | S | 7/2008 | Yando et al. |
| D576,736 | S | 9/2008 | Hagege |
| D595,898 | S | 7/2009 | Syran et al. |
| D616,103 | S | 5/2010 | Ford-Robertson |
| D622,405 | S | 8/2010 | Tuli |
| D626,656 | S | 11/2010 | Jarry |
| D629,528 | S | 12/2010 | Adkisson |
| D635,720 | S | 4/2011 | Cammarano |
| D645,565 | S | 9/2011 | Nitsch |
| D646,795 | S | 10/2011 | Seehoff et al. |
| D671,281 | S | 11/2012 | Singer |
| D674,108 | S | 1/2013 | York |
| 8,523,791 | B2 | 9/2013 | Castel |
| D698,455 | S | 1/2014 | Sedic |
| 8,679,039 | B2 | 3/2014 | Tieu et al. |
| 8,745,807 | B2 | 6/2014 | Varner et al. |
| D715,935 | S | 10/2014 | Huntington et al. |
| D716,961 | S | 11/2014 | Sedic |
| D734,481 | S | 7/2015 | Sedic |
| D764,172 | S | * 8/2016 | Pan ..................... D4/100 |
| D769,455 | S | 10/2016 | Sedic |
| D773,064 | S | 11/2016 | Sedic |
| D804,189 | S | * 12/2017 | von Berg ............ D4/100 |
| D818,272 | S | * 5/2018 | Tai ..................... D4/100 |
| D819,338 | S | * 6/2018 | Xiong ................. D4/102 |
| D822,387 | S | * 7/2018 | Tai ..................... D4/100 |
| D823,606 | S | * 7/2018 | Roth ................... D4/134 |
| D825,124 | S | * 8/2018 | Celia, Jr. ............ D32/35 |
| D837,994 | S | * 1/2019 | Sedic .................. D24/214 |
| D838,045 | S | * 1/2019 | Miller ................. D28/63 |
| D838,112 | S | * 1/2019 | Yi ..................... D4/120 |
| D845,630 | S | * 4/2019 | Sedic .................. D4/100 |
| D845,631 | S | * 4/2019 | Sedic .................. D4/100 |
| D849,263 | S | * 5/2019 | Soutelo Gomes ......... D24/215 |
| D850,111 | S | * 6/2019 | Sedic .................. D4/100 |
| D852,972 | S | * 7/2019 | Sedic .................. D24/214 |
| D857,221 | S | * 8/2019 | Sedic .................. D24/215 |
| D857,299 | S | * 8/2019 | Tammambattula ......... D24/214 |
| D862,891 | S | * 10/2019 | Sedic .................. D4/100 |
| D863,586 | S | * 10/2019 | Miller ................. D24/214 |
| D864,860 | S | * 10/2019 | Zhan ................... D13/108 |
| D866,074 | S | * 11/2019 | Tammambattula ......... D4/100 |
| D866,075 | S | * 11/2019 | Tammambattula ......... D4/100 |
| 2002/0107459 | A1 | 8/2002 | Chang |
| 2004/0060571 | A1 | 11/2004 | Mayeri |
| 2004/0225239 | A1 | 11/2004 | Yamamoto et al. |
| 2005/0059914 | A1 | 5/2005 | Kleinhenz et al. |
| 2005/0113725 | A1 | 6/2005 | Masuda |
| 2005/0142093 | A1 | 6/2005 | Skover et al. |
| 2006/0010630 | A1 | 3/2006 | Tse |
| 2006/0058714 | A1 | 8/2006 | Rhoades |
| 2006/0168746 | A1 | 12/2006 | Guyuron et al. |
| 2006/0276731 | A1 | 12/2006 | Thiebaut et al. |
| 2007/0017540 | A1 | 1/2007 | Davis et al. |
| 2007/0142845 | A1 | 6/2007 | Akridge et al. |
| 2007/0179412 | A1 | 8/2007 | Imboden et al. |
| 2007/0198031 | A1 | 8/2007 | Kellogg |
| 2007/0232967 | A1 | 10/2007 | Driscoll |
| 2008/0110471 | A1 | 5/2008 | Oliver et al. |
| 2008/0119913 | A1 | 5/2008 | Powell et al. |
| 2008/0125680 | A1 | 5/2008 | Richmond et al. |
| 2008/0125682 | A1 | 5/2008 | Bonneyrat |
| 2008/0167590 | A1 | 7/2008 | Jon et al. |
| 2008/0210252 | A1 | 9/2008 | Taggart et al. |
| 2009/0036809 | A1 | 2/2009 | Nishio et al. |
| 2009/0198159 | A1 | 8/2009 | Linzell |
| 2009/0318853 | A1 | 12/2009 | Reed et al. |
| 2010/0217357 | A1 | 8/2010 | Da Silva et al. |
| 2010/0262051 | A1 | 10/2010 | De LaForcade |
| 2011/0087141 | A1 | 4/2011 | Wagy et al. |
| 2011/0098613 | A1 | 4/2011 | Thomas et al. |
| 2011/0184499 | A1 | 7/2011 | Radi |
| 2011/0251537 | A1 | 10/2011 | Yeo |
| 2012/0121313 | A1 | 5/2012 | Thiebaut |
| 2012/0165708 | A1 | 6/2012 | Parsloe |
| 2012/0209151 | A1 | 8/2012 | Zhou et al. |
| 2012/0234336 | A1 | 9/2012 | Paquet et al. |
| 2013/0023805 | A1 | 1/2013 | Ungemach et al. |
| 2013/0046212 | A1 | 2/2013 | Nichols |
| 2013/0079689 | A1 | 3/2013 | Thierman |
| 2014/0107543 | A1 | 4/2014 | Pazouki |
| 2014/0194900 | A1 | 7/2014 | Sedic |
| 2015/0105802 | A1 | 4/2015 | Sedic |
| 2019/0117497 | A1 * | 4/2019 | Sedic .................. A61H 23/0218 |
| 2019/0142691 | A1 * | 5/2019 | Sedic .................. A45D 44/002 601/18 |
| 2019/0290076 | A1 * | 9/2019 | Sedic .................. A61H 7/003 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1942857 | 7/2008 |
| EP | 2164443 | 3/2010 |
| EP | 2490645 | 8/2012 |
| JP | 2000-000283 | 1/2000 |
| JP | 2004-249061 | 9/2004 |
| KR | 101078567 | 1/2011 |

