UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 23-cv-23631

FOREO INC.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

    Defendants.
_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT INTERNET STORES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff, Foreo Inc. ("Plaintiff" or "FOREO"), by undersigned counsel and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C § 1651(a), respectfully moves on an *ex parte* basis for entry of a temporary restraining order, including a temporary injunction, a temporary transfer of the Defendant internet stores, a temporary asset restraint, expedited discovery, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A to the Complaint (collectively, the "Defendants"). In support thereof, Plaintiff respectfully refers the Court to the following Memorandum of Law.

**MEMORANDUM OF LAW**

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff brings this action against the Defendants identified on Schedule A to the Complaint for utility patent infringement (Count I) and design patent infringement (Count II). As alleged in the Complaint, Defendants are making, using, offering for sale, selling and/or importing in the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's utility and design patents (collectively, the "Infringing Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run an illegal operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores that appear to be selling genuine FOREO products ("FOREO Products") but actually sell unauthorized and unlicensed Infringing Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their illegal operation.

This Court has personal jurisdiction over Defendants because each Defendant targets Florida residents and has offered to sell, and on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Florida. Specifically, Defendants are reaching out to do business with Florida residents by operating one

2

or more commercial, interactive Internet Stores through which Florida residents can purchase products being sold in connection with Plaintiff's utility and design patents. Defendants directly target unlawful business activities toward consumers in Florida, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Infringing Products in connection with Plaintiff's patents.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Infringing Products; (2) temporarily transferring and disabling the Defendant Domain Names; (3) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting; and (4) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to Defendants' infringement and Defendants' financial accounts.[1]

In light of the covert nature of offshore illegal activities and the vital need to establish an economic disincentive for such activities, courts regularly issue such orders. *See, e.g.*, *The North Face Apparel Corp., et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193, ECF No. 11 (S.D. Fla. Jan. 27, 2022) (granting orders requested herein in similar case); *Louis Vuitton Malletier v. The Individuals, Business Entities, and Unincorporated Associations identified on Schedule A*, No. 0:22-cv-60192, ECF No. 9 (S.D. Fla. Jan. 28, 2022) (same).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence

---

[1] Plaintiff is filing concurrently herewith, a motion to authorize service by electronic publication.

submitted through declarations, establish that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of valid patent registrations and is the distributor of genuine FOREO Products, and Defendants' use of FOREO's design and utility patents to sell Infringing Products is causing consumer confusion. In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter. Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products.

Indeed, 35 U.S.C. § 283 authorizes this Court to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Finally, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a).

## II. STATEMENT OF FACTS

### A. Plaintiff's Intellectual Property and Products

Plaintiff is the registered owner of the utility patents, which are covered by U.S. Patent Nos. US 9,889,065 B2, US 10,349,788 B1, US 11,633,073 B2, and US 9,578,956 B2 (collectively, the "Utility Patents"). Plaintiff is also the registered owner of design patents, which are covered by U.S. Patent Nos. US D698,455 S, US D716,961 S, US D734,481 S, US D774,772 S, US

D771,952 S, US D882,104 S, US D882,810 S, US D773,064 S, US D760,912 S, US D799,711 S, and US D776,438 S (collectively the "Design Patents"). Together, the Utility Patents and the Design Patents are referred to as the "FOREO Patents". Declaration of Evan Feldstein filed concurrently herewith ("Feldstein Decl."), ¶ 4. Plaintiff has earned an international reputation for quality, reliability, and value and is credited for many breakthroughs that have occurred in the high-end beauty and wellbeing solutions space, including the FOREO Products. *Id*. at ¶ 5. Plaintiff is the official source of FOREO Products in the United States. *Id.*

The success of the FOREO Products has resulted in a significant number of products that infringe FOREO's Patents and other intellectual property rights in the market. *Id*. at ¶ 7.

### B. Defendants' Unlawful and Deceptive Activities

Plaintiff has identified numerous fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the online marketplace accounts identified in Schedule A to the Complaint that sell Infringing Products using the FOREO Patents from foreign countries to consumers in this District. Feldstein Decl. at ¶¶ 8-14 and Ex. 2 thereto.

