**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 23-CV-23631-SCOLA/GOODMAN**

FOREO INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,",

    Defendants.
_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS**

In this patent infringement action, Plaintiff Foreo Inc., ("Plaintiff") filed a motion for

final default judgment against certain Defendants, the Individuals, Partnerships, and

Unincorporated Associations identified on Schedule "A" [ECF No. 99 (collectively, the

"Defaulting Defendants")].[1] The Defaulting Defendants did not file a response to Plaintiff's

_____

[1]      Plaintiff included 177 Defaulting Defendants in its Motion. These 177 include
Defendant Nos. 72–75, 77–160, 162–68, 170–171, 175–178, 180, 182, 185, 186, 193, 200–02, 204,
210, 213, 214, 218, 220, 224–26, 231, 235–37, 239, 241, 243, 245, 246, 248–58, 260, 262, 263, 269,
270, 273, 274, 276, 279, 280, 281, 283, 285, 287–89, 295, 297, 301, 304, 305, 308–10, 315–19, 322,
324, 335, 337, 338, 340, 341, 345, 351, and 354. [ECF No. 99, pp. 21–30]. However, since this
Motion, Plaintiff filed a Notice of Voluntary Dismissal [ECF No. 120] as to Defendant No.
73. That Defendant was dismissed shortly after. [ECF No. 121]. Thereafter, Plaintiff filed a
Stipulation of Dismissal [ECF No. 126] as to Defendant No. 304. Therefore, this Report and

motion and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 101]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant in part** the Motion [ECF No. 99].

## I.     Background

Plaintiff filed a two-count Complaint under 35 U.S.C. § 271 alleging utility patent infringement (Count I) and design patent infringement (Count II). [ECF No. 1].

Plaintiff owns multiple patents which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "FOREO Patents"). *Id*. at ¶ 2.[2] Plaintiff contends that it "is the owner and lawful assignee of all right, title and interest in and to the FOREO Patents[.]" *Id*.

The Complaint alleges that Defendants "directly and/or indirectly import[ ], develop[ ], design[ ], manufacture[ ], distribute[ ], market[ ], offer[ ] to sell and/or sell[ ] products infringing Plaintiff's FOREO Patents." *Id*. at ¶ 3. The Complaint further alleges that

_____

Recommendations will evaluate the issues based only on the remaining 175 Defaulting Defendants.

[2]     Plaintiff attached copies of the FOREO Patents to its Complaint. [ECF No. 1-1].

Defendants have willfully infringed on Plaintiff's intellectual property rights and engaged

in unfair competition through the operation of their e-commerce stores:

23.     Defendants directly compete with FOREO by advertising, offering for sale, selling and importing goods that infringe the FOREO Patents to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names or seller identification aliases not yet known to FOREO. Defendants have purposefully directed at least a portion of their illegal activities towards consumers in the State of Florida through advertisement, offers to sell, sale, and/or shipment of infringing goods into the State.

\*\*\*

29.     On personal knowledge and belief, Defendants facilitate sales by designing [their] Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FOREO Products.

30.     Many of [Defendants'] Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. [The] Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

\*\*\*

33.     On personal knowledge and belief, Defendants deceive unknowing consumers by using at least a portion of the FOREO Patents without authorization within the product descriptions of their [ ] Stores to attract customers.

34.     Upon information and belief, Defendants use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the [Defendants'] Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FOREO Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such,

> Plaintiff also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell infringers FOREO Products into this District.

*Id.* at ¶¶ 23, 29–30, 33–34.

Plaintiff obtained a Clerk's Default [ECF No. 77] and now seeks the entry of a default judgment against the Defaulting Defendants. [ECF No. 99]. In support of the instant motion, Plaintiff submitted the declaration of its counsel, Rossana Baeza [ECF No. 99-2 ("Baeza Declaration")] and cited to the declaration of its General Manager, Evan Feldstein[3] [ECF No. 6-1 ("Feldstein Declaration")].

## II.      Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the

---

[3]      The Feldstein Declaration was originally submitted as support for Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order [ECF No. 6].