OTHER PUBLICATIONS

"Silicone Face Massage Brush," Alibaba.com, 1999-2014, Alibaba.com, 6 pages. [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/countrysearch/CN/silicone-face-massage-brush.html.
Silicone Suction Cup Face Exfoliate Beauty Brushes, SourcingMap Ltd., 2006-2014, two pages, [Online] [Retrieved on Sep. 15, 2014]

**US D882,810 S**

Page 3

(56)        **References Cited**

OTHER PUBLICATIONS

Retrieved from the Internet<URL: http://www.sourcingmap.com/ladies-silicone-suction-cup-face-exfoliate-beauty-brushes-pink-p-242745.html>.

"Clarisonic" Web Page, Clarisonic, Pacific Bioscience Laboratories, Inc., 2013, 2 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL: http://www.clarisonic.com/>.

"Neutrogena® Wave®," Neutrogena Corporation, 2014, 1 page, [Online] [Retrieved on Sep. 15, 2014] Retrieved rom the Internet<URL:http://www.neutrogenawave.com/#/products>.

"Silicon Face Brushes," Alibaba.com, 1999-2014, Alibaba.com, 8 pages [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/manufacturers/face-silicone-brush-manufacturer.html>.

"Vibrating cosmetics," 12 pages, PoshGlam®, Sep. 8, 2014, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.poshglam.com/beauty/>.

"Waterproof Electric Face Massager," Alibaba.com, 1999-2014, 3 pages, [Online] [Retrieved on Sep. 15, 2014] Retrieved from the Internet<URL:http://www.alibaba.com/product-gs/537532136/Water_proof_Electric_Face_Massager.html>.