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FOREO Products. *Id.* at ¶ 18. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it difficult for consumers to distinguish counterfeit sites from an authorized website. *Id.* at ¶ 19. Plaintiff has not licensed or authorized Defendants to use the FOREO Patents, and none of the Defendants is an authorized retailer of genuine FOREO Products. *Id.* at ¶ 20.

Further, Defendants go to great lengths to conceal their identities and often use multiple

fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id*. at ¶ 22. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete or contain randomly typed letters. *Id.* Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Defendants use these common tactics to conceal the full scope of their massive illegal operation, and to avoid being shut down. *Id.*

Despite operating under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. Feldstein Decl., ¶ at 23. For example, many of the Defendant websites have virtually identical layouts. *Id.* In addition, Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit, suggesting that the Infringing Products originate from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, user-defined variables, domain redirection, lack of contact information, and the use of the same text and images. *Id.*

### III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill it has obtained from utilizing the FOREO Patents. *See* Feldstein Decl., ¶¶ 27-30. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, expedited discovery regarding Defendants

and the freezing of Defendants' assets. Without the relief requested herein, Defendants' unlawful activities will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods using at least a portion of the FOREO Patents without authorization within the descriptions of their products sold via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the FOREO Patents and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will move any assets from U.S.-based bank accounts, including PayPal accounts, and take other steps to evade enforcement such as redirecting traffic to other websites they control. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the patent claims pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

  **A.**  <u>**This Court May Exercise Personal Jurisdiction Over Defendants.**</u>

  Personal jurisdiction exists over Defendants in this Judicial District pursuant to Fl. Stat. § 48.193 (1)(a)(1) and Fl. Stat. § 48.193 (1)(a)(6)(a), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Infringing Products from and offer shipping to Florida addresses located in this Judicial District. Indeed, the Southern District of Florida regularly exercises personal jurisdiction over websites offering for sale and selling infringing and counterfeit merchandise that is offered for sale and/or sold without authorization to Florida residents over the internet. *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 21-cv-62335-WPD* (S.D. Fla. Nov. 16, 2021) (preliminary injunction order after granting TRO); *The North Face Apparel Corp., et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193 (S.D. Fla. Jan. 28, 2022) (same).

  As detailed in the Complaint and in the Feldstein Decl., Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Feldstein Decl., ¶ 13. In fact, Exhibit 2 to the Feldstein Decl. contains copies of exemplary screenshots from the Defendant Internet Stores reflecting the marketing and ability to order Infringing Products to the Southern District of Florida, and proof of orders actually placed and accepted by numerous Defendants to the Southern District of Florida. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

  **B.**  <u>**Standard for Temporary Restraining Order and Preliminary Injunction.**</u>

  District Courts within this Circuit hold that the standards for granting a temporary restraining order and a preliminary injunction are identical. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000), aff'd 234 F.3d 1163 (11th Cir. 2000)).

In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all of the relevant factors.

### C. Plaintiff Will Likely Succeed on Its Patent Infringement Claims.

#### 1. Plaintiff Will Likely Succeed on Its Utility Patent Infringement Claim.

Likelihood of success on the merits in patent infringement claims requires a showing that the patent is being infringed and that it would survive any challenge to validity. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. §271(a). In this case, Plaintiff is the lawful assignee of all right, title and interest in and to the Utility Patents. Feldstein Decl. at ¶ 4. Plaintiff has submitted extensive documentation, attached as Exhibit 2 to the Feldstein Decl., that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use the same products that infringe directly and/or indirectly the Utility Patents. The documentation submitted by Plaintiff shows that an ordinary observer would be deceived into thinking that the Infringing Products were the same as genuine FOREO Products. *Competitive Edge, Inc. v. Staples, Inc.,* 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 672 (Fed. Cir. 2008)). Finally, Plaintiff has not licensed nor

authorized Defendants to use the Utility Patents, and none of the Defendants is an authorized retailer of genuine FOREO Products. Feldstein Decl. at ¶ 20.