4

causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[4] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); s*ee also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*,

---

[4]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III.    Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a.    Subject-Matter Jurisdiction

The Complaint [ECF No. 1] alleges causes of action under the Patent Act. Title 28, United States Code, Section 1331 grants federal courts original jurisdiction over all civil actions "arising under" the laws of the United States. *See also Daka Rsch., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-60246, 2023 WL 5310240, at *2 (S.D. Fla. July 14, 2023), *report and recommendation adopted sub nom. Daka Rsch. Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Amended Schedule "A"*, No. 22-60246-CV, 2023 WL 5289258 (S.D. Fla. Aug. 17, 2023) ("[T]he Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (providing for federal question jurisdiction) and 1338 (governing actions involving patents, copyrights, and trademarks, among others).").

### b.      Personal Jurisdiction

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### i.      Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the

[defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a motion seeking authorization for alternate service of process pursuant to Federal Rule of Civil Procedure 4(f)(3), which the Court granted. [ECF Nos. 7; 22].

The Court authorized Plaintiff to serve the Defaulting Defendants as follows:

The Plaintiff is permitted to serve the Summonses, [ ] Complaint, and all other filings and discovery in this matter upon each Defendant by:

a.     sending emails to each Defendant via the e-mail accounts provided by each Defendant as part of the data related to its e-commerce store, including customer service e-mail addresses and onsite contact forms, or by the e-commerce platform e-mail for each of the e-commerce stores, and in the email providing the address to Plaintiff's designated website to Defendants; and

b.     publicly posting a copy of the Summonses, Complaint, and all filings and discovery in this matter on Plaintiff's designated serving notice website.

[ECF No. 22, p. 3].

Plaintiff filed a proof of service indicating that it served the Defaulting Defendants pursuant to Judge Scola's Order. [ECF No. 36].

Plaintiff effectuated service of process in the instant case because it complied with Judge Scola's Order authorizing alternative service of process over Defendants. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No.

8

21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants had been "properly served . . .with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's Order Authorizing Alternate Service"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### ii.    Amenability to Jurisdiction

"The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a

threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a

*prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on*

*Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants"

because they had been served in accordance with the "Court's order authorizing alternative

service" and:

> [the] [d]efendants directly target[ed] their business activities toward
> consumers in the United States, including Florida, and . . . [were] reaching out
> to do business with Florida residents by operating one or more commercial,
> interactive internet stores on internet marketplaces where Florida residents
> [could] purchase products bearing infringing and/or counterfeit trademarks
> belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Complaint alleges that,

> 12.    Defendants are subject to personal jurisdiction in this district because
> they direct business activities toward and conduct business with consumers
> through the United States, including within the State of Florida and this
> district, through at least the Internet based e-commerce stores and fully
> interactive commercial internet websites accessible in Florida and operating
> under the Defendant Internet Stores and Seller IDs.

> 13.    Upon information and belief, Defendants were and/or are
> systematically directing and/or targeting their business activities at consumers
> in the U.S., including those in Florida, in this Judicial District, through
> accounts with online marketplace platforms such as Amazon, DHgate, eBay,
> Walmart, and Wish (collectively, the "Marketplace Platforms") as well as any
> and all as yet undiscovered accounts with additional online marketplace
> platforms held by or associated with Defendants, their respective officers,
> employees, agents, servants and all persons in active concert or participation

with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendants' Merchant Storefronts"), uses to communicate with Defendants regarding their listings for Infringing Products (as defined *infra*) and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

14.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

[ECF No. 1, ¶¶ 12–14].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[5] these established facts provide a basis for this Court's personal jurisdiction over the Defaulting Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 823CV00139WFJMRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are alleged

---

[5]    *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[6]

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over the Defaulting Defendants.

### b.    No Possibility of Inconsistent Judgments

Courts have been reluctant to enter default judgments in cases where there are both defaulted and non-defaulted defendants. *See, e.g.*, *Houston Cas. Co. v. Endurance Assurance Corp.*, No. 6:22-CV-1429-RBD-LHP, 2023 WL 2633312, at *2 (M.D. Fla. Mar. 24, 2023) (denying motion for default judgment without prejudice because there was a non-defaulted defendant); *Progressive Mountain Ins. Co. v. Mobile Maint. on the Go*, LLLP, No. 1:20-CV-01665-JPB, 2022 WL 1714859, at *1 (N.D. Ga. Feb. 10, 2022) (declining to enter a default judgment while the declaratory action was pending against other, non-defaulted defendants).