"Skincare," www.foreo.com, FOREO, accessed Jan. 20, 2019, pp. 1-13.

* cited by examiner



**FIG. 1**



**FIG. 2**



**FIG. 3**



**FIG. 4**



**FIG. 5**



FIG. 6



FIG. 7



**FIG. 8**



**FIG. 9**



FIG. 10



**FIG. 11**



**FIG. 12**



FIG. 13



FIG. 14

US00D773064S

(12) **United States Design Patent**
Sedic

(10) **Patent No.:**    **US D773,064 S**
(45) **Date of Patent:**    ** **Nov. 29, 2016**

(54) **SKIN MASSAGER**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor: **Filip Sedic**, Stockholm (SE)

(**) Term: **15 Years**

(21) Appl. No.: **29/541,994**

(22) Filed: **Oct. 9, 2015**

(51) **LOC (10) Cl.** ................................................. **28-03**

(52) **U.S. Cl.**
USPC ................................................ **D24/214**

(58) **Field of Classification Search**
USPC ............... D24/200, 211, 212, 213, 214, 215;
601/19, 27–32, 46, 48, 52, DIG. 12,
601/DIG. 14, DIG. 15, DIG. 16, DIG. 17, 99,
601/112, 113, 118, 119, 120, 121;
D30/160; D14/218; D11/26
CPC ...... A61H 19/30; A61H 19/32; A61H 19/34;
A61H 19/40; A61H 19/44; A61H 19/50;
A61H 19/00; A61H 2201/0153; A61H
2201/0207; A61H 2201/0263; A61H
2201/0111; A61H 2201/1253; A61H
2205/082; A61H 2205/085; A61H 15/0085;
A61H 15/0092
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D331,466 S  *  12/1992  Doria .......................... D24/200
D351,474 S  *  10/1994  Huang .......................... D24/211
(Continued)

FOREIGN PATENT DOCUMENTS

KR        30-0798457 S        5/2015

OTHER PUBLICATIONS

Japan Patent Office, Office Action, Japanese Patent Application No.
2016-006717, Jul. 29, 2016, five pages.

Japan Patent Office, Office Action, Japanese Patent Application No.
2016-006716, Jul. 29, 2016, five pages.

*Primary Examiner* — Sandra Snapp
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57)                **CLAIM**
I claim the ornamental design for a skin massager, as shown
and described.

**DESCRIPTION**

FIG. **1** is a lower front right perspective view of a first
embodiment of the skin massager.
FIG. **2** is a front view of the first embodiment of the skin
massager.
FIG. **3** is a rear view of the first embodiment of the skin
massager.
FIG. **4** is a left side view of the first embodiment of the skin
massager.
FIG. **5** is a right side view of the first embodiment of the skin
massager.
FIG. **6** is a top view of the first embodiment of the skin
massager.
FIG. **7** is a bottom view of the first embodiment of the skin
massager.
FIG. **8** is a lower front right perspective view of a second
embodiment of the skin massager.
FIG. **9** is a front view of the second embodiment of the skin
massager.
FIG. **10** is a rear view of the second embodiment of the skin
massager.
FIG. **11** is a left side view of the second embodiment of the
skin massager.
FIG. **12** is a right side view of the second embodiment of the
skin massager.
FIG. **13** is a top view of the second embodiment of the skin
massager; and,
FIG. **14** is a bottom view of the second embodiment of the
skin massager.
The broken lines are directed to environment and are for
illustrative purposes only; the broken lines form no part of
the claimed design.