With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). As such, the Court need not resolve validity at this early stage. *Id.* At this point, no challenges have been made, so the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge.

### 2. **Plaintiff Will Likely Succeed on Its Design Patent Infringement Claim.**

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Here, Plaintiff is the lawful owner of all right, title and interest in and to the Design Patents. Feldstein Decl., ¶ 4. Plaintiff has submitted extensive documentation that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the designs claimed in the Design Patents. *Id.* at ¶ 14.

Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The criterion is deception of the ordinary observer, such that one design would be confused with the other. *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F. 3d 665, 679 (Fed. Cir. 2008). Under this test, the central inquiry is whether an "ordinary observer," who is familiar with the prior art, would find the overall appearance of the accused product to be "substantially the same" as the overall appearance of the patented design. *Id*. at 677; *see also*

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F .3d 1365, 1372 (Fed. Cir. 2006). An infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations into an otherwise copycat product. *Egyptian Goddess*, 543 F. 3d at 670.

The submitted documentation shows that an ordinary observer would be deceived into thinking that the Infringing Products are the same as Plaintiff's FOREO Products, as the Infringing Products embody the designs and inventions protected by the Design Patents. Finally, Plaintiff has not licensed or authorized Defendants to use the Design Patents, and none of the Defendants is an authorized retailer of genuine FOREO Products. Feldstein Decl. at ¶ 20. Accordingly, Plaintiff is likely to establish a *prima facie* case of design patent infringement.

In accordance with the Patent Act, the screenshot images attached as Exhibit 2 to the Feldstein Declaration, demonstrate Defendants' ongoing unauthorized promotion, offer for sale and/or sale of goods infringing Plaintiff's Design Patents in direct violation of Plaintiff's federal rights to exclude others from making, using, offering for sale, or selling products using the Design Patents. 35 U.S.C. §§ 217 & 261; *see also Tiffany (NJ), LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting intellectual property ownership and exact duplicates of asserted designs were sufficient to establish liability for infringement).

As shown, Defendants' skin massagers and toothbrushes are the same or substantially the same as the design of the Design Patents. According to the test prescribed by *Egyptian Goddess*, Defendants' Infringing Products infringe the Design Patents.

**D. There is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Plaintiff has no adequate remedy at law and will continue to be irreparably harmed absent

preliminary relief. Because the Plaintiff possesses valid patents and has established patent infringement, this Court may presume irreparable harm. *See Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.").

Even beyond the presumption, Plaintiff has presented overwhelming evidence of irreparable harm. Defendants' unauthorized use of the FOREO Patents has and continues to irreparably harm Plaintiff through diminished goodwill and consumer confidence in the FOREO Products, damage to Plaintiff's reputation, loss of exclusive patent rights, and loss of future sales. *See* Feldstein Decl., ¶¶ 26-30.

E. **The Balancing of Equities Tips in Plaintiff's Favor.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

When considering the balance of hardships between the parties, this Court should apply "a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n,* No. 13-CV-2167, 2013 U.S. Dist. LEXIS 47248, at *22 (N.D. Ill. Mar. 27, 2013) (*quoting Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1082 (7th Cir. 2008)). Properly weighed, the balance of equities favor entering a TRO.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of

Infringing Products. As willful infringers, this Court should afford little equitable consideration due to any harm caused to Defendants by a TRO. Such harm would be self-inflicted. Courts have previously refused to assign harm to defendants who assume such a risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("[T]he preliminary record suggests that [the defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [the plaintiff's] patent."). Equity requires that Defendants cease their unlawful conduct.

### F. Issuance of the Injunction is in the Public Interest.

An injunction in these circumstances is in the public interest because it incentivizes inventors and innovators to continue developing new products and patenting inventions without the fear of an inability to enforce those patents or stop infringers. Public policy favors protection of rights secured by valid patents. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015). "[T]he public interest nearly always weighs in favor or protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Id*. at 647.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license or permission to Defendants with respect to the FOREO Patents. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of

a Temporary Restraining Order is in the public interest.

**IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Patent Act authorizes courts to issue injunctive relief "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

**A.     Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property is Appropriate.**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the FOREO Patents. Such relief is necessary to stop the ongoing harm to the FOREO Patents and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the FOREO Patents. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief

14

more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants."). Moreover, federal courts have long recognized that civil actions against counterfeiters—whose very businesses are built around the deliberate misappropriation of rights and property belonging to others—present special challenges that justify proceeding on an *ex parte* basis. *See Louis Vuitton Malletier v. beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Nov. 28, 2018) (Order granting *Ex Parte* Application for Temporary Restraining Order and restraining defendants' assets and defendants' related assets).

### B. Transferring the Defendant Domain Names to Plaintiff's Control is Appropriate.

As a part of the Temporary Restraining Order, Plaintiff seeks temporary transfer of the Defendant Domain Names to Plaintiff's control in order to disable the infringing websites and electronically publish notice of this case to Defendants. Defendants involved in Internet litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in cases involving domain names regularly grant the relief requested herein. *See, e.g., Apple Corps v. Individuals*, No. 20-60982-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 141919 (S.D. Fla. May 21, 2020) (Order prohibiting Defendants from transferring, inter alia, e-commerce stores during pendency of action or until further Order of the Court); *see also Louis Vuitton Malletier v. beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Nov. 28, 2018); *Louis Vuitton Malletier v. 98lvshop.com*, Case No. 18-cv-62351-JIC (S.D. Fla. Oct. 10, 2018); *Louis Vuitton Malletier, S.A. v. Amalphasell*, Case No. 18-cv-61167-JIC (S.D. Fla. May 29, 2018, docketed May 30, 2018); *Goyard St-Honore v. Leung*, Case No. 15-cv-62508-JIC (S.D. Fla. Dec. 2, 2015); *Audemars Piguet Holding SA et al v. chinaone886*, Case No. 15-cv-60861-JIC (S.D. Fla. April 28, 2015); *Chanel, Inc. v. aestheticase.com*, Case No. 15-cv-60846-

JIC (S.D. Fla. April 24, 2015).

As such, Plaintiff respectfully requests that, as part of the Temporary Restraining Order, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Plaintiff.

### C.    **Preventing the Fraudulent Transfer of Assets is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. If such a restraint is not granted in this case, Defendants are likely to fraudulently transfer financial assets to overseas accounts. Specifically, it appears that the Defendants in this case hold most of their assets in foreign countries, making it easy to conceal assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their illicit scheme. 15 U.S.C. § 1117(a) (2018). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *see also SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to freeze all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

Courts in the Eleventh Circuit previously entered an asset restraining order due to the illicit nature of the business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet. *See e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1515 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In *Levi Strauss*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. *Levi Strauss*, 51 F.3d at 987. The Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.* (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible)).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the grant of an injunction preventing the transfer of Defendants' assets is proper.

### D. <u>Expedited Discovery is Appropriate.</u>

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further,

17

courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Plaintiff respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful illicit operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order. Indeed, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *AdMarketplace, Inc. v. TeeSupport Inc.*, 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

Plaintiff's undersigned counsel is aware that the third-party marketplaces and payment services contemplated in the proposed order have cooperated with Intellectual Property owners in prior cases and under similar circumstances and are accustomed to doing so as part of their business operations.

These third parties can comply with these expedited discovery requests without undue burden.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P.

65(c).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiff respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at rbaeza@bsfllp.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants proper notice of the order and any subsequent hearing date.

Dated: September 22, 2023               Respectfully submitted,

                                        */s/ Rossana Baeza*
                                        Rossana Baeza (FL Bar No. 1007668)
                                        BOIES SCHILLER FLEXNER LLP
                                        100 SE 2nd Street, Suite 2800
                                        Miami, FL 33131
                                        Tel: (305) 357-8415
                                        rbaeza@bsfllp.com

                                        *Counsel for Plaintiff Foreo Inc.*