---

[6]     *See also*, *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this [c]ourt has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

In cases where there are both defaulted and non-defaulted defendants, a court should defer entering a judgment of liability against the defaulted defendant(s) where both the defaulted and non-defaulted defendants are jointly liable. This practice is designed to avoid inconsistent judgments. *See Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 21 L. Ed. 60 (1872).

"Several Circuits, including the Eleventh [Circuit], have found *Frow* applies to situations where defendants are jointly and severally liable, **or have closely related defenses**." *Rodriguez v. Guacamole's Authentic Mexican Food & More, LLC*, No. 11-62527-CIV, 2012 WL 718688, at *2 (S.D. Fla. Mar. 6, 2012) (emphasis added). Even where there is no joint liability, the Eleventh Circuit has stated that it is "sound policy" that "**when defendants are similarly situated**, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (emphasis added) (citing C. Wright & A. Miller, Federal Practice and Procedure, § 2690, 6 Moore, Federal Practice, ¶ 55.06).

Here, Plaintiff moves for a default final judgment against some (but not all) Defendants). It asserts that there is no possibility of inconsistent liability. [ECF No. 99, p. 8 ("Here, Plaintiff makes no allegations of joint and several liability against the Defaulting Defendants. The Complaint alleges, and the evidences [sic] establishes, that each Defaulting Defendant sold or offered to sell Infringing Products. As explained more fully below,

13

Plaintiff seeks monetary damages against each Defaulting Defendant for each Defaulting Defendants' own willful infringement. As a result, there is no risk of inconsistent liability.") The Undersigned has reviewed the docket and agrees with Plaintiff that inconsistent liability is not at issue here.

Plaintiff's Motion is against 175 of the Defaulting Defendants. [ECF No. 99]. As discussed above, Plaintiff has effectuated service of process on all Defendants by e-mail and electronic publication, as authorized by Judge Scola [ECF No. 24]. Plaintiff has filed proofs of service for all Defendants. [ECF No. 36]. The docket reflects that only three[7] of the 177 Defaulting Defendants have filed an Answer or otherwise responded to the Complaint [ECF No. 1]. Plaintiff does not seek a default judgment against two of the defendants that filed Answers.

In his Order on Default Judgment Procedure, Judge Scola stated that "[i]f the Defendants fail to move to set aside the Clerk's Default or fail to otherwise respond to this lawsuit, **on or before February 11, 2024**, Default Final Judgment may be entered." [ECF No. 83, p. 1 (emphasis in original)]. None of the three Answers that were filed adhered to that

---

[7]     The three Defendants who defaulted and filed an Answer after the Clerk's Entry of Default was entered [ECF No. 77] are: Defendant No. 280, star61172 [ECF No. 116]; Defendant No. 294, unixskin [ECF No. 115]; and Defendant No. 304, Victor Hugo Rodriguez AKA wenfindsmore [ECF No. 114]. However, the Undersigned will not discuss Defendants No. 294 and 304 because Plaintiff is not seeking an entry of default as to either. *See* [ECF Nos. 126; 99].

deadline because they were all filed between February 28th and 29th, 2024. *See* [ECF Nos. 114–16].[8]

Based on the record, aside from the sole defendant, Defendant No. 280, who filed an Answer ***after*** the deadline, there are no Defendants actively litigating this action and there is no possibility of inconsistent liability. *See Max'is Creations, Inc. v. The Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-22920, 2022 WL 104216, at *2 (S.D. Fla. Jan. 11, 2022) (finding "no possibility of inconsistent liability between the [d]efendants" where "[the] [p]laintiff ha[d] stated in its [m]otion that there [were] no allegations of joint and several liability with respect to damages" and **"[t]he [d]efendants remaining in the case ha[d] not appeared and ha[d] defaulted"** (emphasis added)); *Safety Nailer LLC v. Individuals, P'ships , & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-22703, 2021 WL 6197744, at *2 (S.D. Fla. Dec. 30, 2021) (finding "a sufficient basis in the pleading for the default judgment to be entered in favor of [the] [p]laintiff with respect to the defaulting [d]efendants" where "[the] [p]laintiff has stated in its [m]otion that there [were] no allegations of joint and several liability with respect to damages" and **"[the] [d]efendants remaining in the case ha[d] not appeared and ha[d] defaulted"** (emphasis added)).