**1 Claim, 14 Drawing Sheets**



## US D773,064 S

Page 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D369,220 | S | * | 4/1996 | Huang | D24/215 |
| D423,109 | S | * | 4/2000 | Allende | D24/215 |
| 6,226,811 | B1 | * | 5/2001 | Fagan | A47K 7/024 |
| | | | | | 15/207.2 |
| D466,217 | S | * | 11/2002 | Harris | D24/215 |
| D478,174 | S | * | 8/2003 | Huang | D24/212 |
| D517,218 | S | * | 3/2006 | Kalen | D24/215 |
| D523,561 | S | * | 6/2006 | Telford | D24/215 |
| D569,106 | S | * | 5/2008 | Maruyama | D4/100 |
| D571,926 | S | * | 6/2008 | Wu | D24/215 |
| D576,736 | S | * | 9/2008 | Hagege | D24/215 |
| D595,898 | S | * | 7/2009 | Syran | D28/63 |
| D626,656 | S | * | 11/2010 | Jarry | D24/215 |
| D635,720 | S | * | 4/2011 | Cammarano | D24/212 |
| D645,569 | S | * | 9/2011 | Nitsch | D24/215 |
| D671,281 | S | * | 11/2012 | Singer | D30/158 |
| D674,108 | S | * | 1/2013 | York | D24/215 |
| D698,455 | S | * | 1/2014 | Sedic | D24/215 |
| D712,058 | S | * | 8/2014 | Huang | D24/215 |
| D715,010 | S | * | 10/2014 | Beaver | D32/47 |
| D716,961 | S | * | 11/2014 | Sedic | D24/215 |
| D734,481 | S | * | 7/2015 | Sedic | D24/215 |

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14

US00D760912S

(12) **United States Design Patent**     (10) **Patent No.:**     **US D760,912 S**

Sedic                                     (45) **Date of Patent:**     ✱✱     **Jul. 5, 2016**

(54) **ACNE PEN**

(71) Applicant: **Filip Sedic**, Shanghai (CN)

(72) Inventor: **Filip Sedic**, Shanghai (CN)

(✱✱) Term: **15 Years**

(21) Appl. No.: **29/531,558**

(22) Filed: **Jun. 26, 2015**

(51) **LOC (10) Cl.** ................................................ **28-03**

(52) **U.S. Cl.**
USPC ...................................................... **D24/209**

(58) **Field of Classification Search**
USPC ........ D24/107, 186, 158, 231, 200, 209, 210;
D26/29, 37, 39, 93, 104; D28/9
CPC .............. A61N 5/0616; A61N 5/0624; A61N
2005/0652; A61N 2005/0654; A61N
2005/0642; A61N 2005/0644; A61N
2005/0636; A61N 2005/0626; A61N
2005/0627; A61B 2018/00452; A61B
2018/1807
See application file for complete search history.

(56)                   **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,464,436 | A | * | 11/1995 | Smith | A61N 5/0616 606/13 |
| D428,503 | S | * | 7/2000 | Rann | D26/46 |
| D519,214 | S | * | 4/2006 | Lansohn | D24/210 |
| D576,284 | S | * | 9/2008 | Kennedy | D24/209 |
| D576,285 | S | * | 9/2008 | Kennedy | D24/209 |
| D577,814 | S | * | 9/2008 | Seki | D24/107 |
| D585,997 | S | * | 2/2009 | Adam | D24/210 |
| D612,510 | S | * | 3/2010 | Byle | D24/210 |
| D621,949 | S | * | 8/2010 | Seki | D24/209 |

| | | | | | |
|---|---|---|---|---|---|
| D707,839 | S | * | 6/2014 | Bradley | D24/209 |
| 2008/0091179 | A1 | * | 4/2008 | Durkin | A61B 18/203 606/9 |
| 2010/0069898 | A1 | * | 3/2010 | O'Neil | A61B 18/203 606/9 |