---

[8]      *See* footnote 7.

Additionally, because the single, remaining Defaulting Defendant failed to adhere to Judge Scola's explicit deadline after being properly and timely served, Default Judgment may be entered against it. Therefore, there remains no possibility of inconsistent liability at this time.

### c.    Liability

As noted above, the Complaint alleges two counts under 35 U.S.C. § 271: (Count I) utility patent infringement and (Count II) design patent infringement. [ECF No. 1]. Plaintiff attached its FOREO Patents to its Complaint. [ECF No. 1-1].[9]

### i.    Count I

Count I alleges utility patent infringement under the Patent Act, 35 U.S.C. § 271. Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). However, Plaintiff formally withdrew[10] its utility patent infringement claim for purposes of

---

[9]    The patents include: US 9.889,065 B2; US 10,349,788 B1; US 11,633,073 B2; US 9,578,956 B2; US D698,455 S; US D716,961 S; US D 698,455S; US D734,481 S; US D 716, 961 S; US D882,104S; US D882,810S; US D773,064 S;US D760,912 S; US D779,711 S; USD776,438 S; USD771,952 S; and US D 774, 772 S.

[10]    Plaintiff filed its notice pursuant to the Undersigned's Order [ECF No. 122] instructing Plaintiff to either file supplemental memoranda addressing an issue related to the utility patent infringement claim or file a notice of withdrawal as to that claim.

the default judgment motion. [ECF No. 123]. Therefore, the Undersigned will **not** discuss

whether Plaintiff successfully demonstrated that the Defaulting Defendants are liable under

this Count.

> ii.    **Count II**

Count II alleges design patent infringement under the Patent Act. This Court has

explained that:

> A design patent is infringed when, "during the term of a patent for a design,
> without license of the owner" a defendant "(1) applies the patented design, or
> any colorable imitation thereof, to any article of manufacture for the purpose
> of sale, or (2) sells or exposes for sale any article of manufacture to which such
> design or colorable imitation has been applied." 35 U.S.C. § 289. "Determining
> whether a design patent is infringed is a two-step process. First, when
> appropriate, the design patent's claims are construed. Second, the infringing
> design is compared to the accused device." *Pride Family Brands, Inc. v. Carl's
> Patio, Inc.*, 992 F. Supp. 2d 1214, 1223–24 (S.D. Fla. 2014) "The 'ordinary
> observer' test is the sole test for determining whether a design patent has been
> infringed." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
> 942 F.3d 1119, 1129 (Fed. Cir. 2019) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*,
> 543 F.3d 665, 678 (Fed. Cir. 2008)). Under this test, "if, in the eye of an ordinary
> observer, giving such attention as a purchaser usually gives, two designs are
> substantially the same, if the resemblance is such as to deceive such an
> observer, inducing him to purchase one supposing it to be the other, the first
> one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511,
> 528, 14 Wall. 511, 20 L. Ed. 731 (1871). "Minor differences between a patented
> design and an accused article's design cannot, and shall not, prevent a finding
> of infringement." *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir.
> 2010) (quoting *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991
> (Fed. Cir. 1993)) (cleaned up).

*XYZ Corp. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-

CV-24022, 2023 WL 2815123, at *2 (S.D. Fla. Apr. 5, 2023); *see also Shenzhen Changyu Tech. Co.*

*v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-22138-CIV, 2021 WL 4991242, at *2 (S.D. Fla. Sept. 13, 2021) ("[The] [p]laintiff must demonstrate that the accused product infringes a patented design. First, the Court must perform claim construction on the design patent claims. *See Catalina Lighting, Inc.* [*v. Lamps Plus, Inc.*, 295 F.3d 1277, 1285 (Fed. Cir. 2002)]. Second, the Court must apply the "ordinary observer" test for design patent infringement. *Egyptian Goddess, Inc.*[, 543 F.3d at 678].").