* cited by examiner

*Primary Examiner* — Anhdao Doan
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57)                   **CLAIM**
I claim the ornamental design for an acne pen, as shown and
described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of an acne
pen.
FIG. **2** is a front view of the first embodiment of the acne pen.
FIG. **3** is a back view of the first embodiment of the acne pen.
FIG. **4** is a left view of the first embodiment of the acne pen.
FIG. **5** is a right view of the first embodiment of the acne pen.
FIG. **6** is a top view of the first embodiment of the acne pen.
FIG. **7** is a bottom view of the first embodiment of the acne
pen.
FIG. **8** is a perspective view of a second embodiment of the
acne pen.
FIG. **9** is a front view of the second embodiment of the acne
pen.
FIG. **10** is a back view of the second embodiment of the acne
pen.
FIG. **11** is a left view of the second embodiment of the acne
pen.
FIG. **12** is a right view of the second embodiment of the acne
pen.
FIG. **13** is a top view of the second embodiment of the acne
pen; and,
FIG. **14** is a bottom view of the second embodiment of the
acne pen.
The broken lines immediately adjacent the shaded areas rep-
resent the bounds of the claim, while all other broken lines are
directed to environment and are for illustrative purposes only;
the broken lines form no part of the claimed design.

**1 Claim, 12 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3

**U.S. Patent**      Jul. 5, 2016      **Sheet 4 of 12**      **US D760,912 S**



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14

US00D799711S

(12) **United States Design Patent**   (10) Patent No.:   **US D799,711 S**
Sedic   (45) Date of Patent:   ** **Oct. 10, 2017**

(54) **EYE MASSAGER**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor: **Filip Sedic**, Stockholm (SE)

(**) Term: **15 Years**

(21) Appl. No.: **29/571,730**

(22) Filed: **Jul. 21, 2016**

### Related U.S. Application Data

(63) Continuation of application No. 29/530,588, filed on Jun. 17, 2015, now Pat. No. Des. 765,870.

(30) **Foreign Application Priority Data**

Jun. 1, 2015   (CN) .......................... 2015 3 0173017

(51) **LOC (10) Cl.** ............................................... **28-03**
(52) **U.S. Cl.**
USPC ....................................................... **D24/200**
(58) **Field of Classification Search**
USPC ............. D24/200, 214–215; D28/38, 41, 73; D4/104, 111, 138, 29; D7/393, 395; D8/107, 303
CPC ................................................ A61H 15/0085
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D212,145 S | 8/1968 | Madl | |
| 6,001,070 A | 12/1999 | Gebhard | |
| D481,463 S | 10/2003 | Cook et al. | |
| D484,605 S * | 12/2003 | Cook | ........................... D24/200 |
| D706,436 S | 6/2014 | Hahr et al. | |
| D706,439 S | 6/2014 | Hahr et al. | |
| D716,055 S | 10/2014 | Kassem Llano et al. | |
| D722,383 S | 2/2015 | Cole et al. | |
| D752,298 S | 3/2016 | Stephens | |
| D771,952 S * | 11/2016 | Sedic | ........................... D4/104 |
| D773,064 S * | 11/2016 | Sedic | ........................... D24/214 |
| D776,438 S * | 1/2017 | Sedic | ........................... D4/111 |
| 2014/0194900 A1 * | 7/2014 | Sedic | .................... A61H 7/005 606/131 |
| 2014/0213945 A1 | 7/2014 | Kojima | |

OTHER PUBLICATIONS

Foreo, "Iris," Feb. 24, 2016 [Retrieved on May 5, 2016]. Retrieved from the Internet <URL: http://www.google.com/images>.
United States Patent and Trademark Office, Ex Parte Quayle Office Action, U.S. Appl. No. 29/571,728, dated Jul. 24, 2017, six pages.

* cited by examiner

*Primary Examiner* — Wan Laymon
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57) **CLAIM**

I claim the ornamental design for an eye massager, as shown and described.