> In cases involving design patents:
>
> If the resemblance between the two designs is sufficient to deceive the ordinary observer, inducing him/her to purchase one thinking it was the other, then the first one patented is infringed by the other. *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014) (citation omitted). **A proper comparison may include a side-by-side view of the design patent drawings and the accused products, and minor differences between a patented design and the design of an accused product does not preclude a finding of infringement**. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009).

*Daka Rsch., Inc.*, 2023 WL 5310240, at *3 (emphasis added).

In *Shenzhen Changyu Tech. Co.*, this Court found that the plaintiff had met its burden of establishing design patent infringement liability, in the context of a default final judgment motion, where:

> [t]he well-pleaded factual allegations of . . . [the] [c]omplaint properly contain[ed] the elements for the [patent infringement] claim and [were] admitted by virtue of [the] [d]efendants' defaults. Moreover, the [c]omplaint's factual allegations ha[d] been substantiated by sworn declarations and other evidence and establish[ed] [the] [d]efendants' liability for the claim asserted.

2021 WL 4991242, at *3 (record citations omitted).

Here, the well-pleaded allegations of the Complaint, deemed admitted by Defaulting

Defendants' defaults, establish the infringement of Plaintiff's design patents. The Complaint

alleges that:

19.    Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the FOREO Patents [.]

32.    Plaintiff has not licensed or authorized Defendants to use the FOREO Patents, and none of the Defendants are authorized retailers of genuine FOREO Products.

46.    Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the FOREO Patents in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

59.    Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Infringing Products that infringe directly and/or indirectly the Design Patents.

60.    For example, below is a comparison of figures from Plaintiff's Design Patents and images of one of Defendants' Infringing Products sold on a Defendant Internet Store.

Figures from the Design Patents

 

Exemplary Infringing Products Sold on Defendant Internet Store

 

61.     Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

62.     Defendants have infringed the Design Patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

Plaintiff cites to the Baeza and Feldstein Declarations to support this cause of action.

*See* [ECF No. 99-2; 6-1]. Moreover, as part of its supplemental filings, Plaintiff filed

Composite Exhibit 1 [ECF Nos. 99-3–99-13], which consists of screenshots "from Defendants'

Internet based e-commerce stores . . . offering for sale products infringing the FOREO patents." [ECF No. 99-2, p.2 n.1].

In sum, the well-pled allegations in the Complaint, deemed admitted by virtue of the default, bolstered by the sworn declarations of Rossana Baeza and Evan Feldstein, and other record evidence, including side-by-side comparisons of Plaintiff's Patents and the infringing products, establish the Defaulted Defendants' liability for design patent infringement under the Patent Act.

### d.    Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)

(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed.1998)).

Here, Plaintiff seeks equitable relief and monetary (statutory) damages. As discussed below, Plaintiff is entitled to the relief requested.

### i.     Injunctive Relief

Plaintiff seeks the issuance of a permanent injunction. [ECF No. 99, p. 12]. The Patent Act authorizes the Court to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Injunctive relief is available "even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *4 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (internal citation omitted).

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weighs in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that the Defaulting Defendants are promoting, advertising, distributing, offering for sale, and/or selling goods in the United States that infringe on its patents. [ECF No. 1, ¶¶ 47; 59]; *see also* [ECF Nos. 6-1, ¶¶ 8, 12; 99-3–99-13]. Therefore, consumers will continue to be confused by the Defaulting Defendants' unauthorized use of Plaintiff's intellectual property.