### DESCRIPTION

FIG. **1** is a perspective view of an embodiment of an eye massager.
FIG. **2** is a front view of the embodiment of the eye massager.
FIG. **3** is a back view of the embodiment of the eye massager.
FIG. **4** is a right side view of the embodiment of the eye massager.
FIG. **5** is a left side view of the embodiment of the eye massager.
FIG. **6** is a top view of the embodiment of the eye massager; and,
FIG. **7** is a bottom view of the embodiment of the eye massager.
The broken lines are directed to environment and are for illustrative purposes only; the broken lines form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**



US00D776438S

(12) **United States Design Patent**   (10) Patent No.:       **US D776,438 S**
Sedic                                        (45) Date of Patent:   **      Jan. 17, 2017**

(54) **TOOTHBRUSH**

(71) Applicant: **Filip Sedic**, Stockholm (SE)

(72) Inventor:  **Filip Sedic**, Stockholm (SE)

(**) Term:       **15 Years**

(21) Appl. No.: **29/542,030**

(22) Filed:      **Oct. 9, 2015**

(51) **LOC (10) Cl.** ................................. **04-02**
(52) **U.S. Cl.**
     USPC ......................................... **D4/111**
(58) **Field of Classification Search**
     USPC ........... D1/106, 199; D4/100–104, 108–111,
              D4/127, 128, 132–136, 138, 199;
              D21/795; D24/119, 146, 180; D30/158,
                                         D30/159
     CPC .............. A46B 5/00; A46B 2200/1066; A46B
                 2200/1073; A46B 2200/1086
     See application file for complete search history.

(56)                **References Cited**

           U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,734,106 | A * | 5/1973 | Zimmerman ......... A46B 5/0095 132/311 |
| 5,956,796 | A * | 9/1999 | Lodato ...................... A46B 5/00 15/143.1 |
| D444,303 | S * | 7/2001 | Reille ............................ D4/104 |
| 6,490,760 | B1 * | 12/2002 | Lauer ...................... A46B 5/00 16/110.1 |
| D503,852 | S * | 4/2005 | Hensel ........................... D4/101 |
| D639,068 | S * | 6/2011 | Cobabe ........................... D4/101 |
| D694,524 | S * | 12/2013 | Erskine-Smith ............... D4/104 |
| D696,023 | S * | 12/2013 | Gebski ........................... D4/101 |
| D696,517 | S * | 12/2013 | Gebski ........................... D4/101 |
| D710,109 | S * | 8/2014 | Nanda ........................... D4/104 |
| D717,547 | S * | 11/2014 | Adriaenssen ................. D4/101 |
| 2003/0037391 | A1 * | 2/2003 | Pfenniger ................ A46B 5/00 15/143.1 |
| 2007/0050931 | A1 * | 3/2007 | Jimenez ............... A46B 5/0095 15/143.1 |
| 2007/0251034 | A1 * | 11/2007 | Meressa ................. A46B 15/00 15/23 |
| 2008/0196184 | A1 * | 8/2008 | Mary T. ............... A46B 5/0095 15/22.1 |
| 2010/0024143 | A1 * | 2/2010 | Dickie ...................... A46B 5/00 15/167.1 |

(Continued)

*Primary Examiner* — Carla Jobe Wright
*Assistant Examiner* — Lisa A Grabenstetter
(74) *Attorney, Agent, or Firm* — Fenwick & West LLP

(57)                **CLAIM**

I claim the ornamental design for a toothbrush, as shown and
described.

              **DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of a
toothbrush, showing my new design.
FIG. **2** is a front elevation view thereof.
FIG. **3** is a back elevation view thereof.
FIG. **4** is a left side elevation view thereof.
FIG. **5** is a right side elevation view thereof.
FIG. **6** is a top plan view thereof, shown enlarged for clarity.
FIG. **7** is a bottom plan view thereof, shown enlarged for
clarity.
FIG. **8** is a perspective view of a second embodiment of a
toothbrush.
FIG. **9** is a front elevation view thereof.
FIG. **10** is a back elevation view thereof.
FIG. **11** is a left side elevation view thereof.
FIG. **12** is a right side elevation view thereof.
FIG. **13** is a top plan view thereof, shown enlarged for
clarity; and,
FIG. **14** is a bottom plan view thereof, shown enlarged for
clarity.
The broken lines in FIGS. **8-12** and **14** depict portions of the
toothbrush that form no part of the claimed design.

              **1 Claim, 14 Drawing Sheets**