Additionally, so long as the Defaulting Defendants continue their infringing and counterfeiting activities, Plaintiff loses its ability to control its intellectual property and will continue to suffer irreparable harm to its reputation and goodwill.[11] *See Levi Strauss & Co. v.*

---

[11] The Feldstein Declaration states that the Defaulting Defendants' products are of an "actually inferior" quality that are "substantially identical" to Plaintiff's design patents. [ECF No. 6-1, ¶ 8]. It further alleges that,

> 28.    Foreo is further irreparably harmed by the unauthorized utilization of the FOREO Patents because the sellers of the Infringing Products take away Foreo's ability to control the nature and quality of products embodying or utilizing the technology of and inventions claimed in the FOREO Patents. Loss of quality control over goods comprising the Infringing Products and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

> 29.    The sale of Infringing Products causes consumer confusion, which weakens Foreo's credibility and reputation, resulting in a loss of unquantifiable future sales. Consumers who mistakenly believe that the Infringing Products they have purchased originated from Foreo will come to believe that Foreo offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine FOREO Products, resulting in a loss or undermining of Foreo's reputation and goodwill. Infringing Products, primarily coming from China, can also be extremely dangerous and present alarming safety hazards.

*Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

Plaintiff has also shown no adequate remedy at law exists because monetary damages alone will not redress the harm to it from the Defaulting Defendants' infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiff's injury without an injunction outweighs the impact an injunction would have on the Defaulting Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264

---

*Id*. at ¶¶ 28–29.

(S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act.").

Lastly, the public interest will not be disserved if the Court were to enjoin the Defaulting Defendants. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996));[12] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned **respectfully recommends** that the District Court enter permanent injunctive

---

[12]     Although *Davidoff & CIE, S.A.* concerns the entry of a *preliminary* injunction and the instant motion seeks the issuance of a *permanent* injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

relief consistent with the terms listed in subsections (1) and (2) of Plaintiff's proposed final default judgment and permanent injunction [ECF No. 99-15, pp. 1–4].[13]

### ii.    Monetary Damages

Plaintiff is entitled to damages because it met it burden and proved that the Defaulting Defendants were liable for design patent infringement. Plaintiff requests $250 for the infringement of each design patent and lost profits under the Patent Act, 35 U.S.C. §§284, 289. The Undersigned will address both requests separately.

#### *Generally*

Both sections 284 and 289 apply to damages, with 284 being a general damages provision and 289 functioning as an additional provision for design patents.

Section 284 states,

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

> When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. Increased damages under this paragraph shall not apply to provisional rights under section 154(d).

> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

---

[13]    However, because Plaintiff withdrew its claim as to Count I (utility patent infringement), paragraph (1)(b) should be excluded. Paragraph (1)(b) exclusively relates to Plaintiff's utility patents.

35 U.S.C. § 284.

In comparison, Section 289 provides additional protections for victims of design

patent infringement:

> Whoever during the term of a patent for a design, without license of the owner,
> (1) applies the patented design, or any colorable imitation thereof, to any
> article of manufacture for the purpose of sale, or (2) sells or exposes for sale
> any article of manufacture to which such design or colorable imitation has
> been applied shall be liable to the owner to the extent of his total profit, but
> not less than $250, recoverable in any United States district court having
> jurisdiction of the parties.

35 U.S.C. § 289.

Plaintiff is barred from recovering **both** lost profits and additional damages from the

same parties. *Catalina Lighting, Inc.*, 295 F.3d at 1291 ("When only a design patent is at issue,

a patentee may not recover both infringer profits and additional damages under § 284."); *see

also Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Companies, P'ships, & Unincorporated Ass'ns

Identified on Schedule A to Complaint*, No. 23CV00612JHRSN, 2024 WL 1421126, at *6 (S.D.N.Y.

Mar. 4, 2024), *report and recommendation adopted sub nom. Kyjen Co., LLC v. Individuals, Corps.,

Ltd. Liab. Companies, P'ships, & Unincorporated Ass'ns Identified on Schedule A to Complaint*, No.

23 CIV. 00612 (JHR), 2024 WL 1193625 (S.D.N.Y. Mar. 20, 2024) ("In cases of design patent

infringement, [the] patentee can recover damages under 35 U.S.C. § 284 or U.S.C. § 289, but

not both. 35 U.S.C. § 289 ('Nothing in this section shall prevent, lessen, or impeach any other

remedy which an owner of an infringed patent has under the provisions of this title, but he

shall not twice recover the profit made from the infringement.')"). However, because Plaintiff seeks lost profits from only seven of the Defaulting Defendants, it is entitled (if it meets its burden) to lost profits from those seven and then additional damages from the remaining Defaulting Defendants.

<u>Lost Profits</u>

Plaintiff seeks lost profits against only seven of the Defaulting Defendants. [ECF No. 99, p. 16 n.2].

The seven Defaulting Defendants and the amount Plaintiff seeks in lost profits are: (1) No. 79 Amazing China Products, $148,420.49; (2) No. 80 ITME Store, $2,199.33; (3) No. 93 bttr88, $501.47; (4) No. 106 davkpj, $432.62; (5) No. 119 erinog, $503.69; (6) No. 141 meyanbeautymachine2, $2,011.46; and (7) No. 143 Ofunuibeautymachine, $3,114.24.

Plaintiff, as the patentee, bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

"Arriving at a damages award under § 289 thus involves two steps. First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 59, 137 S. Ct. 429, 434, 196 L. Ed. 2d 363 (2016). "The term 'article of manufacture,' as used in § 289, encompasses both a product sold to a consumer and a

component of that product." *Id.* Plaintiff states that "the relevant article of manufacture is each of the Infringing Products sold by Defaulting Defendants." [ECF No. 99, p. 19].

With regards to calculating the Defaulting Defendants' total profit made on the articles of manufacture (*i.e.*, Infringing Products), Plaintiff states:

> Since Defaulting Defendants have chosen not to participate in these proceedings, Plaintiff has limited available information, received from the Third[-]Party Providers, regarding Defaulting Defendants' profits from the sale of Infringing Products. Defaulting Defendants have failed to appear in this matter and have not produced any documents or information: (1) characterizing each of the transactions in their financial accounts, (2) other accepted payment methods; or (3) other internet stores that they may be operating. As a result, Defaulting Defendants have not met their burden to apportion gross receipts between infringing and not-infringing product sales, or to show any deductions.

*Id.*

Based on the limited information available, Plaintiff calculated its lost profits by reviewing the amounts "currently restrained in the Defaulting Defendant's known financial accounts[.]" *Id* at 20. Plaintiff included those amounts in the chart attached to its motion. [ECF No. 99-1]. The chart reflects the specific amount of lost profits sought from each of the seven Defaulting Defendants (and the $250.00 in statutory damages amount sought from the remaining Defaulting Defendants). Plaintiff also cites to its counsel's declaration, which includes the following statement:

> Accordingly, pursuant to the Court's Order Granting Ex Parte Application for Preliminary Injunction (Dkt. 48), Plaintiff requested that the Third-Party Providers restrain all funds in Defendants' accounts. Subsequently, my firm

received notice from the applicable financial institutions that they complied with the requirements of the Court's Orders. **The limited information provided by the Payment Processors for the Defaulting Defendants indicates that the amount currently restrained in the Defaulting Defendants' known financial accounts ranges from $0 to $18,418.42.**

[ECF No. 99-2, ¶ 2 (emphasis added)].

In *Daka Rsch., Inc.*, this Court awarded the amounts restrained in the defaulted defendants' e-commerce accounts to compensate the plaintiff for the infringement of its patent, noting that:

> based on the record before the Court, the undersigned finds that **[the] [p]laintiff is entitled to monetary damages based on the [d]efaulting [d]efendants' profits**. More specifically, in the [m]otion, [the] [p]laintiff has estimated the reasonable royalties to be the amounts currently restrained by [t]hird [p]arty [p]roviders holding funds for the [d]efaulting [d]efendants. In support of its request for monetary damages, [the] [p]laintiff has submitted the [d]eclaration of [plaintiff's counsel], which lists amounts held by Amazon in the [d]efaulting [d]efendants' known financial accounts. **These amounts range from $1,039.16 to $65,925.37 for each of the [d]efaulting [d]efendants**.

2023 WL 5310240, at *5 (emphasis added; record citations omitted).

Similarly here, the Undersigned finds that the greater of $250.00 or the amount restrained in the e-commerce account of the seven Defaulted Defendants is an adequate and reasonable measure of damages to compensate Plaintiff for the patent violations, given that the Defaulted Defendants have chosen not to participate in this lawsuit and the Defaulted Defendants' lost profits from the infringement cannot be ascertained.

However, there is a discrepancy that Plaintiff must address. Pursuant to Plaintiff's counsel's declaration, "the amount currently restrained in the Defaulting Defendants' known financial accounts ranges from $0 to **$18,418.42**." [ECF No. 99-2, ¶2 (emphasis supplied)]. But Plaintiff's chart [ECF No. 99-1] illustrates a range from $0 to **$148,420.49** (*not* $18,418.42). Therefore, with regards to Defendant No. 79, Amazing China Products, the Court should award Plaintiff $18,418.49 in lost profits -- unless Plaintiff files a supplemental affidavit or declaration (with supporting evidence, including financial records reflecting a higher amount) explaining and clarifying the discrepancy).

Accordingly, the Undersigned **respectfully recommends** that the Court award Plaintiff the greater of $250.00 or the amounts restrained in the e-commerce accounts as lost profit damages for the seven[14] Defaulted Defendants' infringement (with the special exception as to Defendant No. 79).

<u>Remaining Statutory Damages</u>

The amount of statutory damages awarded should be sufficient to compensate the patent owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245,

---

[14]  As previously stated, the seven Defaulting Defendants and the amount Plaintiff seeks in lost profits are: (1) No. 79 Amazing China Products, $148,420.49; (2) No. 80 ITME Store, $2,199.33; (3) No. 93 bttr88, $501.47; (4) No. 106 davkpj, $432.62; (5) No. 119 erinog, $503.69; (6) No. 141 meyanbeautymachine2, $2,011.46; and (7) No. 143 Ofunuibeautymachine, $3,114.24.

at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220–21 (S.D. Fla. 2004))).

Here, Plaintiff seeks $250.00 in statutory damages against each of the remaining Defaulting Defendants based on their willful conduct. [ECF No. 99, p. 16]. Plaintiff attached a chart to its motion detailing which design patent(s) each Defaulting Defendant infringed. [ECF No. 99-1]. Plaintiff's suggested damage amount is well within the permissible range prescribed under 35 U.S.C. § 284 and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's design patents, compensate Plaintiff, and punish the Defaulting Defendants.

The infringement in the instant case was willful:

A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, [*Inc. v. Beker Enters.*, Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003)]. Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019).

The Undersigned **respectfully recommends** that the District Court award Plaintiff the statutory damages amount of **$250.00** against each of the remaining Defaulting Defendants as listed in Plaintiff's chart [ECF No. 99-1].

### IV.        Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's Motion [ECF No. 99] **in part**, award Plaintiff the requested monetary damages[15] against each of the Defaulting Defendants **and issue a permanent injunction** against them. The monetary awards should be sufficient to deter the Defaulting Defendants and others from continuing to counterfeit or otherwise infringe on Plaintiff's Design Patents.

However, the Court should not extend this ruling as to Plaintiff's utility patent claim (Count I) because Plaintiff withdrew it. [ECF No. 123].

Plaintiff must provide a copy of this Report and Recommendations to the Defaulting Defendants in the same manner in which the Court authorized alternative service of process on them. [ECF No. 22, p. 3]. Plaintiff will file a notice of compliance on CM/ECF by no later than **Friday, April 19, 2024**.

---

[15]     Plaintiff put together a supplemental chart that specifically lists how much each Defaulting Defendant should be charged. [ECF No. 99-15]. Defendant Nos. 73 and 304 should be excluded from the statutory damages awarded (and the final default judgment) for the reasons discussed in footnote 1, *supra*. Additionally, Defendant No. 79's damages should be limited to $18,418.42 pursuant to the Undersigned's previous discussion.

## V.        Objections

The parties will have seven (7)[16] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on April 15, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

---

[16]        The Undersigned is shortening the deadlines because each of the Defaulting Defendants have defaulted, and it therefore appears unlikely that they will respond in any way, including the filing of Objections.